# CONTRACT DOCUMENTS

## FOR

## LINE CLEARANCE

## CONTRACT NO. 12077

## MEMPHIS LIGHT, GAS AND WATER DIVISION

## CITY OF MEMPHIS, TENNESSEE

## MEMPHIS LIGHT, GAS AND WATER DIVISION

## BOARD OF LIGHT, GAS AND WATER COMMISSIONERS

| | |
|---|---|
| **STEVEN WISHNIA** | **CHAIR** |
| **CARLEE MCCULLOUGH** | **VICE CHAIR** |
| **MITCH GRAVES** | **COMMISSIONER** |
| **LEON DICKSON, SR.** | **COMMISSIONER** |
| **MICHAEL POHLMAN** | **COMMISSIONER** |
| | |
| **JARL "J.T." YOUNG** | **PRESIDENT AND CHIEF EXECUTIVE OFFICER** |
| | |
| **DANA JEANES** | **SENIOR VICE-PRESIDENT, CHIEF FINANCIAL OFFICER AND SECRETARY- TREASURER** |

# CONTRACT DOCUMENTS

## FOR

## LINE CLEARANCE

## CONTRACT NO. 12077

## MEMPHIS LIGHT, GAS AND WATER DIVISION

## CITY OF MEMPHIS, TENNESSEE

## MEMPHIS LIGHT, GAS AND WATER DIVISION

## BOARD OF LIGHT, GAS AND WATER COMMISSIONERS

| | |
|---|---|
| STEVEN WISHNIA | CHAIR |
| CARLEE MCCULLOUGH | VICE CHAIR |
| MITCH GRAVES | COMMISSIONER |
| LEON DICKSON, SR. | COMMISSIONER |
| MICHAEL POHLMAN | COMMISSIONER |

| | |
|---|---|
| JARL "J.T." YOUNG | PRESIDENT AND CHIEF EXECUTIVE OFFICER |

| | |
|---|---|
| DANA JEANES | SENIOR VICE-PRESIDENT, CHIEF FINANCIAL OFFICER AND SECRETARY- TREASURER |

# Summary Page

# For

# Contract No. 12077 Line Clearance

| | |
|---|---|
| Contractor's License Requirement(s) | BC-28;HC-5 |
| Contractor's License Listed in Contract Document | S OR APPLICABLE |
| Monetary Limit of the Contractor's License | UNLIMITED |
| Value of the Contract | $ 97,419,024.24 |
| Performance Bond Amount | $ 19,483,804.85 |
| Contractor's Labor and Materials Bond | $ 24,354,756.06 |
| Term of Contract | 60 MONTHS |

**NOTE:  Asplundh Tree Expert, LLC will provide an annual Performance Bond equal to 20% of the 60-month contract price.**

**ACORD**

## CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
6/25/2019

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | | |
|---|---|---|---|---|
| Aon Risk Services Central, Inc. | Aon Risk Services Central, Inc. | PHONE (A/C, No, Ext): 215-255-2000 | | FAX (A/C, No): |
| Philadelphia PA Office | 4 Overlook Point | E-MAIL ADDRESS: | | |
| One Liberty Place, Suite 1000 | Lincolnshire, IL 60069 | | | |
| Philadelphia, PA 19103 | | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | | INSURER A: Greenwich Insurance Company | | 22322 |
| INSURED | | INSURER B: XL Insurance America, Inc. | | 24554 |
| Asplundh Tree Expert LLC | | INSURER C: XL Catlin Lloyd's Syndicate XLC 2003 | | |
| 708 Blair Mill Road | | INSURER D: | | |
| Willow Grove, PA 19090 | | INSURER E: | | |
| | | INSURER F: | | |

## COVERAGES    CERTIFICATE NUMBER: 2145033455    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|---|
| A | X | COMMERCIAL GENERAL LIABILITY | | | RGD300138201 | 8/1/2018 | 8/1/2019 | EACH OCCURRENCE | $ 1,000,000 |
| | | CLAIMS-MADE [X] OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 500,000 |
| | | | | | | | | MED EXP (Any one person) | $ 10,000 |
| | | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | POLICY [X]  PRO-JECT  LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | OTHER: | | | | | | | $ |
| A | X | AUTOMOBILE LIABILITY | | | RAD943783701 (AOS) | 8/1/2018 | 8/1/2019 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | X | ANY AUTO | | | RAD943786601 (VI) | | | BODILY INJURY (Per person) | $ |
| | | OWNED AUTOS ONLY  SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | | HIRED AUTOS ONLY  NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | X | $10,000 Med Pay | | | | | | | $ |
| C | X | UMBRELLA LIAB  X  OCCUR | | | CSUSA1801704 | 8/1/2018 | 8/1/2019 | EACH OCCURRENCE | $ 2,000,000 |
| | | EXCESS LIAB  CLAIMS-MADE | | | | | | AGGREGATE | $ 2,000,000 |
| | | DED  RETENTION $ | | | | | | | $ |
| B | | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY       Y/N | | N/A | RWD300135901 (AOS) | 8/1/2018 | 8/1/2019 | X  PER STATUTE     OTH-ER | |
| | | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | | | RWR300135901 | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Memphis Light, Gas & Water Division is listed as additional insured as required by written agreement but only according to policy terms, conditions and exclusions for liability arising from operations performed by or on behalf of the named insured.
Waiver of subrogation applies only where required by written agreement unless claim arises out of negligence of the certificate holder.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Memphis Light, Gas & Water Division | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| 220 South Main Street | |
| Memphis, TN 38103 | AUTHORIZED REPRESENTATIVE |
| | *Aon Risk Services Central, Inc.* |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)      The ACORD name and logo are registered marks of ACORD

MEMPHIS LIGHT, GAS AND WATER DIVISION

CITY OF MEMPHIS

MEMPHIS, TENNESSEE

CONTRACT NAME: Line Clearance

CONTRACT NO: 12077

**TO THE BOARD OF LIGHT, GAS AND WATER COMMISSIONERS**
**MEMPHIS LIGHT, GAS AND WATER DIVISION**
**MEMPHIS, TENNESSEE**

The undersigned, as bidder, declares that: (1) the bidder, as the only person, persons, company or party interested in this bid as principals, are named on the Signature Page of the Contract document; (2) the bidder has carefully examined the proposed form of contract, other contract documents and the specifications referred to collectively as the "Contract Documents"; and (3) the bidder has made such investigations as are necessary to inform the bidder in all matters affecting the performance of the contract bid upon. The bidder proposes and agrees that, if this proposal is accepted, the bidder will contract with the Memphis Light, Gas and Water Division ("MLGW") of the City of Memphis, Tennessee, in a good and skillful manner free from faults and defects, all as called for and in strict accordance with the Contract Documents and to the satisfaction of MLGW according to the bid price on the Bidding Blank page.

Bidders are to ensure all blanks are filled with: (a) specific terms or responses; (b) a straight line to indicate nothing goes in the blank; or (c) "N/A" (Not Applicable). Failure to address every blank or question with the specific terms or response, a strike through (straight line), or "N/A" (not applicable) may render the bid nonresponsive and ineligible for further consideration.

**Bidding Blank Section begins on the next page.**

**COMPANY NAME OF BIDDER:** Asplundh Tree Expert, LLC

*Bids are awarded based on the Lowest and Best Bid. Lowest and Best Bid is defined as the most responsive bid, solicitation or offer that meets required specifications, including if applicable, any supplier diversity goal as set in the Bid Packet or Bid Invitation, specifications, price, start date, and completion date.*

CONTRACT NAME: Line Clearance

CONTRACT NO: 12077

## BIDDING BLANK

**Scope of Work:** To furnish all supervision labor, transportation, materials, equipment, tools, and supplies as required to trim and or remove all trees and brush, to trim trees using the most arborcultural techniques, and to perform other utility forestry services including chemical spraying, transmission right of way clearing and mowing, clean up and disposal of materials, and to provide clearance for the electric conductors of MLGW. In addition, this contract may include emergency storm work.

**Term:** 60 months

**Annual Renewals:** No

**Retainage:** No

**Bond Requirements:**

    **Bid Bond:** 5%

    **Performance Bond:** 100% of the annual contract cost for each year.

    **Contractor's Labor and Materials Payment Bond:** 25% of the total contract amount.

**Supplier Diversity Goal %:** 0%

**Supplier Diversity Goal:** Although a goal has not been assigned to this contract, Supplier Diversity maybe acheived by soliciting proposals/bids from certified minority, women, or locally owned small businesses to bid as a prime. Supplier Diversity maybe achieved by partnering/sub-contracting with a certified minority, women, or locally owned small businesses to perform any combination of work outlined in the scope of work called for in this contract. Companies providing responses to this solicitation are encouraged to offer their best proposal/bid to include Certified Minority Business Enterprise (MBE), Women  Business Enterprise (WBE), or Local Small Business (LSB) representation.

## CATEGORY I   YEAR 1

### UNIT PRICING

A. Unit Prices

| | | Estimated<br># of FDR Miles | | Cost/Mile | | Total Cost |
|---|---|---|---|---|---|---|
| Region 1 | FRONT | 357.8 | x | 4,475.88 | = | 1,601,471.51 |
| | REAR | 86.8 | x | 13,230.65 | = | 1,145,774.40 |
| Region 2 | FRONT | 247.2 | x | 4,179.78 | = | 1,033,242.52 |
| | REAR | 55.3 | x | 13,814.39 - | = | 763,935.78 |
| Region 3 | FRONT | 180.9 | x | 5,301.43 | = | 959,028.14 |
| | REAR | 63.8 | x | 13,892.56 | = | 886,345.50 |
| Region 4 | FRONT | 227.9 | x | 4,518.31 | = | 1,029,723.02 |
| | REAR | 50.3 | x | 13,136.68 | = | 660,774.89 |
| Region 5 | FRONT | 391.6 | x | 6,948.17 | = | 2,720,904.47 |
| | REAR | 89.4 | x | 18,858.61 | = | 1,685,959.50 |

**TOTAL FEEDER COST**   =   12,487,159.73

Unit Prices

| | | Estimated<br># of Tap Miles | | Cost/Mile | | Total Cost |
|---|---|---|---|---|---|---|
| Region 1 | FRONT | 199.4 | x | 5,002.04 | = | 997,406.02 |
| | REAR | 231.6 | x | 15,251.03 | = | 3,532,138.41 |
| Region 2 | FRONT | 87.9 | x | 4,672.87 | = | 410,745.59 |
| | REAR | 205.5 | x | 15,187.44 | = | 3,121,018.02 |
| Region 3 | FRONT | 133.7 | x | 6,089.50 | = | 814,165.65 |
| | REAR | 173.1 | x | 16,031.32 | = | 2,775,022.35 |
| Region 4 | FRONT | 230.0 | x | 5,366.31 | = | 1,234,251.36 |
| | REAR | 193.1 | x | 16,641.23 | = | 3,213,421.31 |
| Region 5 | FRONT | 451.4 | x | 7,720.13 | = | 3,484,866.41 |
| | REAR | 462.3 | x | 22,631.38 | = | 10,462,487.74 |

**TOTAL TAP COST**   =   30,045,522.87

BB-3.1

| | | | |
|---|---|---|---|
| Total FDR Mile Cost: | 12,487,159.73 | Divided By 3 (Yearly Cycle) = | 4,162,386.58 |
| | | + | |
| Total Tap Mile Cost: | 30,045,522.87 | Divided By 3 (Yearly Cycle) = | 10,015,174.29 |

**TOTAL UNIT COST PER YEAR**    14,177,560.86

### B. Hourly Crew Costs

Manual:
(Labor billing rate + equipment billing rate) x 2000 hours x 1 year x 8 crews =    2,538,894.66

Bucket:
(Labor billing rate + equipment billing rate) x 2000 hours x 1 year x 2 crews =    + 554,452.95

**TOTAL HOURLY CREW COST**    3,093,347.61

### C. Transmission Crew Costs

Manual:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew =    317,361.83

Bucket:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew =    214,179.37

Jaraffe crew:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew =    432,058.29

Mowing crew:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew =    312,997.29

**TOTAL TRANSMISSION CREW COSTS =**    1,276,596.78

# TOTAL BID YEAR 1 (UNIT COST PER YEAR + HOURLY CREW COSTS PER YEAR + TRANSMISSION CREW COSTS PER YEAR)

Eighteen Million, Five Hundred & Forty Seven Thousand, Five Hundred & Five

Dollars and Twenty Six Cents     **Dollars and Cents**

($ 18,547,505.26 ).

**CATEGORY I YEAR 2**

**UNIT PRICING**

A.  **Unit Prices**

| | | Estimated # of FDR Miles | | Cost/Mile | | Total Cost |
|---|---|---|---|---|---|---|
| Region 1 | FRONT | 357.8 | x | 4,587.78 | = | 1,641,508.30 |
| | REAR | 86.8 | x | 13,561.42 | = | 1,174,418.76 |
| Region 2 | FRONT | 247.2 | x | 4,284.28 | = | 1,059,073.58 |
| | REAR | 55.3 | x | 14,159.75 | = | 783,034.17 |
| Region 3 | FRONT | 180.9 | x | 5,433.96 | = | 983,003.84 |
| | REAR | 63.8 | x | 14,239.88 | = | 908,504.14 |
| Region 4 | FRONT | 227.9 | x | 4,631.27 | = | 1,055,466.09 |
| | REAR | 50.3 | x | 13,465.09 | = | 677,294.26 |
| Region 5 | FRONT | 391.6 | x | 7,121.88 | = | 2,788,927.08 |
| | REAR | 89.4 | x | 19,330.07 | = | 1,728,108.49 |

**TOTAL FEEDER COST**   =   12,799,338.72

**Unit Prices**

| | | Estimated # of Tap Miles | | Cost/Mile | | Total Cost |
|---|---|---|---|---|---|---|
| Region 1 | FRONT | 199.4 | x | 5,127.09 | = | 1,022,341.17 |
| | REAR | 231.6 | x | 15,632.31 | = | 3,620,441.87 |
| Region 2 | FRONT | 87.9 | x | 4,789.70 | = | 421,014.23 |
| | REAR | 205.5 | x | 15,567.12 | = | 3,199,043.47 |
| Region 3 | FRONT | 133.7 | x | 6,241.73 | = | 834,519.80 |
| | REAR | 173.1 | x | 16,432.11 | = | 2,844,397.90 |
| Region 4 | FRONT | 230.0 | x | 5,500.47 | = | 1,265,107.65 |
| | REAR | 193.1 | x | 17,057.26 | = | 3,293,756.84 |
| Region 5 | FRONT | 451.4 | x | 7,913.13 | = | 3,571,988.07 |
| | REAR | 462.3 | x | 23,197.17 | = | 10,724,049.93 |

**TOTAL TAP COST**   =   30,796,660.94

BB-3.3

Total FDR Mile Cost: 12,799,338.72   Divided By 3 (Yearly Cycle) = 4,266,446.24
                                              +
Total Tap Mile Cost: 30,796,660.94   Divided By 3 (Yearly Cycle) = 10,265,553.65

                                                                     14,531,999.89

                              TOTAL UNIT COST PER YEAR


**B. Hourly Crew Costs**

Manual:
(Labor billing rate + equipment billing rate) x 2000 hours x 1 year x 5 crews =   2,600,434.75

Bucket:                                                                           +
(Labor billing rate + equipment billing rate) x 2000 hours x 1 year x 2 crews =   567,605.37

                                      TOTAL HOURLY CREW COST =   3,168,040.12


**C. Transmission Crew Costs**

Manual:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew =   325,054.34

Bucket:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew =   219,179.40

Jarraffe crew:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew =   441,722.07

Mowing crew:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew =   319,939.06

                                                                         1,305,894.87
                      TOTAL TRANSMISSION CREW COSTS =


# TOTAL BID YEAR 2 (UNIT COST PER YEAR +HOURLY CREW COSTS PER YEAR + TRANSMISSION CREW COSTS PER YEAR)

Nineteen Million, Five Thousand, Nine Hundred & Thirty Four Dollars

and Eighty Seven Cents                                    **Dollars and Cents**

($ 19,005,934.87                        ).


BB-3.4

## CATEGORY I YEAR 3

### UNIT PRICING

A. **Unit Prices**

| | | Estimated # of FDR Miles | | Cost/Mile | | Total Cost |
|---|---|---|---|---|---|---|
| Region 1 | FRONT | 357.8 | x | 4,702.48 | = | 1,682,546.01 |
| | REAR | 86.6 | x | 13,900.45 | = | 1,203,779.23 |
| Region 2 | FRONT | 247.2 | x | 4,391.39 | = | 1,085,550.42 |
| | REAR | 55.3 | x | 14,513.74 | = | 802,610.03 |
| Region 3 | FRONT | 180.9 | x | 5,569.81 | = | 1,007,578.94 |
| | REAR | 63.8 | x | 14,595.87 | = | 931,216.74 |
| Region 4 | FRONT | 227.9 | x | 4,747.05 | = | 1,081,852.75 |
| | REAR | 50.3 | x | 13,801.72 | = | 694,226.62 |
| Region 5 | FRONT | 391.6 | x | 7,299.92 | = | 2,858,650.26 |
| | REAR | 89.4 | x | 19,813.32 | = | 1,771,311.20 |

**TOTAL FEEDER COST** = 13,119,322.19

| **Unit Prices** | | Estimated # of Tap Miles | | Cost/Mile | | Total Cost |
|---|---|---|---|---|---|---|
| Region 1 | FRONT | 199.4 | x | 5,255.26 | = | 1,047,899.70 |
| | REAR | 231.6 | x | 16,023.11 | = | 3,710,952.92 |
| Region 2 | FRONT | 87.9 | x | 4,909.44 | = | 431,539.59 |
| | REAR | 205.5 | x | 15,956.30 | = | 3,279,019.56 |
| Region 3 | FRONT | 133.7 | x | 6,397.78 | = | 855,382.79 |
| | REAR | 173.1 | x | 16,842.91 | = | 2,915,507.85 |
| Region 4 | FRONT | 230.0 | x | 5,637.98 | = | 1,296,735.34 |
| | REAR | 193.1 | x | 17,483.69 | = | 3,376,100.76 |
| Region 5 | FRONT | 451.4 | x | 8,110.96 | = | 3,661,297.77 |
| | REAR | 462.3 | x | 23,777.10 | = | 10,992,151.18 |

**TOTAL TAP COST** = 31,566,577.46

BB-3.5

| | | | | |
|---|---|---|---|---|
| Total FDR Mile Cost: | 13,119,322.19 | Divided By 3 (Yearly Cycle) | = | 4,373,107.40 |
| | | + | | |
| Total Tap Mile Cost: | 31,566,577.46 | Divided By 3 (Yearly Cycle) | = | 10,522,192.49 |

**TOTAL UNIT COST PER YEAR**    14,895,299.88

### B. Hourly Crew Costs

Manual:
(Labor billing rate + equipment billing rate) x 2000 hours x 1 year x 8 crews =   2,663,474.69

Bucket:
(Labor billing rate + equipment billing rate) x 2000 hours x 1 year x 2 crews =   + 581,072.42

**TOTAL HOURLY CREW COST** =   3,244,547.12

### C. Transmission Crew Costs

Manual:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew = 332,934.34

Bucket:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew = 224,297.34

Jarrife crew:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew = 451,604.68

Mowing crew:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew = 327,036.71

**TOTAL TRANSMISSION CREW COSTS** = 1,335,873.07

## TOTAL BID YEAR 3 (UNIT COST PER YEAR + HOURLY CREW COSTS PER YEAR + TRANSMISSION CREW COSTS PER YEAR)

Nineteen Million, Four Hundred & Seventy Five Thousand, Seven Hundred & Twenty Dollars and Six Cents    **Dollars and Cents**

($ 19,475,720.06 ).

## CATEGORY I YEAR 4

### UNIT PRICING

A. Unit Prices

| | | Estimated<br># of FDR Miles | | Cost/Mile | | Total Cost |
|---|---|---|---|---|---|---|
| Region 1 | FRONT | 357.8 | x | 4,820.04 | = | 1,724,609.66 |
| | REAR | 86.8 | x | 14,247.96 | = | 1,233,873.71 |
| Region 2 | FRONT | 247.2 | x | 4,501.17 | = | 1,112,689.18 |
| | REAR | 55.3 | x | 14,876.59 | = | 822,675.28 |
| Region 3 | FRONT | 180.9 | x | 5,709.06 | = | 1,032,768.41 |
| | REAR | 63.8 | x | 14,960.77 | = | 954,497.16 |
| Region 4 | FRONT | 227.9 | x | 4,865.73 | = | 1,108,899.06 |
| | REAR | 50.3 | x | 14,146.77 | = | 711,582.29 |
| Region 5 | FRONT | 391.6 | x | 7,482.42 | = | 2,930,116.51 |
| | REAR | 89.4 | x | 20,308.66 | = | 1,815,593.98 |

**TOTAL FEEDER COST** = 13,447,305.24

| Unit Prices | | Estimated<br># of Tap Miles | | Cost/Mile | | Total Cost |
|---|---|---|---|---|---|---|
| Region 1 | FRONT | 199.4 | x | 5,386.65 | = | 1,074,097.20 |
| | REAR | 231.6 | x | 16,423.69 | = | 3,803,726.74 |
| Region 2 | FRONT | 87.9 | x | 5,032.17 | = | 442,328.08 |
| | REAR | 205.5 | x | 16,355.21 | = | 3,360,995.05 |
| Region 3 | FRONT | 133.7 | x | 6,557.72 | = | 876,767.36 |
| | REAR | 173.1 | x | 17,263.98 | = | 2,988,395.55 |
| Region 4 | FRONT | 230.0 | x | 5,778.93 | = | 1,329,153.72 |
| | REAR | 193.1 | x | 17,920.78 | = | 3,460,503.28 |
| Region 5 | FRONT | 451.4 | x | 8,313.73 | = | 3,752,819.96 |
| | REAR | 462.3 | x | 24,371.52 | = | 11,266,954.96 |

**TOTAL TAP COST** = 32,355,741.90

BB-3.7

| | | | | |
|---|---|---|---|---|
| Total FDR Mile Cost: | 13,447,305.24 | Divided By 3 (Yearly Cycle) | = | 4,482,435.08 |
| | | + | | |
| Total Tap Mile Cost: | 32,355,741.90 | Divided By 3 (Yearly Cycle) | = | 10,785,247.30 |

TOTAL UNIT COST PER YEAR    15,267,682.38

**B. Hourly Crew Costs**

Manual:
(Labor billing rate + equipment billing rate) x 2000 hours x 1 year x 8 crews  =    2,728,051.22

Bucket:                                                                                                    +
(Labor billing rate + equipment billing rate) x 2000 hours x 1 year x 2 crews  =       594,861.69

TOTAL HOURLY CREW COST  =    3,322,912.91

**C. Transmission Crew Costs**

Manual:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew =    341,006.40

Bucket:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew =    229,536.00

Jarraffe crew:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew =    461,711.15

Mowing crew:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew =    334,293.78

TOTAL TRANSMISSION CREW COSTS =    1,366,547.34

# TOTAL BID YEAR 4 (UNIT COST PER YEAR +HOURLY CREW COSTS PER YEAR + TRANSMISSION CREW COSTS PER YEAR)

Nineteen Million, Nine Hundred & Fifty Seven Thousand, One Hundred & Forty Two Dollars and Sixty Two Cents                                    **Dollars and Cents**

($  19,957,142.62                    ).

## CATEGORY I YEAR 5

### UNIT PRICING

A. **Unit Prices**

| | | Estimated # of FDR Miles | | Cost/Mile | | Total Cost |
|---|---|---|---|---|---|---|
| Region 1 | FRONT | 357.8 | x | 4,940.54 | = | 1,767,724.90 |
| | REAR | 86.8 | x | 14,604.16 | = | 1,264,720.55 |
| Region 2 | FRONT | 247.2 | x | 4,613.70 | = | 1,140,506.41 |
| | REAR | 55.3 | x | 15,248.50 | = | 843,242.16 |
| Region 3 | FRONT | 180.9 | x | 5,851.78 | = | 1,058,587.62 |
| | REAR | 63.8 | x | 15,334.79 | = | 978,359.59 |
| Region 4 | FRONT | 227.9 | x | 4,987.37 | = | 1,136,621.54 |
| | REAR | 50.3 | x | 14,500.43 | = | 729,371.84 |
| Region 5 | FRONT | 391.6 | x | 7,669.48 | = | 3,003,369.42 |
| | REAR | 89.4 | x | 20,816.37 | = | 1,860,983.83 |

**TOTAL FEEDER COST**   =   13,783,487.87

| **Unit Prices** | | Estimated # of Tap Miles | | Cost/Mile | | Total Cost |
|---|---|---|---|---|---|---|
| Region 1 | FRONT | 199.4 | x | 5,521.31 | = | 1,100,949.63 |
| | REAR | 231.6 | x | 16,834.28 | = | 3,898,819.91 |
| Region 2 | FRONT | 87.9 | x | 5,157.98 | = | 453,386.28 |
| | REAR | 205.5 | x | 16,764.09 | = | 3,445,019.93 |
| Region 3 | FRONT | 133.7 | x | 6,721.66 | ≈ | 898,686.54 |
| | REAR | 173.1 | x | 17,695.58 | = | 3,063,105.44 |
| Region 4 | FRONT | 230.0 | x | 5,923.40 | = | 1,362,382.57 |
| | REAR | 193.1 | x | 18,368.80 | = | 3,547,015.87 |
| Region 5 | FRONT | 451.4 | x | 8,521.58 | ≈ | 3,846,640.46 |
| | REAR | 462.3 | x | 24,980.81 | = | 11,548,628.83 |

**TOTAL TAP COST**   ≈   33,164,635.45

BB-3.9

| | | |
|---|---|---|
| Total FDR Mile Cost: | 13,783,487.87 | Divided By 3 (Yearly Cycle) = 4,594,495.96 |
| Total Tap Mile Cost: | 33,164,635.45 | + Divided By 3 (Yearly Cycle) = 11,054,878.48 |
| | **TOTAL UNIT COST PER YEAR** | 15,649,374.44 |

**B. Hourly Crew Costs**

Manual:
(Labor billing rate + equipment billing rate) x 2000 hours x 1 year x 8 crews = 2,781,794.30

Bucket:
(Labor billing rate + equipment billing rate) x 2000 hours x 1 year x 2 crews = + 608,980.94

**TOTAL HOURLY CREW COST** = 3,390,775.23

**C. Transmission Crew Costs**

Manual:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew = 349,275.24

Bucket:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew = 229,536.00

Jaraffe crew:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew = 472,046.61

Mowing crew:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew = 341,713.90

**TOTAL TRANSMISSION CREW COSTS** = 1,392,571.76

# TOTAL BID YEAR 5 (UNIT COST PER YEAR +HOURLY CREW COSTS PER YEAR + TRANSMISSION CREW COSTS PER YEAR)

Twenty Million, Four Hundred & Thirty Two Thousand, Seven Hundred & Twenty One Dollars and Forty Three Cents                **Dollars and Cents**

($ 20,432,721.43 ).

## GRAND TOTAL BID

**YEAR 1**    18,547,505.26

**YEAR 2**    19,005,934.87

**YEAR 3**    19,475,720.06

**YEAR 4**    19,957,142.62

**YEAR 5**    20,432,721.43


## 5 YEAR TOTAL    Ninety Seven Million, Four Hundred and Nineteen

Thousand, Twenty Four Dollars and Twenty Four Cents

_____ **Dollars and Cents**

($  97,419,024.24                      ).


## *PLEASE SUBMIT EMERGENCY STORM CREW RATES WITH YOUR BID

Note:  This contract may be awarded in whole or in part.

BB-3.11

MILEAGES ARE NOT GUARANTEED
ALL MILEAGE WILL BE PAID AT NEAREST TENTH OF A MILE.

D. Removal prices (For Unit Work Only)

| 0-12" DBH | Part of Bid |
| 12"+ DBH | Will be worked with Labor and Equipment Rates |

### REGION BOUNDARIES

Region 1    Tipton County Line south on Austin Peay Hwy to I-240. I-240 to Wolf River,
            Wolf River east to Fayette County line.

Region 2    Wolf River from Fayette County line west to I-240, I-240 south and west to
            Getwell Rd., Getwell Rd., south to Knight Arnold Rd., west to Lamar, Lamar
            south to State Line.

Region 3    State Line on Lamar north to Knight Arnold, Knight Arnold east to Getwell Rd.,
            Getwell Rd. north to I-240, I-240 west, I-240 north to Madison; west to
            Mississippi River.

Region 4    Mississippi River on the west side, Madison east to I-240, I-240 to Austin Peay
            Hwy., Austin Peay Hwy. North to Tipton County line.

Region 5    I-240 on all four sides (north, south, east, and west)


Maps to be issued at Pre-Bid meeting.

Things to be considered in figuring Unit Prices and Labor and Equipment Rates

1.    1 Full-Time Manager or Supervisor
2.    1 General Foreman per 8 crews
3.    Cell phone for each crew, General Foreman, Manager or Supervisor

### END OF THIS PAGE

# CATEGORY II

## LABOR AND EQUIPMENT RATES

A. Labor Cost: See Article 2 titled "Labor to be furnished by the Contractor, "in the Specifications Section.

\* Overhead consists of transportation and labor costs of requested supervision, insurance, taxes and profit.  This is a percentage of the minimum pay rate per hour. (See Crew Makeup on Page  ).

\*\*   General Foreman and his vehicle will not be billable.  This will be included in overhead.

\*\*\*   One General Foreman per eight (8) crews.

\+   Tree Trimmer A shall be paid an additional minimum of fifty cents per hour when filling in for the foreman or given a crew on a trial basis.  MLGW will only pay $.50 for Work out of Class.

B. Equipment Costs:  See Article 3 titled "Equipment to be furnished by the Contractor, "in the Specifications Section.  Equipment costs are for the duration of the Contract.

Crew Configuration:  The following is an approximate makeup for crews used on T&E jobs.

**Manual:**

| Manpower | Equipment |
|---|---|
| Working Foreman A/Crewleader | Split Dump |
| Tree Trimmer A | Chipper |
| Tree Trimmer B | 3 Saws |
| Trimmer Helper | |

**Bucket:**

| Manpower | Equipment |
|---|---|
| Working Foreman A/Crewleader | 65' Aerial Lift |
| Tree Trimmer | Chipper |
| | 2 Saws |

**Jaraffe:**

| Manpower | Equipment |
|---|---|
| Working Foreman A/Crewleader | Jaraffe |
| Trimmer A/Operator | Tractor with brown tree cutter |
| Trimmer Helper | 1 chainsaw |

Mowing:

**Manpower**

Working Foreman A/Crewleader
Trimmer Helper

**Equipment**

Tree mower 120-200 hp
Truck w/trailer
1 chainsaw

C.   **Available Manpower**

Tree Trimmer A
Tree Trimmer B
Tree Trimmer C
Trimmer Helper
Working Foreman A/Crewleader

**Number Available Upon Request**

All equipment available upon
request.

BB-3.14

## LABOR AND EQUIPMENT RATES

**COMPANY NAME:**

### REGULAR TIME RATE

| Classification | YEAR 1 BILLING RATE | YEAR 2 BILLING RATE | YEAR 3 BILLING RATE | YEAR 4 BILLING RATE | YEAR 5 BILLING RATE |
|---|---|---|---|---|---|
| Foreman | 39.38 /HR | 40.36 /HR | 41.37 /HR | 42.41 /HR | 43.47 /HR |
| Trimmer A | 34.08 /HR | 34.93 /HR | 35.80 /HR | 36.70 /HR | 37.62 /HR |
| Trimmer B | 32.27 /HR | 33.07 /HR | 33.90 /HR | 34.75 /HR | 35.62 /HR |
| Trimmer C | 30.17 /HR | 30.93 /HR | 31.70 /HR | 32.49 /HR | 33.31 /HR |
| Trimmer Helper | 28.80 /HR | 29.52 /HR | 30.26 /HR | 31.02 /HR | 31.79 /HR |
| Work Out of Class | .50 /HR | .50 /HR | .50 /HR | .50 /HR | .50 /HR |

### OVERTIME RATE

| Classification | YEAR 1 BILLING RATE | YEAR 2 BILLING RATE | YEAR 3 BILLING RATE | YEAR 4 BILLING RATE | YEAR 5 BILLING RATE |
|---|---|---|---|---|---|
| Foreman | 56.70 /HR | 58.12 /HR | 59.57 /HR | 61.06 /HR | 62.59 /HR |
| Trimmer A | 49.07 /HR | 50.30 /HR | 51.56 /HR | 52.85 /HR | 54.17 /HR |
| Trimmer B | 46.46 /HR | 47.63 /HR | 48.82 /HR | 50.04 /HR | 51.29 /HR |
| Trimmer C | 43.45 /HR | 44.54 /HR | 45.65 /HR | 46.79 /HR | 47.96 /HR |
| Trimmer Helper | 41.48 /HR | 42.52 /HR | 43.58 /HR | 44.67 /HR | 45.78 /HR |
| Work Out of Class | .72 /HR | .72 /HR | .72 /HR | .72 /HR | .72 /HR |

3B -3.15

# HOURLY RATE PRICING SUBMITTAL

| Equipment Type | Year 1 Billing Rate | Year 2 Billing Rate | Year 3 Billing Rate | Year 4 Billing Rate | Year 5 Billing Rate |
|---|---|---|---|---|---|
| 65' Lift w/ Dump Body | $26.13 | $26.65 | $27.18 | $27.73 | $28.28 |
| 2 Ton Split Dump | $13.78 | $14.06 | $14.34 | $14.62 | $14.92 |
| Chain Saw | $1.06 | $1.06 | $1.10 | $1.12 | $1.14 |
| Brush Chipper 12" (Non Self Feed) | $6.85 | $6.99 | $7.13 | $7.27 | $7.41 |
| Disc Chipper 12" (Self Feed) | $7.21 | $7.35 | $7.50 | $7.65 | $7.80 |
| Disc Chipper 15" (Self Feed w/ winch) | $10.24 | $10.44 | $10.65 | $10.86 | $11.08 |
| Disc Chipper 18" (Self Feed w/ winch) | $12.43 | $12.68 | $12.93 | $13.19 | $13.46 |
| Jarraff (Rubber Tire) | $82.16 | $83.80 | $85.48 | $87.19 | $88.93 |
| Jarraff (Track) | $84.90 | $86.59 | $88.33 | $90.09 | $91.89 |
| Support Truck with Trailer | $22.24 | $22.68 | $23.13 | $23.60 | $24.07 |
| 1/2 Pick Up 2x4 | $11.87 | $12.11 | $12.35 | $12.59 | $12.85 |
| 1/2 Pick Up 4x4 | $12.39 | $12.64 | $12.89 | $13.15 | $13.41 |
| 3/4 Ton Pick Up 2x4 | $12.26 | $12.50 | $12.75 | $13.01 | $13.27 |
| 3/4 Ton Pick UP 4x4 | $13.42 | $13.69 | $13.96 | $14.24 | $14.53 |
| ATV | $4.80 | $4.90 | $4.99 | $5.09 | $5.20 |
| ATV w/ Sprayer | $5.14 | $5.25 | $5.35 | $5.46 | $5.57 |
| UTV | $6.40 | $6.53 | $6.66 | $6.79 | $6.93 |
| UTV w/ Sprayer | $6.86 | $6.99 | $7.13 | $7.28 | $7.42 |
| 300 Gallon Spray Tank | $7.22 | $7.37 | $7.51 | $7.66 | $7.82 |
| 4x4 Spray Truck | $19.50 | $19.89 | $20.29 | $20.69 | $21.11 |
| Backpack Sprayer | $1.27 | $1.29 | $1.32 | $1.34 | $1.37 |
| Tree Mower < 120 HP | $58.75 | $59.93 | $61.12 | $62.35 | $63.59 |
| Tree Mower 120-150 HP | $65.03 | $66.33 | $67.65 | $69.01 | $70.39 |
| Tractor w/ Brown Cutter | $30.56 | $31.17 | $31.79 | $32.43 | $33.07 |
| Tractor w/ Bushhog+A48 | $30.56 | $31.17 | $31.79 | $32.43 | $33.07 |
| Pole Chain Saw | $1.39 | $1.42 | $1.45 | $1.47 | $1.50 |
| Stump Grinder | $34.17 | $34.85 | $35.55 | $36.26 | $36.98 |
| Crane | $277.78 | $283.33 | $289.00 | $294.78 | $300.68 |
| Truck w/ Prentice Loader | $46.03 | $46.95 | $47.89 | $48.85 | $49.82 |
| Foliar Mix #1 per Gallon | $3.33 | $3.40 | $3.47 | $3.54 | $3.61 |
| Foliar Mix #2 per Gallon | $1.67 | $1.70 | $1.73 | $1.77 | $1.80 |
| Aquatic Mix per Gallon | $1.93 | $1.97 | $2.01 | $2.05 | $2.09 |
| Vine Mix | $37.33 | $38.08 | $38.84 | $39.62 | $40.41 |
| | | | | | |
| 55' Lift Truck w/ Dump | $19.71 | $20.10 | $20.50 | $20.91 | $21.33 |
| Backhoe w/ Trailer | $45.83 | $46.75 | $47.69 | $48.64 | $49.61 |
| 60' Lift Truck Flat Bed | $33.25 | $33.92 | $34.60 | $35.29 | $36.00 |
| Mini Skid Steer w/ Grapple and Trailer | $11.25 | $11.25 | $11.48 | $11.70 | $11.94 |
| Back Yard Lift w/ Trailer | $42.50 | $43.37 | $44.25 | $45.16 | $46.08 |
| Back Yard Jarraff w/ Trailer | $48.75 | $49.74 | $50.76 | $51.80 | $52.85 |

BB_3.16

CONTRACT NAME:  Line Clearance

CONTRACT NO:  12077

## BIDDING BLANK

| 65 | % Labor |
|---|---|
| 35 | % Equipment |
| 0 | % Material |

## NEXT PAGE

BB - 4

In submitting the list of subcontractors below, the bidder agrees:

1. MLGW shall have the final approval of all subcontractors listed.
2. The bidder shall provide proof that each of the bidder's subcontractors has not been federally debarred and that each bidder is registered to do business in Tennessee at https://tnbear.tn.gov/Ecommerce/FilingSearch.aspx. See #3 on page BB – 30.
3. The bidder acknowledges that past poor performance of any subcontractor may prohibit that subcontractor from performing on this Contract.
4. The bidder shall provide within seven (7) work days, a replacement for any subcontractor not approved by MLGW.
5. No substitute will be allowed unless approved by MLGW.
6. When requested, each subcontractor shall provide insurance certificates, reflecting coverage proportionate to that required of the Contractor.
7. Only the work actually performed by a minority-, woman-, or locally-owned small business enterprise ("MWBE/LSB") with the MWBE/LSB's own forces will be counted as MWBE/LSB participation. An MWBE/LSB's participation can only be counted if the MWBE/LSB performs a commercially useful function on the Contract.
8. The bidder, if awarded a contract, must submit signed copies of all subcontractor agreements to MLGW at the pre-commencement meeting.
9. All subcontractors listed must attend the pre-commencement meeting.
   *See the Definitions of Recognized Ownership Classifications article on page BB-8.*

Contractor: Bean & Prince Contractors, Inc.
Contact Name: Lee A. Bean
Address: 1998 Danielson Place, Memphis, TN 38114
Phone Number: 901-774-5237
Email: president@beanandprince.com
License No.: 00028566
Registered with Secretary of State: Yes X   No __
MWBE/LSB Certified: Yes X   No __
Dollar Amount 1,050,000   % of Total Bid 30 %
References Attached (circle) Yes  :  No X
Ethnicity of Owner:  African American
Male X   Female __
Description of Subcontracted Work: Labor, workforce, equipment to perform line clearance duties.

Contractor: PS Energy Group, Inc.
Contact Name: Roger Murray, CFO
Address: 4480 North Shallowford Ln, Dunwoody, Ga
Phone Number: 770-350-3000
Email: Roger.Murray@PSEnergy.com
License No.: W030044
Registered with Secretary of State: Yes X   No __
MWBE/LSB Certified: Yes X   No __
Dollar Amount 200,000   % of Total Bid 6 %
References Attached (circle) Yes ___   No X
Ethnicity of Owner:  Caucasian
Male __   Female  X
Description of Subcontracted Work: _____
Fuel supplier

Contractor: Xtreme Clean, Inc.
Contact Name: Ronnie Johnson
Address: 3750 Hacks Cross Rd. Memphis, TN
Phone Number: 901-219-1725
Email: Xtreme.Cleaning@yahoo.com
License No.: 106005839
Registered with Secretary of State: Yes X   No __
MWBE/LSB Certified: Yes X   No __
Dollar Amount 615,000   % of Total Bid 18 %
References Attached (circle) Yes ___   No X
Ethnicity of Owner:  African American
Male X   Female __
Description of Subcontracted Work: Supply labor
@ groundperson and trimmer positions.

Contractor: Sutton Ford
Contact Name: Michael Miller
Address: 21315 Central Ave., Matteson, IL
Phone Number: 855-425-6890
Email: MMiller@suttonford.com
License No.: 10080042
Registered with Secretary of State: Yes X   No __
MWBE/LSB Certified: Yes X   No __
Dollar Amount 200,000   % of Total Bid 6 %
References Attached (circle) Yes ___   No X
Ethnicity of Owner:  Caucasian
Male X   Female __
Description of Subcontracted Work: _____
Vehicle supplier

*Use additional sheets if necessary.*

BB - 5

In submitting the list of subcontractors below, the bidder agrees:

1. MLGW shall have the final approval of all subcontractors listed.
2. The bidder shall provide proof that each of the bidder's subcontractors has not been federally debarred and that each bidder is registered to do business in Tennessee at https://tnbear.tn.gov/ Ecommerce/FilingSearch.aspx. See #3 on page BB – 30.
3. The bidder acknowledges that past poor performance of any subcontractor may prohibit that subcontractor from performing on this Contract.
4. The bidder shall provide within seven (7) work days, a replacement for any subcontractor not approved by MLGW.
5. No substitute will be allowed unless approved by MLGW.
6. When requested, each subcontractor shall provide insurance certificates, reflecting coverage proportionate to that required of the Contractor.
7. Only the work actually performed by a minority-, woman-, or locally-owned small business enterprise ("MWBE/LSB") with the MWBE/LSB's own forces will be counted as MWBE/LSB participation. An MWBE/LSB's participation can only be counted if the MWBE/LSB performs a commercially useful function on the Contract.
8. The bidder, if awarded a contract, must submit signed copies of all subcontractor agreements to MLGW at the pre-commencement meeting.
9. All subcontractors listed must attend the pre-commencement meeting.
   *See the Definitions of Recognized Ownership Classifications article on page BB-8.*

| | |
|---|---|
| Contractor: SEC Auto Solutions | Contractor: Shore to Door, LLC |
| Contact Name: Stephen St. Andre' | Contact Name: Christine Cohen |
| Address: 640 N. 1st St. Dixon, CA | Address: P.O. Box 72678, Marietta, GA |
| Phone Number: 707-310-9890 | Phone Number: 678-978-5775 |
| Email: support@secautosolutions.com | Email: CCohen@shoretodoorllc.com |
| License No.: 0000004455 | License No.: 13050017 |
| Registered with Secretary of State: Yes X  No___ | Registered with Secretary of State: Yes X  No___ |
| MWBE/LSB Certified: Yes X  No___ | MWBE/LSB Certified: Yes X  No___ |
| Dollar Amount 200,000 % of Total Bid 6 % | Dollar Amount 100,000 % of Total Bid 3 % |
| References Attached (circle) Yes ___ No X | References Attached (circle) Yes ___ No X |
| Ethnicity of Owner: Caucasian | Ethnicity of Owner: Caucasian |
| Male___ Female X | Male___ Female X |
| Description of Subcontracted Work: Vehicle supplier | Description of Subcontracted Work: Safety supplies |
| Contractor: | Contractor: |
| Contact Name: | Contact Name: |
| Address: | Address: |
| Phone Number: | Phone Number: |
| Email: | Email: |
| License No.: | License No.: |
| Registered with Secretary of State: Yes ___ No___ | Registered with Secretary of State: Yes ___ No___ |
| MWBE/LSB Certified: Yes ___ No___ | MWBE/LSB Certified: Yes ___ No___ |
| Dollar Amount ___ % of Total Bid ___ % | Dollar Amount ___ % of Total Bid ___ % |
| References Attached (circle) Yes ___ No ___ | References Attached (circle) Yes ___ No ___ |
| Ethnicity of Owner: | Ethnicity of Owner: |
| Male___ Female | Male___ Female |
| Description of Subcontracted Work: | Description of Subcontracted Work: |

*Use additional sheets if necessary.*

BB - 5

Under the conditions of the Notice to Bidders, attached is a Surety Company Bid Bond for 5% of bid price or in lieu, a certified check. If this bid is accepted, the bidder must execute the Contract and furnish a satisfactory performance and payment bond within 14 days from notification of award. Failure to do so may cause MLGW to declare that the bidder has abandoned the Contract. This bid shall be null and void. The bid bond or certified check accompanying this bond shall be forfeited to and shall become the property of MLGW. Otherwise the check shall be returned to the bidder or the bid bond shall be cancelled by MLGW.

In case a business entity shall be a bidder, all statements contained shall apply to the entity and to each partner, member or officer.

In making the awards, consideration will be given to the experience of the bidder in performing the required work, the facilities for doing this work, any exceptions noted by the bidder in the bidder's bid, ability to complete the work as required by MLGW, compliance with the MLGW Supplier Diversity Policy and cost.

Failure to furnish information solicited in this document will be grounds for dismissal of the bid.

All bids must be made in duplicate upon the blank form of the bid attached to the Contract. Each price shall be in writing and numbers, and in case of variance, the price in writing shall prevail. The duplicate bid must be marked "DUPLICATE." In case of discrepancy between the original and duplicate bid, as filed, the original shall govern.

Replies will be issued to all bidders of record by addenda and will become part of the Contract. Neither MLGW nor MLGW's representatives will be responsible for oral clarification. Questions must be received by the MLGW Representative at least five (5) work days before the Bid Opening date. No addenda will be issued less than 48 hours before the Bid Opening date.

The undersigned, as Bidder, acknowledges receipt of the following addenda:

Addendum No: ___None___        Dated:_____

Addendum No: _____        Dated:_____

Addendum No: _____        Dated:_____

**LAST ITEM ON PAGE**

## SUPPLIER DIVERSITY

This section provides the following valuable information on the MLGW Supplier Diversity Program. The information contained in this section is governed by the MLGW Supplier Diversity Policy effective January 1, 2014. For a complete copy of the policy, please visit www.mlgw.com/SDPolicy. Please read the entire section to ensure you fully understand what paperwork is required based on the level of Supplier Diversity participation included in your bid.

The following subsections are contained:
- o Program Intent
- o Program Components
- o Definitions of Ownership Classifications Recognized
- o Agencies Whose Certifications are Accepted
- o Bidder Responsibilities
- o Required Documentation Based on Proposed Supplier Diversity Participation
- o Supplier Diversity Goal for this Project
- o Supplier Diversity Participation Transmittal
- o Required Forms Provided:
  - o MLGW Minority, Women, and Locally Owned Small Business Enterprise Assurance Statement for Subcontracting
  - o MLGW Minority, Women, and Locally Owned Small Business Enterprise Assurance Statement for Prime Contracting
  - o Non-Attainment Justification Letter
  - o MLGW Supplier Diversity and Subcontractor Bid Summary Form

### Program Intent

The MLGW Board of Commissioners intends to encourage the growth of minority, women and locally owned small business enterprises (collectively "MWBE/LSB") by providing them with the opportunity to furnish MLGW with goods and services through MLGW's Supplier Diversity Program. More specifically, it is the expressed intent of this program to address present effects of historical discrimination against minority contractors and suppliers, obstacles faced by women-owned businesses in gaining access to procurement opportunities, and barriers to scalability faced by local small businesses ("LSB"). It is the responsibility of MLGW to ensure that such businesses are provided fullest consideration to compete under the competitive bidding provisions of MLGW.

It is the expressed intent of MLGW that all business classifications covered under this policy have the maximum practicable opportunity to participate in the performance of purchase orders, contracts, and subcontracts. And, in furtherance of this policy, the posture of all MLGW staff shall be proactive to ensure supplier diversity.

### Program Components

Procurement opportunities may be determined for solicitation between Sheltered Market or Unrestricted Market participants. Sheltered Market opportunities will only be open for competition by and between LSBs. A sheltered market procurement of a single acquisition or a class of acquisitions may be total or partial. To be eligible to participate in sheltered market procurement opportunities, an LSB must perform at least a given percentage of the Contract. This provision

limits the amount of subcontracting a LSB may enter into with other firms when performing these types of contracts. The sheltered market procurement requirement will only apply when there is a reasonable expectation that offers will be obtained from three (3) or more LSBs that are competitive in terms of market prices, quality and delivery. If only one (1) acceptable offer is received from a responsible LSB, the sheltered market procurement will be withdrawn and the product or service, if still needed, will be solicited on an unrestricted basis. Unrestricted Market opportunities will be open to all bidders in the marketplace. Unrestricted Market opportunities may have Supplier Diversity participation goals.

**Definitions of Recognized Ownership Classifications**

**Minority Business Enterprise ("MBE")** is defined as a business enterprise which is at least 51% owned, operated and independently controlled by a person or persons who is/are minority group members. For these purposes, minority group members are: African Americans, Native Americans, Hispanic Americans, and Asian-Pacific Americans, who is/are United States citizens.

**Woman Business Enterprise ("WBE")** is defined as a business which is at least 51% owned, operated and controlled by United States citizens who are female or a group of females.

**Locally Owned Small Business ("LSB")** is defined as a business enterprise with its headquarters and physical principal office located in Shelby County, Tennessee which had gross annual sales in the previous year less than the Standard Industrial Classification ("SIC") category limits for the business SIC code found in 13 CFR, Part 121.601, and who is an independent and continuing enterprise for profit, performing a commercially useful function, which is at least 51% owned, operated, and independently controlled by a resident or residents of the Memphis Metropolitan Statistical Area who is/are United States citizen(s).

**Accepted Agency Certifications**

MLGW accepts the certification of any recognized organization that certifies businesses covered under the MLGW Supplier Diversity Program definitions for MWBE/LSBs, and managed by a person or persons who represent one (1) of the three (3) business classifications outlined in the program definitions. The MWBE/LSB certification must be current at the time of submission of the bid.

The bidder must provide a copy of the certificate of certification for each company submitted with the bid. MLGW reserves the right not to accept certifications if the company does not meet the criteria for certification outlined in the policy.

Certifying organizations include, but are not limited to:

*Mid-South Minority Business Council Continuum's Uniform Certification Agency
*Women's Business Enterprise National Council
*Tri-State Minority Supplier Development Council
*National Minority Supplier Development Council
*City of Memphis
*Shelby County Government

**Bidder Responsibilities**

All bidders on any eligible project for construction, architectural and engineering services, professional services, and other services or goods and supplies in which a Supplier Diversity participation goal has been set must complete and submit the required Supplier Diversity documents as provided in the solicitation document.

Bidders not meeting the stated Supplier Diversity project participation goal must document their good faith efforts and thoroughly complete any provided Non-Attainment Justification documents.

Bidders are required to document their activities in the solicitation and selection of subcontractors to ensure the process is carried out in a nondiscriminatory manner.

The apparent Lowest and Best Bidder must submit to MLGW, within 10 days of receipt of the fully executed contract from MLGW, copies of all executed contracts with MWBE/LSB subcontractors listed in the bid. Upon receipt of the fully executed subcontracts, MLGW will issue a Notice to Proceed Letter to the prime contractor. The Contractor will report to the Supplier Diversity Coordinator ("SDC") any MWBE/LSB that will not be able to perform as provided in the bid documents. The SDC must approve the replacement subcontractor.

When requesting payment, prime contractors must complete and submit all invoice processing and Supplier Diversity participation documents provided by MLGW along with copies of invoices from MWBE/LSB subcontractors included in the Contract.

Failure of a prime contractor to complete and submit the required Supplier Diversity reporting documents and copies of the prime contractor's subcontractor's invoices may result in a delay or non-payment of the prime contractor's invoices.

When requesting annual renewals of contracts, the prime contractor must submit updated certification certificates for all MWBE/LSBs listed in the Contract at the time the renewal is requested.

**Required Documentation Based on Supplier Diversity Participation**

The bidder must submit the combination of documents based on the level of Supplier Diversity participation in the bidder's bid.

Upon award, these documents shall become a part of the Contract and subject to noncompliance penalties. Sample documents are included. If there is no goal for this Contract, documentation is not required.

Submission of falsified documentation will be grounds for rejection of the bid. The bid will be deemed nonresponsive and will not be forwarded for further review or evaluation. In addition, both the prime contractor and the subcontractor may be debarred from contracting with MLGW. Discovery of false information concerning Supplier Diversity during the contract period will be grounds for termination of the Contract. MWBE/LSB Certification status will be verified for all subcontractors and suppliers. Suppliers and subcontractors misrepresented as a certified firm will

BB - 9

not be considered toward fulfillment of Supplier Diversity goals and the bid will be deemed nonresponsive.

## MWBE/LSB Assurance Statements

The bidder shall submit, with the bidder's bid, MWBE/LSB Assurance Statement(s) for Subcontracting ("Assurance Statement") for each subcontractor being used to meet the Supplier Diversity goal for this bid. Each Statement must be complete with the names of MWBE/LSB providers, contact information, a description of the work each performs, dollar value of work and signature of bidding parties of each proposed MWBE/LSB subcontractor. Bidders are reminded of the specific prohibition against agreements between a bidder and a MWBE/LSB in which the MWBE/LSB promises not to provide subcontracting quotations to other bidders. The information in this Assurance Statement will be evaluated by MLGW to determine compliance with the Supplier Diversity goal and bid responsiveness.

There must be one (1) Assurance Statement for each proposed MWBE/LSB subcontractor properly completed and signed by the MWBE/LSB and the bidder. If Bidder's Assurance Statement proposes to attain an MWBE/LSB percentage higher than the established goal, the proposed goal stated on the Assurance Statement will become the contractual requirement subject to penalties for noncompliance. If the primary bidder is a certified MWBE/LSB, the primary bidder should complete the MWBE/LSB Assurance Statement(s) for Prime Contractor.

If the subcontractors submitted with the bid are NOT certified during bid submission or if assurance statements are not complete and accurate, the bid will be deemed nonresponsive and will not be further considered for contract award unless a Non-attainment Justification Letter is provided and deemed responsive.

If the bidder's MWBE/LSB Assurance Statement(s) for Subcontracting proposes an MWBE/LSB percentage less than the stated goal, the Bidder must complete the Non-Attainment Justification Letter outlining why the balance of the goal was not met. Use the form letter in this document.

## Non-Attainment Justification

Bidders may complete the form in the bid documents or replicate the form on company letterhead and submit it with the bid response. Acceptance of the Non-Attainment Justification Letter is at the sole discretion of MLGW.

If, in MLGW's sole evaluation of the Non-Attainment Justification Letter, MLGW finds the justification invalid, the bid will be deemed nonresponsive and will not be further considered for review, evaluation or Contract award. If, however, MLGW finds the justification valid, the bidder's bid will be responsive. If MLGW enters into a Contract based on the written Non-Attainment Justification Letter, the MWBE/LSB percentage accepted by MLGW will become a contractual requirement subject to penalties for noncompliance.

**NEXT PAGE**

BB - 10

**Supplier Diversity Goal for this Project: 0%**

The MLGW Board of Commissioners intends to encourage the growth of minority, women and locally owned small business enterprises (collectively "MWBE/LSB") by providing them with the opportunity to furnish MLGW with goods and services through MLGW's Supplier Diversity Program. If a Supplier Diversity participation goal is set for this project, it may be achieved by partnering or subcontracting with certified MWBE/LSB to perform or provide any combination of work, materials/supplies, equipment and/or other ancillary services required to fulfill the work to be done for this project. **The goal for this project is outlined on the Bidding Blank found on page BB - 2 of this solicitation.**

The percentage of participation is defined as the dollar value of subcontracts awarded to certified MWBE/LSBs divided by the total proposed bid amount. If the bidder is a certified MWBE/LSB, then the Supplier Diversity participation goal for this solicitation shall be deemed met at 100%. One (1) or a combination of several MWBE/LSBs may be utilized to meet the established goal stated on page BB - 2. Companies providing responses to this solicitation are to offer their best response in completing this project including the requested Certified MWBE/LSB representative.

You may contact recognized agencies who certify businesses covered under the MLGW Supplier Diversity Program definitions (MWBE/LSB) for companies who may provide the services needed for this project. The certification must be based on the business being at least 51% owned, controlled, operated and managed by a person or persons who represent one (1) of the three (3) business classifications outlined in the Definitions of Recognized Ownership Classifications subsection. Agencies whose certification is accepted include, but are not limited to those listed under Accepted Agency Certifications.

Bids received from or including certified MWBE/LSB companies in bid responses shall be deemed as an effective response to solicitations in MLGW's effort to make awards based on "best bid." Best Bid is defined as the most responsive proposal, solicitation or offer that meets required specifications including, if applicable, any Supplier Diversity goal as set in the Contract Documents. Award decisions will be made based on evaluating bids in compliance with the Best Bid definition. All forms should be filled in with information requested or "N/A" (not applicable).

If you have questions or need additional information, please contact the Supplier Diversity Department at (901) 528-4635.

**\*Failure to recognize and address the Supplier Diversity Policy and the goal for this project found on the Bidding Blank on page BB – 2 of this solicitation, when applicable, by not including the required documentation will cause your bid to be deemed nonresponsive and your bid will not be further reviewed, evaluated or considered for award.\***

<u>**NEXT PAGE**</u>

BB - 11

Unrestricted Market or Partial Sheltered Market
Supplier Diversity Participation Transmittal
*(This transmittal and the applicable forms shall be completed and submitted with the bid.)*

Contract No: 12877

Contract Name: Line Clearance

Bidder's Name:  Asplundh Tree Expert, LLC

Please check the section below that describes the Supplier Diversity participation for this bid and include the applicable required documents. Submission alone of the documents listed below will neither guarantee compliance nor advancement to Phase II of the evaluation process as outlined in the Evaluation Criteria and Procedures article of this bid. For clarification regarding the required documentation outlined in the sections below, please carefully review the Required Documentation Based on Supplier Diversity Participation article in this bid.

Bidders are to ensure all blanks are filled with: (a) specific terms or responses; (b) a straight line to indicate nothing goes in the blank; or (c) "N/A" (Not Applicable). Failure to address every blank or question with the specific terms or response, a strike through (straight line), or "N/A" (not applicable) may render the bid nonresponsive and ineligible for further consideration.

X   Section I:  Supplier Diversity Participation meets or exceeds the stated goal
     The following documents are attached:

X   Assurance Statements for Unrestricted or Partial Sheltered Market Subcontracting for each
     subcontractor;
___  Copies of Certification certificates for each subcontractor;
___  Assurance Statement for Unrestricted or Partial Sheltered Market Prime Contractor
___  Copy of Certification certificate for the Prime Contractor
X   MLGW Supplier Diversity and Subcontractor Bid Summary Form

___  Section II:  Supplier Diversity Participation does not meet the stated goal:
     The following documents are attached:

___  Assurance Statements for Unrestricted or Partial Sheltered Market Subcontracting for each
     subcontractor
___  Copies of Certification certificates for each subcontractor
___  Non-Attainment Justification Letter addressing why the balance of the goal was not met.
___  MLGW Supplier Diversity and Subcontractor Bid Summary Form.

___  Section III:  There is no Supplier Diversity Participation in this bid to meet the stated
     goal:
     The following documents are attached:

___  Non-Attainment Justification Letter

BB - 12

# Supplier Diversity Forms

MLGW Minority, Women and Locally Owned Small Business Enterprise
Assurance Statement for Unrestricted or Partial Sheltered Market Subcontracting

Date  3/14/19

Memphis Light, Gas and Water Division
P.O. Box 430
Memphis, TN 38101-0430

Contract No: 12077

Contract Name: Line Clearance

Asplundh Tree Expert, LLC  ("Bidder"), having submitted a bid for the above referenced Memphis Light, Gas and Water Division of the City of Memphis, Tennessee contract, advises that, contingent upon award of the contract to our company as successful bidder, we have agreed to utilize the services of the following certifying entity's certified minority, woman, or locally owned small business enterprise ("MWBE/LSB").

MWBE/LSB Subcontractor

Company Name:  Bean & Prins Contractors, Inc.

Address: 1896 Danielson Place                    Phone Number:  901-774-6237

City:  Memphis                    State:  TN          Zip:  38114

Detailed description of Work to be performed:    Labor, additional, equipment

To perform line clearance duties.

Dollar Value:  $1,050,000.00

The undersigned has agreed to perform work with the above project as a:

☒ Subcontractor       ☐  Consultant       ☐  Supplier

Certification Classification: ☒ MBE  ☐ WBE  ☐ LSB Certification Number

Certification Agency:

Please attach a copy of the certificate
Ethnicity of Owner:  African American          Male  X   Female
See the Definitions of Recognized Ownership Classifications article.

Contact Name:  Lee A. Bean                    Title:  President/CEO

MWBE/LSB Signature:  Lee A. Bean      Date  4-18-19

NEXT PAGE

BB - 14

The total dollar value of MWBE/LSB participation listed above is $ 1,050,000.00  which is 1.07 % of the total bid amount.

The undersigned will enter into a written agreement with the above MWBE/LSB contractor for this work described upon award and execution of a contract with Memphis Light, Gas and Water Division, of the City of Memphis, Tennessee.

Sincerely,

By: _____  ("Bidder's Officer")

Print Name:  Gregg C. Asplundh

Title:  Executive Vice President,

Signatures of all parties are required. Failure to sign will not be considered a Minor Irregularity.

**LAST ITEM ON PAGE**

BB - 15



# Uniform Certification Agency
## CERTIFIED MINORITY BUSINESS ENTERPRISE
Presented To

Bean & Prince Contractors. Inc.

HAS SUCCESSFULLY MET ALL REQUIREMENTS AS ESTABLISHED BY THE MMBC CONTINUUM
AND THE UNIFORM CERTIFICATION AGENCY FOR CERTIFICATION AS A MINORITY BUSINESS
ENTERPRISE. THIS CERTIFICATE RELATES TO MBE STATUS AND IS NOT CERTIFICATION OF
EXPERTISE IN ANY PARTICULAR TRADE OR FIELD.

**Director of Certification**

.367463

**Certificate Number**

03/03/2020

**Expiration Date**

MLGW Minority, Women and Locally Owned Small Business Enterprise
Assurances Statement for Unrestricted or Partial Sheltered Market Subcontracting

Date: 3/14/19

Memphis Light, Gas and Water Division
P.O. Box 430
Memphis, TN 38101-0430

Contract No: 12077

Contract Name: Line Clearance

Asplundh Tree Expert, LLC _____ ("Bidder"), having submitted a bid for the above referenced Memphis Light, Gas and Water Division of the City of Memphis, Tennessee contract, advises that, contingent upon award of the contract to our company as successful bidder, we have agreed to utilize the services of the following certifying entity's certified minority, women, or locally owned small business enterprise ("MOWBE/LSB").

MWBE/LSB Subcontractor:

Company Name: PS Energy Group, Inc.

Address: 4480 N. Shallowford Road, Suite 100        Phone Number: 770-350-3000

City: Dunwoody        State: GA        Zip: 30338

Detailed description of Work to be performed:   Fuel supplier

Dollar Value: $200,000

The undersigned has agreed to perform work with the above project as a:

☐ Subcontractor        ☐ Consultant        ☒ Supplier

Certification Classification: ☐ MBE  ☐ WBE  ☐ LSB  Certification Number: _____

Certification Agency: NMSDC/GMSDC - MBE Cert. #AT01406; WBENC - WBE Cert. #249736

Please attach a copy of the certificate.
Ethnicity of Owner: _/Hispanic _____   Male _____ Female X
See the Definitions of Recognized Ownership Classifications article.

Contact Name:  Roger W. Murray        Title: Chief Operating Officer

MWBE/LSB Signature: [signature]        Date: 4/5/2019

EB-14.1

The total dollar value of MWBE/LSB participation listed above is $ 200,000.00 ___ which is __20__% of the total bid amount.

The undersigned will enter into a written agreement with the above MWBE/LSB contractor for the work described upon award and execution of a contract with Memphis Light, Gas and Water Division of the City of Memphis, Tennessee.

Sincerely,

By: _____   ("Bidder's Officer")
Print Name:  Gregg G. Asplundh
Title:  Executive Vice President

Signatures of all parties are required. Failure to sign will not be considered a Minor Irregularity.

**LAST ITEM ON PAGE**

BB - 15 - 1

THIS CERTIFIES THAT

# PS Energy Group, Inc.



**NMSDC**
National Minority Supplier
Development Council

* Nationally certified by the: **GEORGIA MINORITY SUPPLIER DEVELOPMENT COUNCIL**

*NAICS Code(s): 324200; 541614; 517410; 424720; 221210; 237120; 424710; 454310; 488410; 488490

* Description of their products/services as defined by the North American Industry Classification System (NAICS)

01/04/2019                                                                    A701406

Issued Date                                                                   Certificate Number

*Adrienne Trimble*

02/28/2020                                                                    *Stacey Key, President and CEO*

Expiration Date

By using your password (NMSDC issued only), authorized users may log into NMSDC Central to view the entire profile: http://nmsdc.org

Certify, Develop, Connect, Advocate.
* MBEs certified by an Affiliate of the National Minority Supplier Development Council, Inc.®



**WBENC**
WOMEN'S BUSINESS ENTERPRISE
NATIONAL COUNCIL

hereby grants

# National Women's Business Enterprise Certification

to

## PS Energy Group, Inc.

who has successfully met WBENC's standards as a Women's Business Enterprise (WBE).
This certification affirms the business is woman-owned, operated and controlled; and is valid through the date herein.

WBENC National WBE Certification was processed and validated by
Greater Women's Business Council, a WBENC Regional Partner Organization.

Certification Granted: June 13, 2008
Expiration Date: June 30, 2019
WBENC National Certification Number: 249736



Authorized by Roz Lewis, President & CEO
Greater Women's Business Council

GREATER
WOMEN'S
BUSINESS
COUNCIL

NAICS: 237120, 237130, 541110, 424710, 424720, 424990, 493910, 515111, 561614
UNSPSC: 15101500, 15101504, 15101506, 15101700, 52151500, 46211702, 43232610, 50191505, 53101501

          

MLGW Minority, Women and Locally Owned Small Business Enterprise
Assurance Statement for Unrestricted or Partial Sheltered Market Subcontracting

Date  8/14/19

Memphis Light, Gas and Water Division
P.O. Box 430
Memphis, TN 38101-0430

Contract No.: 12077

Contract Name: Ylan Clearance

Autozone Tree Forest LLC., ("Bidder"), having submitted a bid for the above referenced Memphis Light, Gas and Water Division of the City of Memphis, Tennessee contract, attests that, contingent upon award of the contract to our company as successful bidder, we have agreed to utilize the service of the following qualifying entity's certified minority, women, or locally owned small business enterprises ("MWBE/LSB").

MWBE/LSB Information:

Company Name:  Sutton Ford

Address: 21515 Central Ave.                    Phone Number:  888-452-9001

City:  Matteson                   State: IL                   Zip:

Detailed description of Work to be performed:

Vehicle supplier

Dollar Value:  $200,000

The undersigned has agreed to perform work with the above project as a:

☐ Subcontractor        ☐ Consultant        ☒ Supplier

Certification Classification: ☒MBE  ☐WBE  ☐LSB  Certification Number:

Certification Agency:

Please attach a copy of the certificate
Ethnicity of Owner:  Caucasian         Male X    Female
See the Definitions of Recognized Ownership Classifications outside.

Contact Name:  Michael Miller                   Title:  FLEET MANAGER

MWBE/LSB Signature:                             Date:  4/5/19

NEXT PAGE

BB-14 - 2

The total dollar value of MWBE/LSB participation listed above is $ 200,000.00 which is 20 % of the total bid amount.

The undersigned will enter into a written agreement with the above MWBE/LSB contractor for the work described upon award and execution of a contract with Memphis Light, Gas and Water Division of the City of Memphis, Tennessee.

Sincerely,

By: _____ ("Bidder's Officer")
Type Name: Gregg B. Asplundh
Title: Executive Vice President

Signatures of all parties are required. Failure to sign will not be considered a Minor Irregularity.

LAST ITEM ON PAGE

BB-15. 2



**Chicago**
Minority Supplier
Development Council

October 8, 2018

Mr. Nathaniel Sutton
Owner
SUTTON FORD, INC.
21315 Central Avenue
Matteson, IL. 60443

Dear Mr. Sutton:

We are pleased to inform you that your firm continues to meet the eligibility criteria and has been certified as a Minority Business Enterprise (MBE) of the Chicago Minority Supplier Development Council, Inc.

MBE Certification is granted annually and means that your term is effective through October 31, 2019. It is the obligation of your firm to apply for re-certification before your certification expiration date. In the interim, it is your responsibility to notify ChicagoMSDC of any change in the status or operation or operation of your company that might result in disqualification. Your firm's commodity/service will be listed in ChicagoMSDC's online GREATER CHICAGO MINORITY BUSINESS DIRECTORY as follows:

DISTRIBUTOR OF MOTOR VEHICLES

Your company's participation in other areas requires certification.

We would like to take this opportunity to thank you for your cooperation in our certification procedure which we feel, will strengthen the Council's programs to assist your firm in its efforts to market to major corporations in Chicago and nationally.

Sincerely,

Angie Alonso
Certification Specialist
Chicago Minority Supplier Development Council (ChicagoMSDC)

Chicago Minority Supplier Development Council, Inc.  |  Clark Adams Building, 105 W. Adams Street  Suite 2300, Chicago, IL 60603 .

P: 312.755.8880  |  F: 312.755.8890  |  E: info@chicagomsdc.org  |  www.chicagomsdc.org



NMSDC
National Minority Supplier
Development Council

THIS CERTIFIES THAT

# SUTTON FORD, INC.

* Nationally certified by the: **CHICAGO MINORITY SUPPLIER DEVELOPMENT COUNCIL**

* **NAICS Code(s): 441110**

* Description of their product/services as defined by the North American Industry Classification System (NAICS)

*Adrienne C. Trimble*
Adrienne Trimble

**CH02385**

Certificate Number

*Sheila C. Morgan*

Sheila C. Morgan

**10/31/2018**

Issued Date

**10/31/2019**

Expiration Date

By using your password (NMSDC issued only), authorized users may log into NMSDC Central to view the entire profile: http://nmsdc.org

Certify, Develop, Connect, Advocate.

* MBEs certified by an Affiliate of the National Minority Supplier Development Council, Inc.®

**MLGW Minority, Women and Locally Owned Small Business Enterprise
Assurance Statement for Unrestricted or Partial Sheltered Market Prime Contractor**

N/A

Date _____

Memphis Light, Gas and Water Division
P.O. Box 430
Memphis, TN 38101-0430

Contract No: 12077

Contract Name: Line Clearance

_____, ("Bidder"), having submitted a bid for the above referenced Memphis
Light, Gas and Water Division of the City of Memphis, Tennessee contract advises that, our
company is certified as a minority, women or locally owned small business enterprise
("MWBE/LSB").

Certification Classification:  ☐ MBE  ☐ WBE  ☐ LSB        Certification # _____
Certification Agency: _____
*Please attach a copy of the certificate*

Ethnicity of Owner: _____   Male _____ Female _____ _____
*See the Definitions of Recognized Ownership Classifications article.*


_____(Prime Contractor), will fulfill_____% of the
total contract for a total dollar value of $_____.

Sincerely,

By:          _____("Bidder's Officer")
Print Name: _____
Title:          _____

Signatures of all parties are required. Failure to sign will not be considered a Minor Irregularity.


<u>LAST ITEM ON PAGE</u>


BB - 16

## NON-ATTAINMENT JUSTIFICATION LETTER

MLGW welcomes participation in MLGW's procurement process for services vital to the ongoing operations within MLGW. Under the requirements for Participants under the Supplier Diversity Program, and in consideration of the opportunity to submit proposals on contracts funded, in whole or in part, by MLGW,

I/We,                 N/A

(_____),
(_____),
Name(s) Title(s)
(_____)
Name of Administrator's Company

Attest that I/We have exercised the following good faith efforts in addition to my/our regular and customary solicitation process:

1.  I/We have delivered written notice to at least three (3) available certified MWBE/LSBs for each potential subcontracting or supply category in the Contract AND all potential subcontractors/suppliers which requested information on the Contract. (*List three (3) companies in each subcontracting and supply category.)  Use additional sheets if necessary.

    Yes _____  No _____

    Name of subcontractor/supplier _____ Contact Person _____

    Date contacted _____ Method of contact _____

    Certification: ☐ MBE  ☐ WBE  ☐ LSB

    Description of work and Percentage offered _____

    Reason for declining _____

    Name of subcontractor/supplier _____ Contact Person _____

    Date contacted _____ Method of contact _____

    Certification: ☐ MBE  ☐ WBE  ☐ LSB

    Description of work and Percentage offered _____

    Reason for declining _____

BB - 17

Name of subcontractor/supplier _____   Contact Person _____

Date contacted _____   Method of contact _____

Certification: ☐ MBE  ☐ WBE  ☐ LSB

Description of work and Percentage offered _____

Reason for declining _____

2.   I/We have provided all potential subcontractors/suppliers with adequate information as to plans, specifications, relevant terms and conditions of the Contract, and the last date and time for receipt of price quotations.

Yes _____   No _____; Date _____; Time _____.

3.   I/We have, in accordance with normal industry practices, divided the contract into economically feasible segments that can be performed by a MWBE/LSB.

Yes _____   No _____

Please Explain:

_____

_____

_____

4.   I/We have included the name of the firm proposed to be awarded the subcontract or supply agreement (where price competitiveness is not the reason for rejection).

Yes _____   No _____

Name of subcontractor/supplier _____   Contact Person _____

Date contacted _____   Method of contact _____

Certification: ☐ MBE  ☐ WBE  ☐ LSB

Description of work and Percentage offered _____

Reason for declining _____

**NEXT PAGE**

BB - 18

**5.** I/We have actively solicited, through sending letters, electronic mail or initiating personal contact, MWBE/LSBs in all feasible and appropriate categories to offer subcontracting opportunities for the contract under consideration. I/We have provided the same willingness to assist the MWBE/LSBs as has been extended to any other similarly situated subcontractor/supplier/partner. (*Provide information below for all companies contacted. Use additional sheets if necessary.)

Yes _____    No _____

Name of subcontractor/supplier _____    Contact Person _____

Date contacted _____    Method of contact _____

Certification: ☐ MBE  ☐ WBE  ☐ LSB

Description of work and Percentage offered _____

Reason for declining _____

Name of subcontractor/supplier _____    Contact Person _____

Date contacted _____    Method of contact _____

Certification: ☐ MBE  ☐ WBE  ☐ LSB

Description of work and Percentage offered _____

Reason for declining _____

Name of subcontractor/supplier _____    Contact Person _____

Date contacted _____    Method of contact _____

Certification: ☐ MBE  ☐ WBE  ☐ LSB

Description of work and Percentage offered _____

Reason for declining _____

**NEXT PAGE**

BB - 19

6.    I/We have utilized the services of available community organizations and associations, contractor groups, and trade associations known to publicize contracting and procurement opportunities, for the purpose of obtaining assistance in the contacting and recruiting of MWBE/LSBs for the MLGW contract under consideration.

Yes  X           No _____

| Name of Organization | Contact Person | Date Contacted |
|---|---|---|
| 1. Manhood University | | |
| 2. Shelby County Schools | | |
| 3. Job Corps | | |
| 4. Memphis Urban Leggue | | |
| WIN Memphis | | |

Respondents should thoroughly complete Items 1-6 of the Non-Attainment Justification Letter. The Supplier Diversity Coordinator will confirm the validity of the responses provided. Submission of falsified documentation will be grounds for rejection of the proposal. The proposal will be deemed non-responsive and will not be forwarded for further review or evaluation. In addition, both the prime contractor and the subcontractor may be debarred from contracting by MLGW.

*Failure to include names of companies/organizations and requested information will result in your proposal/bid being deemed non-responsive and your proposal/bid will not be further considered for award. *

**NEXT PAGE**

BB - 20

Concluding statement/summary of reasons why the supplier diversity goal was not achieved:

N/A

I/We affix my/our signature to this document to attest that I/We have exercised the above-indicated supplier diversity solicitation efforts to promote MWBE/LSB participation on the Contract under consideration and to comply fully with the provisions of MLGW's Supplier Diversity Program.

Printed Name of Company Official            Date    3/13/19
Larry M. Moore, Senior Vice President

Signature                           Title of Company Official

Full Company Name     Asplundh Tree Expert, LLC

Mailing Address      708 Blair Mill Road

City, State, Zip       Willow Grove, PA   19090-1784

Area Code/ Phone Number    615-979-1850

Email Address    GHayden@Asplundh.com  (Gene Hayden)

This form MUST be returned in the proposal packet or the exact same information may be submitted on company/firm letterhead. Failure to include this information or complete subcontractor assurance statements will deem the submission non-responsive and the proposal will not be further considered for award.

Please contact the Supplier Diversity Department at (901) 528-4635 regarding any questions.

BB - 21

# INTENTIONALLY
# LEFT BLANK

MLGW Supplier Diversity and Subcontractor Bid/Proposal Summary Form
*To be Submitted with Bid/Proposal*

| | |
|---|---|
| Contract Number | 12077 |
| Contract Name | Line Clearance |
| Prime Contractor | Asplundh Tree Expert, LLC |
| Total Bid Amount | |

Supplier Diversity Goal _____ 1.07 %

| Prime/Subcontractor* (Supplier Diversity Participant) | Ethnicity and Gender | Services | Amount | % of Bid |
|---|---|---|---|---|
| Bean & Prince Contractors, Inc. | African American | Labor, workforces, equipment to perform line clearance duties | 1,050,000 | 1.07 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| Subcontractor Total | | | $ | % |

| Proposed Diversity Totals | | |
|---|---|---|
| Classification | Total Amount | % of Total Bid |
| MBE | 1,050,000 | 1.07 |
| WBE | | |
| LSB | | |

*AWBE/LSB Subcontractor Assurance Statements for each subcontractor listed above must be attached to this form and included with the bid.

BB - 23

MLGW Supplier Diversity and Subcontractor Bid/Proposal Summary Form
*To be Submitted with Bid/Proposal*

Supplier Diversity Goal _____ .20 %

| Contract Number | 12977 |
|---|---|
| Contract Name | Line Clearance |
| Prime Contractor | Asplundh Tree Expert, LLC |
| Total Bid Amount | |

| Prime/Subcontractor* (Supplier Diversity Participant) | Ethnicity and Gender | Services | Amount | % of Bid |
|---|---|---|---|---|
| PS Energy Group, Inc. | Caucasian | Fuel supplier | 200,000 | .20 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| Subcontractor Total | | | $ | % |

| Classification | Proposed Diversity Total | |
|---|---|---|
| | Total Amount | % of Total Bid |
| MBE | | |
| WBE | 200,000 | .20 |
| LSB | | |

*A WBE/LSB Subcontractor Assurance Statements for each subcontractor listed above must be attached to this form and included with the bid.

BB - 23-1

McGW Supplier Diversity and Subcontractor Bid/Proposal Summary Form
To be Submitted with Bid/Proposal

**Contract Number:** 13077

**Contract Name:** Line Clearance

**Prime Contractor:** Asplundh Tree Expert, LLC.

**Supplier Diversity Goal** _____ %

**Total Bid Amount**

| Prime/Subcontractor* (Supplier Diversity Participant) | Minority and Gender | Services | Amount | % of Bid |
|---|---|---|---|---|
| | | | | |
| Sutton Ford | Caucasian | Vehicle supplier | 200,000 | 20 |
| | | | 200,000 | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| Subcontractor Total | | | | |

| Proposed Diversity Totals | | |
|---|---|---|
| **Classification** | **Total Amount** | **% of Total Bid** |
| MBE | 200,000 | 20 |
| WBE | | |
| LSB | | |

*MWBE/LSB Subcontractor Assurance Statements for each subcontractor listed above must be attached to this form and included with the bid.

BB - 23 - 2

## EXCEPTIONS:

The undersigned understands that exceptions are considered by MLGW as part of the bid for evaluation purposes. Only exceptions submitted by the bid due date will be considered. The undersigned declares that the following list states any and all variations from and exceptions to the Contract Documents and that, otherwise, it is the intent of this bid that the work be performed in strict accordance with the Contract Documents. The Bidder shall not attach the Bidder's contracts or agreements as an Exception. Acceptance of an Exception is at the sole discretion of MLGW. *MLGW will not accept any exceptions after the bid due date.*

Please see cover letter

BB - 24

In submitting this bid, the bidder agrees:

1. To hold the bid open for 120 days from the date of the bid opening;
2. To enter into and execute a contract, if awarded, on the basis of this bid and to furnish the required bonds;
3. To accomplish the Work under the Contract Documents;
4. To start the Work within 60 calendar days of Notice to Proceed;
5. To complete the Work within 1095 calendar days of Notice to Proceed.
   (365 days x 3 years = 1095)

The full names and addresses of all persons and parties interested in this bid as principals on Contract No. 12077 are:

| NAME: | TITLE: | ADDRESS: |
|---|---|---|
| see attached list | | |

NAME OF COMPANY: Asplundh Tree Expert, LLC

SIGNATURE OF BIDDER:

PRINT NAME OF BIDDER: Larry M. Moore

TITLE OF BIDDER: Senior Vice President

ETHNICITY OF OWNER:* Caucasion

MALE  X  FEMALE ____  *

EMAIL ADDRESS OF BIDDER: GHayden@Asplundh.com (Gene Hayden)

BUSINESS ADDRESS OF BIDDER: 708 Blair Mill Road, Willow Grove, PA  19090-1784

TELEPHONE NUMBER OF BIDDER: 615-979-1850

MOBILE TELEPHONE NUMBER OF BIDDER: 615-979-1850

FAX NUMBER OF BIDDER: 615-353-2191

DATE: 3/13/19

* See the Definitions of Recognized Ownership Classifications article.

BB - 25

## CONTRACTOR'S TENNESSEE LICENSE CERTIFICATION:

The Bidder certifies that the Bidder is a licensed contractor as required by Tennessee Code Annotated Sections 62-6-102 through 62-6-125, as may be amended, relating to the licensing of General Contractors, as follows:

We/I, Larry M. Moore ("Contractor"), of Asplundh Tree Expert, LLC (City, County, and State), certify that we/I alone possess a current Tennessee license bearing the number 12252 with an expiration date of 10/31/20 , registered in Davidson County, Tennessee and that the license covers the classification and value of work under these specifications on which this bid is being submitted."

Contractor: Asplundh Tree Expert, LLC

By: _La U Moore_

Print Name: Larry M. Moore

Title: Senior Vice President

Contractor's classification and monetary limit within which this work will be performed: _____
        Unlimited - BC-28; HC-5

## LAST ITEM ON PAGE



ASPLUNDH TREE EXPERT, LLC
708 BLAIR MILL RD.
WILLOW GROVE, PA  19090







TN Department of Agriculture
*Solicitor Card*

Charier#
1845                              96047

ASPLUNDH TREE EXPERT CO
GENE HAYDEN
1007 PEACHTREE
STREE-CHATTANOOGA TN
6949 CHARLOTTE PIKE, STE 203
NASHVILLE TN 37209
Expires: 12/31/2018

# CONTRACT

# CONTRACT

## TABLE OF CONTENTS

| ARTICLE | DESCRIPTION | PAGE |
|---|---|---|
| I. | PARTIES | C-4 |
| II. | COVENANT | C-4 |
| III. | WORK TO BE DONE | C-4 |
| IV. | DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION | C-4 |
| V. | TERM AND TERMINATION OF CONTRACT | C-5 |
| VI. | NON-APPROPRIATION | C-5 |
| VII. | PAYMENT | C-6 |
| VIII. | NOTICES | C-6 |
| IX. | CONTRACT INCLUDES | C-7 |
| X. | ASSIGNMENT OF CONTRACT; SUCCESSORS | C-7 |
| XI. | LAWS AND ORDINANCES; INDEMNIFICATION | C-7 |
| XII. | CONTRACTOR EMPLOYEES | C-7 |
| XIII. | LOCAL BIDDING PREFERENCE AND PRESENCE | C-8 |
| XIV. | BONDS AND INSURANCE | C-9 |
| XV. | TAXES | C-13 |
| XVI. | AUTHORITY OF MLGW | C-13 |
| XVII. | BREACH OF CONTRACT | C-13 |
| XVIII. | PROVISIONS FOR EMERGENCIES | C-14 |
| XIX. | MODIFICATIONS | C-14 |
| XX. | RELEASE OF LIABILITY | C-15 |
| XXI. | PRIOR AGREEMENTS, CAPTIONS AND CAPITALIZATIONS | C-15 |
| XXII. | NO WAIVER OF RIGHTS | C-15 |
| XXIII. | PRICING OF CONTRACT CHANGE ORDERS | C-15 |
| XXIV. | RATE OF PROGRESS AND TIME OF COMPLETION | C-19 |
| XXV. | EXTENSION OF TIME | C-20 |
| XXVI. | LABOR | C-20 |
| XXVII. | EQUAL OPPORTUNITY CLAUSE | C-21 |
| XXVIII. | AUDIT CLAUSE | C-22 |
| XXIX. | INDEPENDENT CONTRACTOR | C-24 |
| XXX. | SUPPLIER DIVERSITY POLICY | C-24 |
| XXXI. | SUPPLIER DIVERSITY REPORTING AND TRACKING | C-24 |
| XXXII. | DRUG FREE WORKPLACE | C-25 |
| XXXIII. | APPLICABLE LAW | C-25 |
| XXXIV. | COUNTERPARTS | C-25 |
| XXXV. | BACKGROUND CHECKS | C-25 |
| XXXVI. | BUSINESS ETHICS | C-25 |
| XXXVII. | STANDARDS OF BUSINESS CONDUCT | C-26 |
| XXXVIII. | CONFIDENTIAL INFORMATION | C-28 |
| XXXIX. | DEBARMENT | C-28 |
| XL. | ELGIBILITY OF FORMER EMPLOYEES | C-30 |

**XLI.**   **MINOR IRREGULARITY**                                                    **C-30**

    **SIGNATURE PAGE**                                                         **C-31**
    **PERFORMANCE BOND**                                                      **C-32**
    **CONTRACTOR'S LABOR AND MATERIALS PAYMENT BOND**        **C-37**
    **EXHIBIT A - ATTESTATION REGARDING PERSONNEL**
        **USED IN CONTRACT PERFORMANCE**                          **C-41**

**NEXT PAGE**

**MEMPHIS LIGHT, GAS AND WATER**

**CITY OF MEMPHIS**

**MEMPHIS, TENNESSEE**

**CONTRACT NAME: LINE CLEARANCE**

**CONTRACT NO. 12077**

**CONTRACT**

**I.  PARTIES:**

THIS AGREEMENT ("Contract") made and entered into this ‾30th‾ day of August ‾‾‾‾‾‾,
‾2019‾ by and between the Memphis Light, Gas and Water Division ("MLGW" or "Division")
of the City of Memphis, Tennessee and ‾Asplundh Tree Expert, LLC‾‾‾‾‾‾‾‾‾‾‾‾‾,
("Contractor").

**II.  COVENANT:**

WITNESSETH: In consideration of the mutual agreements, covenants, promises and
representations and other good and valuable considerations the receipt and sufficiency of which
are acknowledged, the parties intending to be legally bound agree, as follows:

**III.  WORK TO BE DONE:**

The Contractor shall furnish supervision, labor, transportation, equipment and material in‾
cluding equipment, tools, and supplies as required to trim and or remove all trees and brush.
Also, to trim trees using the most arborcultural techniques, and perform other utility forestry
services including chemical spraying, transmission right of way clearing and mowing, clean up
and disposal of materials, and to provide clearance for the electric conductors of MLGW. In
addition, this contract may include emergency storm work. --------------------------------
----------------------------------------------------------------------------------------
----------------------------------------------------------------------------------------
----------------------------------------------------------------------------------------
----------------------------------------------------------------------------------------
----------------------------------------------------------------------------------------

("Work"). The Work will be of good quality, free from faults and defects, all as called for in
strict accordance with the Contract Documents (as defined). The Contractor is to fully
understand the facilities, difficulties and restrictions attending and execution of the work
required. The Work under this Contract will be performed in its entirety during the allocated
time for the Work. MLGW will have the right to specify to the Contractor the sequence of the
tasks performed. All Work performed by the Contractor will be subject to the inspection of the
MLGW Representative (as defined).

C - 4

**IV.   DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION:**

The date of commencement of the Work shall be the date of this Contract unless a different date is stated in a Notice to Proceed Letter issued by MLGW.

The Contract time shall be measured from the date of commencement.

**V.   TERM AND TERMINATION OF CONTRACT:**

**This Contract is for a term of 60 months from the date of the notice to proceed.**

Intentionally Blank

MLGW may terminate the Contract without cause by first giving 90 days prior written notice of MLGW's intention to do so. This Contract may also be terminated by MLGW for any reason described in the Breach of Contract Article. If the Contract is so terminated, MLGW may, according to law, enter upon and take possession of the Work or any part, and by purchase of necessary materials and equipment complete said Work with MLGW's own forces or MLGW may cause said Contract to be completed by other persons by contract without advertising, or MLGW may re-advertise and re-let the uncompleted portions of said Contract. All expenses or financial loss to MLGW by any of the above methods of completing said Contract shall be deducted by MLGW out of monies then due, or to become due, the Contractor under this Contract. In case such expense shall exceed the amount which would have been payable under this Contract had the Contractor completed the Work, the Contractor or the Contractor's sureties shall pay such excess to MLGW. Should such expense be less than the amount payable under this Contract, had the Contractor completed the Work, the Contractor shall receive the difference after deducting the amount retained.

**VI.   NON-APPROPRIATION:**

The State of Tennessee statutes prohibit the obligation and expenditure of public funds beyond the fiscal year for which a budget has been approved. Contracts, purchases or other obligations that may arise beyond the end of the current fiscal year shall be subject to approval of budget funds.

C - 5

**VII.   PAYMENT:**

The Contractor shall present electronically or via mail in duplicate to the MLGW User Area Representative as well as via email to cminvoices@mlgw.org on a weekly, bi-weekly or monthly basis:

    1.    An error-free original invoice for work completed and accepted by the MLGW Representative;

    2.    A completed Supplier Diversity Activity Report Form (if applicable); and

    3    Copies of subcontractor invoices (if applicable).

The Contractor's invoice shall be an amount as established by the bid price as set out in the bid. Each invoice should show the company name and remittance address of the Contractor, Contract Number, the Contractor's invoice number and date.

In consideration of performance by the Contractor of all conditions and provisions of the Contract Documents to MLGW's satisfaction, MLGW shall pay monthly within 30 days of approval by MLGW, less 5% retainage (if applicable). Retainage will be paid for acceptable work at the completion of the Contract.

MLGW reserves the right to withhold payment to the Contractor if any contractual obligations do not comply such as, but not limited to, non-conforming work; repairs and/or corrective work made necessary by the actions or inactions of the Contractor; failure to provide ethics reports, drug testing reports, or diversity reports; and for credits for overpayments, and non-complying insurance certificates and coverage. Payment will be withheld for any work not complying with the Contract Documents, including incomplete and inaccurate documentation of the Work, until such defects and/or omissions are corrected to the satisfaction of the MLGW Representative. MLGW reserves the right to withhold payments until total indebtedness of the Contractor to MLGW is paid in full including indebtedness to MLGW by any subcontractor(s).

**VIII.   NOTICES:**

All notices required or given pursuant to this Contract shall be deemed to have been duly served if delivered in person to an authorized representative or sent by electronic mail ("email") or registered or certified first class United States mail, postage prepaid, returned receipt requested, to the following address:

As to MLGW:

Memphis Light Gas and Water Division
Contracts Management Department
220 South Main Street (38103)
P. O. Box 430
Memphis, TN 38101-0430
Email: state@mlgw.org

As to Contractor:

Asplundh Tree Expert, LLC
C/O: Gene Hayden
708 Blair Mill Road
Willow Grove, PA  19090
Email: ghayden@asplundh.com

C - 6

## IX.   CONTRACT INCLUDES:

It is understood and agreed that the bid, Contract, General, Supplementary and other Conditions and specifications which may be furnished by MLGW for the guidance and assistance of the Contractor, are each and all included in the Contract ("Contract Documents"). The Contract Documents comprising the complete contract should supplement, but not duplicate each other and together constitute one (1) complete set of Specifications. Any work exhibited in the one and not in the other shall be executed just as if it had been presented in both. The Work shall be completed in every respect, according to the complete designs as decided and determined by MLGW.

## X.   ASSIGNMENT OF CONTRACT; SUCCESSORS:

All of the terms, covenants, representations, warranties and conditions of this Contract shall bind upon and inure to the benefit of, and be enforceable by, the parties and the parties' respective successors.

The Contractor shall not assign the Work or any part without the previous written consent of MLGW. The Contractor shall not assign, by power of attorney or otherwise, the monies payable under this Contract without the previous written consent of MLGW.

If the Contractor, with the consent of MLGW, assigns all or any part of this Contract, the Contractor shall continue to be fully responsible to MLGW under the terms and provisions of the Contract, if not fully performed by assignee(s) and for the acts, omissions and performance of the assignee(s).

## XI.   LAWS AND ORDINANCES; INDEMNIFICATION:

The Contractor shall comply with all laws, ordinances and regulations pertaining to the Work and shall, with legal counsel acceptable to MLGW, defend MLGW and the City of Memphis and their employees, officials, representatives and agents against any and all claims, loss, damage, injury, expenses, judgments, costs and attorney's fees, to the proportionate extent such is caused by the negligent Work by the Contractor, the Contractor's agents, representatives, subcontractors, employees and assignees of this Contract whether or not such claim, damage, loss or expense is caused in part by a party or person indemnified.

MLGW is subject to the Tennessee Public Records Act. As such the Contractor's proposal and Contract may be examined by the public after it has been evaluated by MLGW and a decision has been made.

## XII.   CONTRACTOR EMPLOYEES:

The Contractor will furnish the personnel that shall be required to complete the Work in a timely manner and within the Contract amount. The Contractor, at the Contractor's sole cost and expense, will train employees prior to the start of the Work and shall submit documentation to the MLGW Representative that the Contractor's employees have been trained to the satisfaction of MLGW.

## XIII.   LOCAL BIDDING PREFERENCE AND PRESENCE:

### Local Bidding Preference:

MLGW shall give Local Bidding Preference in the awarding of contracts and making purchases whenever applying such a preference is reasonable in light of the dollar-value of the bids received in relation to such expenditures.

### Definitions as used in this article have the following meanings:

Contract shall mean any contract, purchase order, or agreement (other than a lease, collective bargaining agreement, a contract funded by federal monies supplied under any federal grant program or plan, contracts for purchased power and gas, loans, grants, financial assistance, and banking contracts), awarded under the MLGW Procurement Policy and whose cost is paid from funds belonging to or administered by MLGW.

Local Business shall mean that the supplier, consultant or contractor has a valid domestic type Shelby County and Tennessee business license, issued at least one (1) year prior to the bid or proposal opening date, to do business in said locality that authorizes the business to provide the goods, services, or construction to be purchased, and the physical principal business address located within the city limits of Memphis, Tennessee, in an area zoned for the conduct of such business, from which the Contractor operates or performs the majority of the Contractor's business on a day-to-day basis, and also from which the Contractor conducts 100% of the necessary functions to maintain or fulfill the Contract with MLGW. Post Office boxes are not verifiable and shall not be used to establish said address.

### Eligibility and Application:

To be eligible for the Local Bidding Preference, the supplier, consultant, or contractor must provide a copy of the Shelby County business license and must also provide proof that City of Memphis personal property and real estate taxes were appropriately paid. Proof of payment includes a copy of the receipt issued by the Treasurer for the City of Memphis or a screenshot from the Treasurer's website evidencing payment of the taxes. The web address is: http://epayments.cityofmemphis.org.

### Application of Local Bidding Preference:

In the bidding of, or letting contracts for procurement of supplies, materials, equipment and services, with a total price of $15,000 or more, Local Bidding Preference shall mean that if the lowest responsive bidder is a regional or non-Local Business, then all bids received from responsive Local Businesses are decreased by 5%. The original bid is not changed; the 5% decrease is calculated only to determine the Local Bidding Preference. The Local Bidding Preference cost differential is not to exceed $100,000.

If a tie occurs between a Local Business and one (1) or more non-Local Businesses meeting specifications, the ties shall be broken in favor of the Local Business.

**NEXT PAGE**

C - 8

**Local Bidding Presence:**

If there is no Local Bidding Preference designation, either due to non-participation or non-eligibility after the 5% differential, then Local Bidding Presence will be considered.

**Eligibility and Application:**

Local Bidding Presence will be demonstrated by the total number of individuals a business employs within Shelby County, Tennessee. For procurement, a 5% differential not to exceed $100,000 shall be granted for the business that demonstrates the highest number of total employees located within Shelby County, Tennessee at the time of the bid response.

If a tie occurs between a Local Business and one (1) or more non-Local Businesses meeting specifications, the ties shall be broken in favor of the Local Business.

**Exceptions to Local Bidding Preference and Local Bidding Presence:**

The Local Bidding Preference or Local Bidding Presence established in no way prohibits the right of MLGW from making awards based on applying the MLGW Supplier Diversity Policy or law. The Local Bidding Preference or Local Bidding Presence criteria shall not apply to purchases or contracts which are funded, in whole or in part, by a governmental entity and the laws, regulations, or policies governing such funding prohibit application of the Local Bidding Preference or Local Bidding Presence. Nor shall the Local Bidding Preference or Local Bidding Presence apply to purchases made or contracts let under emergency or noncompetitive situations.

Application of the Local Bidding Preference or Local Bidding Presence criteria to a purchase, contract or category of contracts for which MLGW is the awarding authority may be waived upon written justification regarding the character, responsibility and fitness of all persons, firms, or corporations submitting bids or proposals.

Further, the Local Bidding Preference or Local Bidding Presence established does not prohibit MLGW from giving any other preference permitted by law or policy besides the authorized preference.

Application of the Local Bidding Preference or Local Bidding Presence to a purchase or contract may be waived by the Board of Commissioners ("Board" or "Commissioner(s)") upon recommendation by the applicable Vice President and approval by the President.

## XIV.  BONDS AND INSURANCE:

1.  **Bonds** - The Contractor shall furnish a performance bond for 100% of the contract price (form attached) executed by a surety company acceptable to MLGW duly authorized to do business in Tennessee. Note: **The performance bond shall be the annual cost of the estimated contract value for each year.** The Contractor shall furnish a labor and materials payment bond for 25% of the contract price if over $100,000 (form attached) executed by a surety company acceptable to MLGW duly authorized to do business in Tennessee. The bonds shall continue for the duration of the warranty period as security for the payment of all persons performing labor and furnishing materials for this Contract.

2. **Insurance Requirements** – Before commencing Work under this Contract, the Contractor shall furnish MLGW with an original certificate of insurance from a company acceptable to MLGW licensed to do business in Tennessee and having an A.M. BEST FPR rating of no less than A:IX. The insurance certificate shall name MLGW, MLGW's officials, employees, agents, as additional insureds except for workers' compensation and professional liability all to the extent of the contractor's obligations under the Contract. The additional insureds shall fully cooperate with the Contractor, its representatives and insurers on any claim. The certificate shall clearly show this Contract Number. **Proof of additional insured status must be provided with a copy of the additional insured endorsement from the Contractor's insurance carrier.**

The insurance certificate shall state waivers of subrogation have been provided by endorsement to the Workers' Compensation and Employer's Liability Insurance, Commercial General Liability Insurance and Business Automobile Liability Insurance policies as required by Section XIV paragraphs 3, 4, and 5. Failure to maintain the required insurance may cause termination of the Contract. Liability, umbrella and excess policies must contain no cross liability exclusions all to the extent of the Contractor's obligations under the Contract.

If insurance coverage will expire prior to completing the Contract, the Contractor shall furnish a certificate of insurance evidencing renewal of the coverage to MLGW. The certificate of insurance shall show this Contract number.  Should MLGW require copies, the copies will be certified by the insurance company and mailed to MLGW within 30 days of request. Should any policies be canceled before the expiration date, the Contractor shall mail 30 days written notice of cancellation and non-renewal to MLGW by certified  or registered first class United States mail, postage prepaid, return receipt requested. The Contractor shall cause the Contractor's new insurance company to furnish a certified certificate of insurance to MLGW evidencing the coverage listed above within 10 days after notice of cancellation and non-renewal. Failure to furnish evidence of insurance shall be a material breach.

If the Contractor has any self-insured retentions under the minimum required coverage, the Contractor must identify on the certificate of insurance the nature and amount of such self-insured retentions and provide satisfactory evidence of financial responsibility for such obligations. All self-insured retentions will be the Contractor's sole responsibility.

The Contractor shall allow no subcontractor to commence performance under this Contract until the insurance certificates of the subcontractor(s), reflecting coverage proportionate to that required of the Contractor, have been obtained, submitted and approved by the MLGW Contracts Management Department.

Failure by MLGW to review certificates of insurance and endorsements will not relieve the Contractor from the Contractor's requirements to maintain the required insurance nor be construed as a waiver of the Contractor's obligation to maintain such insurance. MLGW may obtain certified copies of the Contractor's policies applicable to this Contract.

**Insurance Coverage:** Unless modified by the MLGW Contracts Management Department, the insurance coverage described in Sections XIV 3 – 7 is required.

C - 10

3.  **Workers' Compensation and Employer's Liability Insurance:**  The Contractor shall obtain and maintain during the life of this Contract workers' compensation insurance in statutory limits, including occupational disease, covering all employees acting within the course and scope of their employment. Coverage shall also include employer's liability insurance at the following limits:

A.  Bodily injury by accident       $500,000 each accident;

B.  Bodily injury by disease       $500,000 each employee;

C.  A waiver of subrogation in favor of MLGW and MLGW's commissioners, officers, agents, and employees to the extent of the Contractor's obligations under the contract.

4.  **Commercial General Liability Insurance:**

A.  The Contractor shall maintain occurrence version commercial general liability insurance. Such insurance shall cover bodily injury including death and property damage, providing the following limits:

     i.  Each occurrence       $1,000,000;

     ii.  General aggregate       $2,000,000;

     iii.  Products and Completed Operations aggregate       $2,000,000;

     iv.  Personal Injury       $1,000,000.

B.  Coverage shall be on ISO occurrence form CG 00 01 (or substitute form providing equivalent or greater coverage) and include:

     i.  Premises and Operations Liability Coverage;

     ii.  Personal Injury and Advertising Injury Liability Coverage;

     iii.  Coverage for liability assumed under insured contracts, for independent contractors, for damage to premises rented to the Contractor, and, a "separation of insureds" clause;

     iv.  Products and Completed Operations Liability Coverage;

     v.  A Designated Location(s) General Aggregate Limit endorsement covering all MLGW locations where contracted work and services will be performed;

     vi.  A waiver of subrogation in favor of MLGW and MLGW's commissioners, officers, agents, and employees to the extent of the Contractor's obligations under the contract.

C - 11

5.    **Business Automobile Liability Insurance:**

   A.    The Contractor shall maintain occurrence version business automobile liability insurance in the minimum limits stated below. If the insurance contains a general aggregate limit, it shall apply separately to this Contract or be no less than two (2) times the occurrence limit. The insurance shall include coverage for bodily injury, including death and property damage, providing the following limit:

   i.    Each accident          $1,000,000.

   B.    Business automobile coverage shall be written on ISO form CA 00 01, CA 00 05, CA 0012, CA 00 20 (or substitute form providing equivalent or greater coverage) and include:

   i.    Coverage for liability arising out of any auto (including owned, hired or non-owned automobiles);

   ii.   Coverage for liability assumed under insureds contracts;

   iii.  Additional insured endorsement (primary and non-contributory) naming MLGW and MLGW's commissioners, officers, agents, and employees to the extent of the Contractor's obligations under the contract;

   iv.   A waiver of subrogation in favor of MLGW and MLGW's commissioners, officers, agents, and employees to the extent of the Contractor's obligations under the contract.

6.    **Umbrella Liability Policy:**

   A.    The Contractor shall maintain during the life of this Contract, umbrella liability insurance providing limits in excess of the Contractor's scheduled underlying insurance policies, which shall include, but not be limited to:

   i.    Commercial general liability insurance policy;

   ii.   Business automobile liability insurance policy;

   iii.  Employer's liability coverage provided by the scheduled workers' compensation policy.

   B.    The umbrella liability insurance policy will provide limits of not less than $2,000,000 above the scheduled underlying policies. The coverage will:

   i.    Contain pay on behalf wording;

   ii    Have an effective date concurrent with the commercial general liability policy.

7.   **Other**: MLGW reserves the right, during the term of the Contract, to review the type, nature and amount of insurance provided and to require the Contractor to provide insurance of the type, nature and amount customarily provided for such work, if not previously provided.

## XV.   TAXES:

The Contractor shall be exclusively liable for the payment of all federal, state and local taxes. MLGW shall reimburse the Contractor for any base sales and use taxes, arising because of the use by the Contractor of MLGW materials and supplies to perform this Contract, exclusive of any penalties including, but not limited to, interest penalties, enforcement fees, costs or expenses.

## XVI.   AUTHORITY OF MLGW:

MLGW shall designate a project representative ("MLGW Representative") who shall have the final decision whether or not the Work complies with the Contract Documents. The MLGW Representative shall, during the term of the Contract, be able to stop the Work in whole or part if in the MLGW Representative's opinion; the work does not comply with the Contract Documents. If in the opinion of the Contractor, the decision made is not under the meaning and intent of the Contract Documents, the Contractor and MLGW agree to adhere to the Contractor Appeals Process. Such direction shall not relieve the Contractor from performing the Work under the Contract Documents.

The MLGW Representative may enter any facility or worksite that the Contractor uses to perform this Contract to ensure that the Work is being conducted as required by the Contract Documents. The Contractor shall promptly furnish all reasonable assistance required by the MLGW Representative.

## XVII.   BREACH OF CONTRACT:

Should the Contractor, in the opinion of the MLGW:

1.   Fail or refuse to perform the Work in whole or part after notice by MLGW to proceed;

2.   Abandon the Work;

3.   Assign this Contract or any part thereof without previous written consent of MLGW;

4.   Allow any official or employee of the City of Memphis or MLGW at any time to become directly or indirectly interested in this Contract through furnishing supplies or performing services;

5.   Unnecessarily or unreasonably delay the Work at any time;

6.   Willfully or negligently violate any provisions of this Contract;

7. Fail or refuse to fully complete the Work within the time specified or extension of time granted by MLGW;

8. Try to intimidate MLGW employees, representatives or agents;

9. Make material misstatements on any documents submitted with the bid or after award of contract;

10. Make significant deviations from subcontractor or supplier participation commitments;

11. Fail or refuse to comply with the terms and provisions of the Contract and or Contract Documents;

12. Fail to complete the work within the specified time allotted for completion of Work as set forth in the proposal and otherwise as set forth in the Contract Documents;

MLGW may terminate this Contract by notifying the Contractor in writing. MLGW will then have the right to exercise any of the rights and remedies granted to MLGW in Article V. Term and Termination Agreement above.

Should any monies be due to MLGW, such money shall be promptly paid to MLGW. MLGW shall recover from the Contractor of all cost of collection, including attorney fees, if monies are not timely paid. In such case, the Contractor shall also be liable for interest on the outstanding amount due at the maximum rate allowed by law.

## XVIII.   PROVISIONS FOR EMERGENCIES:

Whenever, in the opinion of MLGW, the Contractor has not taken sufficient actions to protect the safety and performance of the Work and MLGW facilities, MLGW may perform those activities and furnish those materials MLGW deems necessary to protect the safety and performance of the Work and the MLGW facilities. Such actions shall not relieve the Contractor of the Contractor's obligation to comply with the terms and provisions of the Contract Documents. The cost and expense of such actions and materials shall be borne by the Contractor and shall be deducted from any amounts due the Contractor if not paid by the Contractor.

## XIX.   MODIFICATIONS:

Modifications to this Contract shall only be effective when made in writing and signed by both parties. The Contractor agrees MLGW shall have the right, when in MLGW's opinion it becomes necessary in prosecution of the Work, to make alterations or modifications in the Work covered by this Contract. Alterations or modifications shall only be made by the order of MLGW. The order shall be of no effect until the price to be paid for the Work or material under such altered or modified contract has been agreed upon in writing and signed by the Contractor and MLGW. The Contractor shall not be allowed to recover anything for work or materials caused by any alterations or modifications of this Contract, unless an order is made and

agreement signed. Nor shall the Contractor be allowed to recover more for the Work and materials than the agreed price.

## XX.  RELEASE OF LIABILITY:

Before receiving final payment for the Work, the Contractor shall complete a Release of Liability and a Fair Employment Release in a form satisfactory to MLGW. The acceptance by the Contractor of the final payment shall operate as a full release and waiver to MLGW and MLGW's representatives, employees, commissioners and agents from all claims and liabilities against MLGW.

## XXI.  PRIOR AGREEMENTS, CAPTIONS AND CAPITALIZATIONS:

The written terms and provisions of this Contract shall supersede all prior agreements of MLGW, or MLGW's representatives, employees, and agents. The captions and capitalizations used in the Contract Documents are for reference only and are not part of the Contract Documents.

## XXII.  NO WAIVER OF RIGHTS:

The failure of both parties to exercise any rights in the Contract Documents shall not be construed as a waiver of such rights or the right to assert such terms or rights in the future.

## XXIII.  PRICING OF CONTRACT CHANGE ORDERS:

The contract in this section will supplement and take precedence over all other change order pricing contract provisions in the Contract Documents provided by MLGW. These contract provisions will govern the pricing and administration of all change order proposals to be submitted by the Contractor and all other lower tier sub-subcontractors (all referred to as Contractor). If a conflict arises between the other contract documents used for the project, the change order pricing contract provisions in this section shall govern.

The Contractor agrees the Contractor will incorporate this section into all agreements with lower tier contractors. These change order pricing provisions apply to all types of contracts and subcontracts, including lump sum (or fixed price contracts), unit price contracts, and cost plus contracts with or without a guaranteed maximum. It is further understood these change order provisions will apply to all methods of change order pricing, including lump sum change order proposals, unit price change order proposals, and cost plus change order proposals.

Whenever change order proposals to adjust the contract price become necessary, MLGW will select the method of pricing to be used by the Contractor under the pricing provisions found in this section. The option will be:

1.     For lump sum change order proposals, the Contractor will submit a properly itemized proposal covering the additional work or the work to be deleted. This proposal will be itemized for the components of work and segregated by labor, material, and equipment in

a detailed format satisfactory to MLGW. MLGW will require itemized change orders on all change order proposals from the Contractor, subcontractors, and sub-subcontractors regardless of tier. Details to be submitted will include detailed line item estimates showing detailed materials quantity take-offs, material prices by item and related labor hour pricing information and extensions (by line item or by drawing).

2. Estimated labor costs to be included for self-performed work shall be based on the actual cost per hour paid by the Contractor for those workers or crews of workers who the Contractor reasonably anticipates will perform the change order work. Estimated labor hours shall include hours only for those workers and working foremen directly involved in performing the change order work. Supervision above the level of working foremen (such as general foremen, superintendent, project manager, etc.) is included in the markup percentage as outlined later in this section. Note: No separate allowance for warranty expense will be allowed as a direct cost of a change order. Costs attributed to warranty expenses will be covered by the markup percentages as outlined later in this section.

3. Labor burden allowable includes employer's net actual cost of payroll taxes (FICA, Medicare, SUTA, FUTA), net actual cost for employer's cost of union benefits (or other usual and customary fringe benefits if the employees are not union employees), and net actual cost to employer for workers' compensation insurance taking into consideration applicable premium adjustments such as adjustments for experience modifiers, premium discounts, dividends, rebates, expense constants, assigned risk pool costs, net cost reduction due to policies with deductibles for self-insured losses, and assigned risk rebates. The Contractor shall reduce the Contractor's standard payroll tax percentages to properly reflect the effective cost reduction due to the estimated impact of the annual maximum wages subject to payroll taxes. (An estimated percentage for labor burden may be used for pricing change orders. However, the percentage used for labor burden in price change orders will be examined when the project is concluded and an adjustment to the approved change orders will be processed if it is determined that the actual labor burden percentage should have been more or less than the estimated percentage used.)

4. Estimated material change order costs shall reflect the Contractor's reasonably anticipated net actual cost for the purchase of the material needed for the change order work. Estimated material costs shall reflect cost reductions available to the Contractor due to "non-Cash" discounts, trade discounts, free material credits, and/or volume rebates. "Cash" discounts (e.g., prompt payment discounts of 2% or less) available on material purchases for change order work shall be credited to MLGW if the Contractor is provided MLGW funds in time for the Contractor to take advantage of any such "Cash" discounts. The portion of any "Cash" discounts greater than 2% will not be considered "non-Cash" discount for this section. Price quotations from material suppliers must be itemized with unit prices for each specific item to be purchased. "Lot pricing" quotations will not be sufficient substantiating detail.

5. Allowable equipment change order estimated costs may include an amount for rental of major equipment specifically needed to perform the change order work (defined as tools

C- 16

and equipment with an individual purchase cost of more than $750). For Contractor owned equipment, the "bare" equipment rental rates to be used for pricing change order proposals shall be 75% of the monthly rate in the most current publication of The AED Green Book divided by 176 to arrive at a maximum hourly rate to apply to the hours the equipment is used performing the change order work. For Contractor owned equipment the aggregate equipment rent charges for any single piece of equipment used in all change order work shall be limited to 150% of the fair market value of the piece of equipment when the first change order is priced involving usage of the piece of equipment. Fuel, necessary to operate the equipment will be considered as a separate direct cost associated with change order work.

6.   The maximum markup percentage fee to be paid to any contractor (regardless of tier) on self-performed work shall be a single markup percentage not-to-exceed 15% of the net direct cost of:

>    A.   Direct labor and allowable labor burden costs applicable to the change order or extra work;
>
>    B.   The net cost of material and installed equipment incorporated into the change or extra work; and
>
>    C.   Net rental cost of major equipment and related fuel costs necessary to complete the change in the Work.

The markup computed using the above formula shall be allocated 2/3 to cover overhead costs directly attributable to the field overhead costs related to processing, supervising and performing, the change order work, and the remaining 1/3 to cover home office overhead costs and profit.

7.   Regarding pricing of the portion of the change order proposals involving work performed by lower tier contractors, the maximum markup percentage fee allowable to the contractor supervising the lower tier contractor's work shall not exceed 5% of the net of all approved change order work performed by all subcontractors combined for any change order proposal.

The markup computed using the above formula shall be allocated 2/3 to cover overhead costs directly attributable to the field overhead costs related to processing, supervising and performing of the change order work, and the remaining 1/3 to cover home office overhead costs and profit.

8.   Change order cost adjustments due to increase or decrease in bond or insurance costs (if applicable) shall not be subject to any markup percentage fee.

9.   As a further clarification, the agreed upon markup percentage fee is intended to cover the Contractor's profit and all indirect costs associated with the change order work. Items intended to be covered by the markup percentage fee include, but are not limited to:

home office expenses, branch office and field office overhead expense of any kind; project management; superintendents, general foremen; estimating, engineering; coordinating; expediting; purchasing; detailing; legal, accounting, data processing or other administrative expenses; shop drawings; permits; auto insurance and umbrella insurance; pick-up truck costs; and warranty expense costs. The cost for the use of small tools is also to be covered by the markup percentage fee. Small tools shall be defined as tools and equipment (power or non-power) with an individual purchase cost of less than $750.

10. The application of the markup percentages referenced in the preceding paragraphs will apply to both additive and deductive change orders. With a deductive change order, the credit will be computed by applying the sliding scale percentages as outlined previously so a deductive change order would be computed as an additive and deductive work. The additions and deductions will be netted and the markup percentage adjustments will apply to the net amount.

11. In no event will any lump sum or percentage amounts for "contingency" be allowed to be added as a separate line item in change order estimates. Unknowns attributable to labor hours will be accounted for when estimating labor hours anticipated to perform the Work. Unknowns attributable to material scrap and waste will be estimated as part of material costs.

12. The Contractor's proposals for changes in the contract amount or time shall be submitted within seven (7) calendar days of MLGW's request, unless MLGW extends such period of time due to the circumstances. If such proposals are not received in a timely manner, if the proposals are not acceptable to MLGW, or if the changed work should be started immediately to avoid damage to the project or costly delay, MLGW may direct the Contractor to proceed with the changes without waiting for the Contractor's proposal or for the formal change order to be issued. When the Contractor's proposal is unacceptable, MLGW may direct the Contractor to proceed with the changed work on a cost-plus basis with an agreed upon "not-to-exceed" price for the work to be performed. Such directions to the Contractor by MLGW shall be confirmed in writing by a "Notice to Proceed on Changes" letter within seven (7) calendar days. The cost, credit, or time extensions will be determined by the parties as soon as possible and incorporated in a Change Order to the Contract.

13. If the Contractor has been required to provide insurance and bonds as part of the base contract price, a final contract change order will be processed to account for the Contractor's net increase or decrease in insurance or bond premium costs associated with change orders to the Contractor's base contract price.

14. As an alternative to lump sum change order proposals, MLGW or the Construction Manager acting with the approval of MLGW may choose the option to use Contract Unit Prices. Agreed upon contract unit prices shall be the same for added quantities. Unit Prices are not required to be used for pricing change orders where other methods of pricing change order work are more equitable.

The Contractor will submit, within seven (7) days after receipt of MLGW's written request for a unit price proposal, a written unit price proposal itemizing the quantities of each item of work for which there is an applicable contract unit price. The quantities must be itemized in relation to each specific contract drawing.

Contract unit prices will net differences of quantities of the same item. Such contract unit prices will be considered to cover all direct and indirect costs of furnishing and installing the item including the subcontractor's markup percentage fee. Adjustments to unit rates will apply to each unit uniformly.

15.    The Contractor agrees that the Contractor is responsible for submitting accurate cost and pricing data to support the Contractor lump sum change and cost plus change order proposals or other contract price adjustments under the Contract. The Contractor further agrees to submit change order proposals with cost and pricing data which is accurate, complete, current, and under the terms regarding pricing of change orders.

16.    The Contractor agrees that any designated MLGW Representatives will have the right to examine, copy or scan the records of the Contractor, and any lower tier contractors during the contract period and up to three (3) years, or longer if required by law, after final payment is made on the Contract to verify the accuracy and appropriateness of the pricing data used to price all change order proposals and claims. The Contractor agrees that if MLGW determines the cost and pricing data submitted (whether approved or not) was inaccurate, incomplete, not current, or not in compliance with the terms regarding pricing of change orders, a contract price adjustment will be made. Such post-approval contract price adjustments will apply to all levels of contractors and subcontractors and to all types of change order proposals including lump sum change orders, unit price change orders, and cost-plus change orders.

17.    The Contractor shall require all lower tier contractors to provide a breakdown of allowable labor and labor burden cost information as outlined in this section. This information will evaluate the potential cost of labor and labor burden related to change order work. The Contractor represents this information is an accurate estimate of the Contractor's actual labor and labor burden cost components. This information is not intended to establish fixed billing or change order pricing labor rates. However, when change orders are priced, the submitted cost data for labor rates may price change order work. The accuracy of any agreed upon labor cost components used to price change orders will be subject to later audit. Approved change order amounts may be adjusted later to correct the impact of inaccurate labor cost components if the agreed upon labor cost components are determined to be inaccurate.

## XXIV.  RATE OF PROGRESS AND TIME OF COMPLETION:

The Contractor agrees to complete each portion of the Work by the date specified in Contract Documents or by MLGW, with time being of the essence. The Work shall begin in a timely manner and be continued through completion during normal working hours unless otherwise specified by the MLGW Representative. The Contractor shall maintain and operate a workforce

C - 19

sufficient to meet the requirements of this provision. The Work is completed when proper documentation is submitted to and accepted by the MLGW Representative.

The Contractor expressly covenants and agrees that in completing the Work within the time specified, the Contractor has considered and made allowances for all of the ordinary and reasonably anticipated delays and hindrances. This includes weather normally occurring or reasonably anticipated to occur in the metropolitan geographic area of Shelby County, Tennessee during the time of performance of this Contract, incident to such Work, whether growing out of delays in securing workers, or otherwise.

## XXV.  EXTENSION OF TIME:

Should the Contractor be delayed in performing the Work due to matters not reasonably expected to occur and not within the Contractor's reasonable control including, but not limited to:

1.      Severe weather not normally occurring or anticipated to occur in the metropolitan geographic area of Shelby County, Tennessee during the time of performance of the Contract;

2.      Government directives;

3.      Shortage of material due to direct supplier breach;

The Contractor shall be entitled to such extension of time as granted by MLGW in writing. However, the request for extension of time shall be made to MLGW in writing within two (2) days from the time when such alleged cause for delay shall occur. Extension of time shall be the Contractor's sole remedy for the delay.

## XXVI.  LABOR:

The Contractor will furnish the personnel that shall be required to complete the Work in a timely manner and within the Contract amount. The Contractor at the Contractor's sole cost and expense will train employees prior to the start of the Work and shall submit documentation to the MLGW Representative that the Contractor's employees have been trained to the satisfaction of MLGW.

The Contractor shall, under the United States Immigration Reform and Control Act of 1986 ("IRCA"), as amended, and with all regulations, verify the identity and employment eligibility of all persons hired for work under this Contract, which includes completing and retaining the Employment Eligibility Verification Form ("I-9") to ensure employers are hiring individuals authorized to work in the United States. Further, the Contractor shall indemnify and hold harmless MLGW and MLGW's agents from violation of immigration laws. MLGW at MLGW's discretion may review such forms as provided for in the Audit Clause of this Contract.

Under Tennessee Code Annotated Section 50-1-103 neither party shall knowingly employ, recruit or refer for a fee for employment, an illegal immigrant.

The Contractor shall acknowledge MLGW is prohibited by law and policy from hiring illegal immigrants. The Contractor represents and warrants that the Contractor has not and will not knowingly utilize the services of illegal immigrants to perform this Contract and will not knowingly utilize the services of any subcontractor, if permitted under this Contract, who will utilize the services of illegal immigrants to perform this Contract. The Contractor has, as of this Contract, completed and submitted an attestation to MLGW on the form, Attestation Regarding Personnel Used in Contract Performance ("Attestation"), attached as Exhibit A and incorporated by this reference. Such attestation shall remain in effect through the term (including any renewal term) of this Contract.

If any contractor is discovered to have breached the Attestation, MLGW's Procurement and Contracts Department shall declare that contractor to be prohibited from contracting for or submitting a bid for any contract to supply goods or services to MLGW for a period of one (1) year, or longer if required by law, from discovery of the usage of illegal immigrant services to perform a contract to supply goods or services to MLGW. If any contractor feels that the contractor may have been treated unfairly, the contractor may file a written statement outlining those facts. This statement is filed with the Manager of Procurement and Contracts. The contractor may appeal the decision of the Manager of Procurement and Contracts to MLGW's President. MLGW will work to resolve the complaint within 60 days and respond to the contractor in writing regarding the findings. A copy of the letter of complaint and the resolution will be forwarded to the members of MLGW's Board of Commissioners.

The Contractor agrees to indemnify and hold harmless MLGW from any and all any fines, penalties, claims, demands, losses, causes of action, damages, lawsuits, judgments, including attorney's fees and costs, associated with any violation of this section or the Attestation.

## XXVII. EQUAL OPPORTUNITY CLAUSE:

While performing this Contract, the Contractor agrees:

1. The Contractor shall not discriminate against any employee because of sex, race, creed, religion, color, national origin, age, or disability. The Contractor will take affirmative action to ensure the Contractor's employees are treated, during performance of this Contract, without regard to their sex, race, creed, religion, color, national origin, age or disability. The action shall include, but not be limited to: employment, upgrading, demotion, termination, decrease in rates of pay or other forms of compensation, and selection for training, including apprenticeship.

2. The Contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices summarizing the provisions of this Equal Opportunity Clause.

3. The Contractor agrees, warrants, and assures that no person shall be excluded from participation in, be denied benefits of or be otherwise subjected to discrimination in the performance of this Contract or in the employment practices of the Contractor on the grounds of disability, sex, race, creed, religion, color, national origin, age, disability, or any other classification protected by federal or state constitutional or statutory law. Such

C - 21

laws shall include, but not be limited to: Title VI of the Civil Rights Act of 1964; Section 504 of the Rehabilitation Act of 1973; and Title II of the American with Disabilities Act of 1990. The Contractor shall, upon request, show proof of such nondiscrimination and shall post in conspicuous places, available to all employees and applicants, notices of nondiscrimination.

4.    The Contractor shall, in all solicitations or advertisements for employees placed by or for the Contractor, state that the Contractor is an equal opportunity employer.

5.    The Contractor understands it is the policy of MLGW to ensure equitable economic opportunities for persons or businesses that desire to do business with MLGW, including women owned business enterprises, minority owned business enterprises, and locally owned small business enterprises.

6.    The Contractor shall permit access by MLGW to any of the Contractor's reports and documents to ensure compliance with this Article.

7.    The Contractor shall not obstruct or hinder MLGW from fulfilling duties and responsibilities imposed by this Article and its related policies and regulations.

8.    The Contractor and each of the Contractor's subcontractors shall include a summary of this Article in their contracts.

9.    The Contractor and subcontractor shall abide by the requirements of 41 CFR Section 60-1.4(a), 60-300.5(a), and 60-741.5(a) and Executive Order 13672. These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities, and prohibit discrimination against all individuals based on their race, color, religion, sex, sexual orientation, gender identity or national origin. These regulations require that covered prime contractors and subcontractors take affirmative action to employ and advance in employment individuals without regard to race, color, religion, sex, sexual orientation, gender identity, national origin, protected veteran status or disability.

## XVIII.   AUDIT CLAUSE:

Whenever MLGW enters into any contractual arrangement including, but not limited to, lump sum contracts (e.g., fixed price or stipulated sum contracts), unit price, cost plus or time and material contracts with or without guaranteed maximum or not-to-exceed amounts, the Contractor's, subcontractors' and sub-subcontractors' "records" shall, upon reasonable notice, be open to inspection and subject to audit and reproduction during normal business working hours. Such audits may be performed by an MLGW Representative or an outside representative engaged by MLGW. MLGW or MLGW's designee may conduct such audits or inspections throughout the term of this Contract and for three (3) years after final payment or longer if required by law. MLGW's representatives may (without limitation) conduct verification such as counting employees at the work site, witnessing payroll distribution, and verifying information and amounts through interviews and written confirmations with the Contractor's employees, field and agency labor, subcontractors, and suppliers.

C - 22

The Contractor's "records" as referred to in this Contract shall include all information, materials and data of every kind and character including, without limitation, records, books, papers, documents, subscriptions, recordings, agreements, purchase orders, leases, contracts, commitments, arrangements, notes, daily diaries, superintendent reports, drawings, receipts, vouchers and memoranda and all other agreements, sources of information and matters that pertain to any matters, rights, duties or obligations under or covered by any Contract Documents. Such records shall include hard copy, and computer readable data (if it can be provided) written policies and procedures; time sheets; payroll registers; payroll records; cancelled payroll checks; subcontract files (including proposals of successful and unsuccessful bidders, bid recaps, etc.); original estimates; estimating work sheets; correspondence; change order files (including documentation covering negotiated settlements); back charge logs and supporting documentation; invoices and related payment documentation; general ledger; records detailing cash and trade discounts earned; insurance rebates and dividends; and any other contractor records which may affect matters of interest to MLGW in connection with the contractor's dealings with MLGW (all foregoing "Records") to the extent necessary to adequately permit evaluation and verification of any or all of:

- Compliance with contract requirements for deliverables
- Compliance with approved plans and specifications
- Compliance with MLGW's business ethics expectations
- Compliance with the Contract provisions regarding the pricing of change orders
- Accuracy of the Contractor's representations regarding the pricing of invoices
- Accuracy of the Contractor's representations related to claims submitted by the Contractor or the Contractor's payees.

The Contractor shall require all payees (examples include subcontractors and material suppliers) to comply with this section by including the requirements in a written contract between the Contractor and the payee. The requirements shall include flow-down right of audit provisions in contracts with payees and will also apply to subcontractors and sub-subcontractors, material suppliers, etc. The Contractor will cooperate fully and will cause all of the Contractor's subcontractors (including those entering into lump sum subcontracts) to cooperate fully in furnishing or in providing to MLGW from time to time whenever requested, in an expeditious manner, all such information, materials and data.

MLGW's authorized representative or designee shall have reasonable access to the Contractor's facilities, shall be allowed to interview all current or former employees to discuss matters pertinent to performing this Contract, and shall be provided adequate and appropriate work space, to conduct audits in compliance with this Article.

If an audit inspection or examination under this section, discloses overpricing or overcharges (of any nature) by the Contractor to MLGW over 1% of the total contract billings or $200,000, whichever is less, besides making adjustments for the overcharges, the reasonable actual cost of MLGW's audit shall be reimbursed to MLGW by the Contractor. Any adjustments and payments made because of any such audit or inspection of the Contractor's invoices and records shall be made within 90 days from presentation of MLGW's findings to the Contractor.

## XXIX.  **INDEPENDENT CONTRACTOR:**

The Contractor shall be considered an independent contractor in performing the Work and shall have the right to control the activities of the Contractor's employees, agents and subcontractors in performing the Work except as provided for in this Contract. The Contractor shall be solely responsible for the compensation, benefits, workers' compensation insurance, contributions and taxes of the Contractor's employees, subcontractors or agents.

## XXX. **SUPPLIER DIVERSITY POLICY:**

It is the express intent of MLGW that minority, women and locally owned small suppliers and contractors have the maximum practicable opportunity to participate in the award and performance of MLGW's purchase orders, contracts and subcontracts. MLGW's Board of Commissioners encourages the growth of minority owned business enterprises ("MBE"), women owned business enterprises ("WBE") and locally owned small businesses ("LSB") (collectively "MWBE/LSB") by providing them the opportunity to furnish MLGW with goods and services and to contract or subcontract with MLGW. It is the goal of MLGW that such businesses should compete under the competitive bidding provisions of MLGW and be able to supply a representative portion of purchases and contracts with MLGW.

Bids received by MWBE/LSB certified companies in bid responses shall be deemed as an effective response to solicitations in MLGW's effort to make awards based on "best bid." Best Bid is defined as the most responsive proposal, solicitation or offer that meets required specifications including, if applicable, any Supplier Diversity goal as set in the Contract Documents.

## XXXI.  **SUPPLIER DIVERSITY REPORTING AND TRACKING:**

MWBE/LSB participation shall be recorded on a Supplier Diversity Activity Report ("SDAR"), if applicable. Where applicable, a completed SDAR shall be submitted with the Contractor's invoice under Section VII. PAYMENT. Failure to include completed Supplier Diversity Activity Reports will cause non-payment of submitted invoices. Where applicable, a SDAR form will be given to the successful bidder.

To ensure that all obligations under subcontracts awarded to MWBE/LSBs are met, MLGW will review the successful bidder's MWBE/LSB involvement efforts during contract performance, if applicable. The Contractor shall bring to the attention of MLGW any situation in which regularly scheduled progress payments are not made to the Contractor's MWBE/LSB subcontractors and suppliers.

Petitions to substitute or replace MWBE/LSB certified subcontractors must be made in writing with documented reasons for the request and submitted to the Supplier Diversity Department at least 30 days before the expected termination date. The Supplier Diversity Department may schedule a hearing or negotiation meetings with the parties before accepting or declining the request.

**XXXII.  DRUG FREE WORKPLACE:**

MLGW has adopted a policy in observation of the Drug Free Work Place Act. Therefore, it is unlawful to manufacture, distribute, disperse, possess, or use any controlled substance in the MLGW workplace.

MLGW requests that the attached Drug Free Workplace Affidavit accompany the Contractor's bid response if the Work will be performed on MLGW's properties or in its facilities. MLGW under the Drug Free Workplace Act has adopted this form (see Exhibit B).

**XXXIII.  APPLICABLE LAW:**

This Contract shall be governed and enforced according to the laws of Tennessee, regardless of choice of law. All actions, whether sounding in contract or in tort, relating to the validity, construction, interpretation and enforcement of this Contract shall be instituted and litigated in the courts in Shelby County, Tennessee and in no other. The parties to this Contract submit to the jurisdiction of the courts in Shelby County, Tennessee.

**XXXIV.  COUNTERPARTS:**

This Contract may be executed in one (1) or more counterparts. Each counterpart shall be deemed an original. All counterparts shall together constitute one (1) and the same agreement.

**XXXV.  BACKGROUND CHECKS:**

The Contractor agrees to comply with all directives and policies of MLGW pertaining to the safety and security of MLGW property. The Contractor agrees to allow MLGW to conduct such background checks and security measures as MLGW in MLGW's sole discretion deems appropriate. The Contractor agrees to execute the waivers.

**XXXVI.  BUSINESS ETHICS:**

The Contractor acknowledges the receipt of MLGW's Code of Business Conduct policies and other applicable personnel policies. The Contractor agrees to adhere to and be bound by them in the conduct of the Work.

While pursuing contracts with MLGW and while performing contract work under this Contract, the Contractor agrees to maintain business ethics standards aimed at avoiding any impropriety or conflict of interest, which could be construed to have an adverse impact on the dealings with MLGW.

The Contractor shall take reasonable steps to prevent any actions or conditions that could cause a conflict with MLGW's best interests. These obligations shall apply to the activities of the Contractor, the Contractor's employees, agents and subcontractors. For example, the Contractor's employees, agents, subcontractors, material suppliers (or their representatives) should not make or provide to be made any employment, gifts, extravagant entertainment,

C - 25

payments, loans, free work, substantially discounted work, or other considerations to MLGW's representatives, employees or their relatives. Similarly, the Contractor, the Contractor's employees, agents or subcontractors (or their relatives) should receive no commissions, gifts, extravagant entertainment, payments, loans, free work, substantially discounted work or any other considerations from representatives of subcontractors, or material suppliers performing work on this project.

The Contractor agrees to notify an appropriate MLGW Representative (e.g., the Senior Internal Auditor or the Manager of Procurement and Contracts) as soon as possible after the Contractor learns of any instance where there has been a failure to comply with this Article.

Upon request by MLGW, the Contractor agrees to provide a Management Representation Letter in a form agreeable to MLGW stating the Contractor understands that MLGW has a Code of Business Conduct Policy which provides that no MLGW employee nor member of the employee's family shall accept anything of value from contractors, suppliers, vendors or others transacting or seeking to transact business with MLGW, and the Contractor is not aware of any situations violating policy not previously reported to MLGW as provided in the paragraph above. The Contractor agrees to include this clause in all contracts with subcontractors and major material suppliers used for this project.

The Contractor shall permit interviews of employees, reviews and audits of accounting or other records by MLGW Representative(s) to evaluate compliance with the Code of Business Conduct. Such reviews and audits will encompass all dealings and activities of the Contractor, the Contractor's employees, agents, representatives, vendors, subcontractors, and other third parties paid by the Contractor in relation with MLGW's current or former employees or employees' relatives.

## XXXVII. STANDARDS OF BUSINESS CONDUCT:

The MLGW Standards of Business Conduct policy exists to reaffirm the strong company commitment to the highest standards of legal, ethical and professional conduct in MLGW's business practices and among MLGW's employees, and to ensure that all employees observe the highest standards of ethical business conduct in all work-related situations.

The following definitions apply to this policy:

1. Conflict of Interest: For this policy, conflict of interest is a situation where an employee must decide between the employee's personal interests and the interests of the company.

2. Directly Interested: Any contract or subcontract with a commissioner, officer, agent or employee personally or with any business in which the commissioner, officer, agent or employee is a sole proprietor, an officer, a partner or the person having the controlling interest.

**NEXT PAGE**

C - 26

3. Controlling Interest: The owner or the individual with the ownership or control of the largest number of outstanding shares, limited partnership interests, or limited liability company membership interests owned by any single individual or corporation.

4. Indirectly Interested: Any contract or subcontract in which the commissioner, officer, agent or employee is interested but not directly so. This includes contracts or subcontracts with entities where:

     A. A person or persons, who are related by blood or marriage to a commissioner, officer, agent or employee, are directly interested;

     B. A commissioner, officer, agent, employee or a person or persons, related by blood or marriage, have an ownership interest in the entity equal to 5% or more, but less than a Controlling Interest.

Normal employment compensation paid to a person, related by blood or marriage to a commissioner, officer, agent or employee, whose regular, ongoing employer or business has a contractual arrangement with MLGW shall not be considered an ownership interest for this definition. This applies provided the commissioner, officer, agent or employee did not assist their relative in securing the contract with MLGW.

For this policy, related by blood or marriage will be defined as:

1. Blood Relative: A blood relative is connected with another person by blood (i.e., descent from a common ancestor). Blood relatives shall include children, parents, brothers and sisters. The policy treats relationships created by legalized adoptions as blood relatives.

2. Relative by Marriage: A relative by marriage is connected with another person by marriage. Relatives by marriage shall include a spouse, a spouse's children, parents, brothers, sisters, and the employee's son-in-law or daughter-in-law. This policy treats step relatives and half relatives as relatives by marriage.

**Procedure for Bidding, Purchases and Contracts:**

No commissioner, officer, agent or employee of MLGW who has a direct or indirect interest shall pass upon, authorize payment for, supervise or control any work for MLGW or any purchase, contract, renewal or change order or subcontract for any material or service for MLGW where such work is performed by or such materials or service are purchased from or through any contract or subcontract in which the commissioner, officer, agent or employee is directly or indirectly interested.

No commissioner, officer, agent or employee of MLGW shall bid on, sell or offer for sale any merchandise, equipment, or similar commodity or service to MLGW during their tenure with MLGW.

**NEXT PAGE**

C - 27

No commissioner, officer, agent or employee shall be directly interested in any contract or subcontract with MLGW or hold controlling interest in any entity contracting with MLGW.

No commissioner, officer, agent or employee shall be indirectly interested in any contract, subcontract, change order or renewal with MLGW unless the officer, agent or employee publicly acknowledges the commissioner's, officer's, agents or employee's interest prior to the execution of such contract, renewal or change order. The acknowledgement shall be made by public disclosure to the Board prior to a vote on the contract by the Board. Contracts or subcontracts in which any commissioner, officer, agent or employee is indirectly interested must be approved by the Board regardless of the value of the contract.

**Method of Filing Complaint and Confidentiality:**

All complaints of ethical violations received from MLGW customers, suppliers, employees, advisors and members of the communities in which MLGW's operations are located will be reported to MLGW's General Counsel. Such reports should include dates and times of the alleged violations of ethical business principles and inappropriate behavior and the name(s) of the employee(s) involved, with any other available pertinent data.

## XXXVIII.   CONFIDENTIAL INFORMATION:

During the term of this Contract and for a period of at least five (5) years, or longer if required by law, from this Contract's termination, or such longer period as may be required by law, the Contractor will regard and preserve as confidential all information related to the business of MLGW, any successor company, subsidiaries or affiliated companies and its or their clients that may be obtained from any source because of this Contract. The Contractor will not, without first obtaining MLGW's written consent, disclose to any person, firm or enterprise, or use for the Contractor's benefit, any information relating to the pricing, methods, processes, financial data, lists, apparatus, statistics, programs, research, development or related information of MLGW, any successor company, subsidiaries or affiliated companies or its or their clients, concerning past, present or future business activities of said entities.

## XXXIX.   DEBARMENT:

**Federal Debarment:**

Debarment by an agency under FAR 9.406.2, GPO Instructions 110-11A, or PS Publication 41 will occur for:

1. Conviction of or civil judgment for fraud violation of antitrust laws, embezzlement, theft, forgery, bribery, false statements, or other offenses indicating a lack of business integrity;

2. Violation of a Government contract, such as a willful failure to perform under its terms or a history of failure to perform; or

C - 28

3. Any other cause of a serious and compelling nature affecting responsibility. (See Code N – Debarment under FAR 9.406 2(b)(2) Drug Free Workplace Act of 1988.)

Contractors, who have been debarred, are excluded from receiving contracts. MLGW will not solicit offers from, and award contracts to renew or otherwise extend the duration of current contracts, or consent to subcontracts with these contractors, unless the MLGW President or a designee determines there is a compelling reason for such action. Government prime contractors, when required by the terms, shall not enter into any subcontract equal to or over $25,000 with a contractor debarred, suspended, or proposed for debarment, unless there is a compelling reason to do so. Debarments are for a specified term as determined by the debarring agency and as in the listing.

**Supplier Diversity Debarment:**

MLGW may debar a prime contractor, manufacturer, subcontractor, supplier, owner or principal (at the time of debarment), and those owners or principals of future companies, from participating in the bid process and from contract awards for a period of five (5) years, or longer if required by law, from the date of the Notice of Debarment. Debarment is not meant to be punitive, but a procedure to ensure that the Supplier Diversity Program is conducted legally with responsible parties, maintaining the integrity of the MLGW procurement process.

Prime contractors, subcontractors, and suppliers found to have committed any of the following offenses shall be issued a Notice of Debarment:

1. Failure to submit, in writing, documented reasons to substitute or replace certified subcontractors or suppliers listed in the bid documents to the Supplier Diversity Department prior to the start of the work to be performed by the subcontractor or supplier.

2. Contractors awarded contracts based on the inclusion of MWBE/LSBs as subcontractors to satisfy Supplier Diversity participation goal not utilizing the MWBE/LSBs to perform the Work.

3. Submission of falsified documentation concerning Supplier Diversity during the bid process and contract period.

4. Submission of bids including the use of business enterprises as conduits, fronts, or participation in fronting activity.

5. Refusal to provide pricing to MWBE/LSB distributors and resellers.

6. Contractors, manufacturers, suppliers, distributors, and any other business enterprise with a conviction of or civil judgment for fraud, violation of antitrust laws, embezzlement, theft, forgery, bribery, false statements, or other offenses indicating a lack of business integrity.

7. Violation of the terms of a government contract, such as a willful failure to perform in accordance with the government contract's terms or a history of failure to perform.

**Debarment Appeals Process:**

Contractors may appeal a Notice to Debarment via the MLGW Procurement Complaint and Appeals Process. A copy of the process can be found at www.mlgw.com/protests or by calling the Manager of Procurement and Contracts at (901) 528-4381.

## XL.   ELIGIBILITY OF FORMER EMPLOYEES:

Former employees that apply for work with an MLGW contractor must be pre-approved by MLGW for eligibility to work on MLGW facilities or contracts. Those individuals who resigned while under investigation or were discharged from MLGW are ineligible to work on MLGW facilities or contracts.

## XLI. MINOR IRREGULARITY:

A variation from the solicitation that neither affects the price of the contract nor gives a bidder an advantage or benefit not enjoyed by other bidders, nor adversely impacts the interests of the contracting party may be considered a "Minor Irregularity". Failure to sign the bid document or any documents contained therein will not be considered a Minor Irregularity.


**SIGNATURE PAGE TO FOLLOW**

**IN WITNESS WHEREOF,** the parties have caused these presents to be executed by their duly authorized representatives on the day and year first above written.

| MEMPHIS LIGHT, GAS AND WATER DIVISION | CONTRACTOR |
|---|---|
| City of Memphis, Memphis, Tennessee | NAME OF COMPANY:<br>Asplundh Tree Expert, LLC |
| By: | SIGNATURE OF AUTHORIZED SIGNEE: |
| Jarl "J.T." Young<br>President and Chief Executive Officer<br>Date: | PRINT NAME OF AUTHORIZED SIGNEE:<br>Gregg G. Asplundh |
| | TITLE OF AUTHORIZED SIGNEE:<br>Executive Vice President |
| Attest: | BUSINESS ADDRESS OF CONTRACTOR:<br>1953 Charlotte Pike #402, Nashville, TN 37209 |
| Dana Jeanes<br>Sr. Vice-President, Chief Financial Officer and Secretary-Treasurer | EMAIL ADDRESS OF SIGNEE:<br>ghayden@asplundh.com |
| | TELEPHONE NUMBER OF CONTRACTOR:<br>615-346-7256 |
| Approved: | MOBILE NUMBER OF CONTRACTOR:<br>615-979-1850 |
| Geoffrey Lewis<br>Attorney, Board of Light, Gas and Water Commissioners | ETHNICITY OF OWNER:<br>Caucasian |
| | MALE OR FEMALE:<br>Male |
| Intentionally Blank | FAX NUMBER OF CONTRACTOR:<br>615-353-2191 |
| | DATE 10|17|19 |

This Contract was approved by the Council of the City of Memphis under City Ordinance 5046 as reflected in Council minutes dated: _____ July 16, 2019 _____.

C - 31

Bond No. 107114240

## PERFORMANCE BOND

**STATE OF** Pennsylvania

**COUNTY OF** Philadelphia

**KNOW ALL BY THESE PRESENTS, THAT:**

**WE,** Asplundh Tree Expert, LLC ("**Principal**"),
a Limited Liability Company (form of business organization), organized and existing under and by virtue of the laws of the State of Pennsylvania ; and Travelers Casualty and Surety Company of America ("**Surety**"), a Company (form of business organization), organized and existing under and by virtue of the laws of the State of Connecticut and licensed to engage in the surety business in the State of Tennessee; do hereby bind ourselves, successors, assigns, heirs and personal representatives for the use and benefit of Memphis Light, Gas and Water Division of the City of Memphis, Tennessee, ("Obligee") in the sum of Nineteen Million Four Hundred Eighty Three Thousand Eight Hundred Four and 85/100 Dollars ($19,483,804.85) for the payment of which will and truly to be made, in lawful money of the United States.

WHEREAS, the Obligee, has engaged the Principal, for the sum of Nineteen Million Four Hundred Eighty Three Thousand Eight Hundred Four and 85/100 Dollars ($19,483,804.85), which represents an annual bond to equal 20% of the 60-month Contract price to provide machinery, apparatus, equipment and all material and labor for Contract No. 12077 the necessary more fully described in a written Contract bearing date of August 30, 2019 12077 which Contract, including all writing therein referred to, is by reference hereby made a part hereof, and it is the desire of the Obligee, that the Principal shall assure all undertakings under the Contract. The bond shall be extended by continuation certificate for additional periods from the expiry date hereof.

NOW, THEREFORE, the condition of this obligation is such that, if the above named Principal shall promptly and faithfully perform all undertakings and obligations under the Contract, and shall fully indemnify and save harmless the Obligee from all costs and damages which it may suffer by any failure by the Principal so to do, and shall fully reimburse and repay the Obligee any and all outlay and expense which it may incur in making good any such default, then this obligation shall be null and void; otherwise, it shall remain in full force and effect.

If the Principal performs the Contract, to the satisfaction of MLGW, the Surety and the Principal shall have no obligation under this Performance Bond.

Provided there is no default by the Obligee, the Surety's obligation under this Performance Bond shall arise after:

    A.    The Obligee has notified the Principal and the Surety in writing (at the address described on the signature page) that the Obligee is considering declaring the Principal in default of the Contract and has requested and attempted to arrange a

C- 32

conference with the Principal and the Surety to be held not later than 15 days after receipt of such notice to discuss methods of performing the Contract. If the Obligee, the Principal, and the Surety agree, the Principal shall be allowed a reasonable time to perform the Contract, but such agreement shall not waive the Obligee's right subsequently to declare the Principal in default; and

B.      The Obligee has declared the Principal in default of the Contract and formally terminated the Principal's right to complete the Contract. Such Default shall not be declared earlier than 20 days after the Principal and the Surety have received the notice as provided in A; and

C.      The Obligee has agreed to pay the balance of the contract price to the Surety under the terms of the Contract or to a contractor selected to perform the Contract under the terms of the Contract with the Obligee.

When the Obligee has satisfied the conditions aforesaid, the Surety shall promptly and at Surety's expense take one (1) of the following actions:

A.      Arrange for the Principal, with consent of the Obligee, to perform and complete the Contract; or

B.      Perform and complete the Contract itself, through the Surety's agents or through independent contractors; or

C.      Obtain bids or negotiate proposals from qualified contractors acceptable to the Obligee for a contract for performance and completion of the Contract, arrange for a contract to be prepared for execution by the Obligee and the contractor selected with the Obligee's concurrence, to be secured with performance and payment bonds, executed by a qualified surety equivalent to the bonds issued on the Contract, and pay to the Obligee the damages over the balance of the Contract price incurred by the Obligee resulting from the Principal's default; or

D.      Waive the Surety's right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances, after investigation, determine the amount for which the Surety may be liable to the Obligee and, as soon as practicable after the amount is determined, tender payment to the Obligee; or

E.      Deny liability in whole or in part and notify the Obligee in writing, citing reasons.

If the Surety does not proceed with reasonable promptness, the Surety shall be deemed in default on this Performance Bond 15 days after receipt of an additional written notice from the Obligee to the Surety demanding the Surety perform the Surety's obligations under this Performance Bond, and the Obligee shall be entitled to enforce any remedy available to the Obligee. If the Surety proceeds as provided above and the Obligee refuses the payment tendered or the Surety has denied liability, in whole or in part, without further written notice the Obligee shall be

entitled to enforce any remedy available to the Obligee including the Obligee's costs, expenses, and attorney's fees.

After the Obligee has terminated the Principal's right to complete the Contract, and if the Surety elects to act under the aforesaid subparagraphs A through E above, then the responsibilities of the Surety to the Obligee shall not be greater than those of the Principal under the Contract, and the responsibilities of the Obligee to the Surety shall not be greater than those of the Obligee under the Contract. To the limit of this Performance Bond, but subject to the commitment by the Obligee of the balance of the Contract price to mitigation of costs and damages on the Contract, the Surety is obligated without duplication for:

    A.    The responsibilities of the Principal for correction of defective work and completion of the Contract;

    B.    Additional legal, design, professional and delay costs resulting from the Principal's default, and resulting from the actions or failure to act of the Surety under the preceding paragraph; and

    C.    Liquidated damages, or if no liquidated damages are specified in the Contract, actual damages caused by delayed performance or nonperformance of the Principal.

When this Performance Bond has been furnished to comply with a statutory or other legal requirement in the location where the Contract was to be performed, any provision in this Performance Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated. The intent is this Performance Bond shall be construed as a statutory bond and not as a common law bond.

And, for value received, it is stipulated and agreed that no change, extension of time, alteration or addition to the terms or to the work to be performed or the Specifications accompanying the same shall in anywise affect the obligations under this obligation or bond, and notice is waived of any such change, extension of time, alteration or addition to the terms or to the work or to the Specifications.

**SIGNATURE PAGE TO FOLLOW**

IN WITNESS WHEREOF, the Principal has affixed the principal's signature and the Surety has affixed the Surety's signature and seal, by their duly authorized officers, on the ___8th___ day of ___August___ , 20 19 ___.

Asplundh Tree Expert, LLC
PRINCIPAL

BY: PRINT NAME Ann P. Ercolani

  Asst. Secretary(Ins./Bonds)
TITLE

  708 Blair Mill Road, Willow Grove, PA 19090-1784
ADDRESS

Travelers Casualty and Surety Company of America
SURETY

BY: PRINT NAME    Kaitlyn Malkowski

  Attorney-In-Fact
TITLE

  One Tower Square, Hartford, CT 06183
ADDRESS

ACKNOWLEDGEMENT PAGE TO FOLLOW

C- 35

## ACKNOWLEDGEMENT OF PRINCIPAL

**STATE OF** _Pennsylvania_
**COUNTY OF** _Montgomery_

Personally appeared before me, a Notary Public in and for the above referenced State and
County, the undersigned, _Laura Ann Wilson_ ; Ann P. Ercola with whom I am
acquainted and made oath that he or she is the _Asst. Secretary(Ins./Bonds)_ of
_Asplundh Tree Expert, LLC_ , that he or she is duly authorized
to execute the foregoing Performance Bond in that capacity, and that he or she executed the
same.

Witness my hand and seal this _09th_ day of _August_ , 20 _19_ .

My Commission Expires: _____

COMMONWEALTH OF PENNSYLVANIA - NOTARY SEAL
Laura Ann Wilson, Notary Public
Montgomery County
My Commission Expires 04/15/2023
Commission Number 1269615


## ACKNOWLEDGEMENT OF SURETY

**STATE OF** _Pennsylvania_
**COUNTY OF** _Philadelphia_

Personally appeared before me, a Notary Public in and for the above referenced State and
County, the undersigned, _Kaitlyn Malkowski_ , with whom I am
acquainted, and made oath that he or she is the _Attorney-In-Fact_ of
_Travelers Casualty and Surety Company of America_ , a company licensed to engage in the surety business in
the State of Tennessee, and that he or she is duly authorized to execute the foregoing
Performance Bond in that capacity, and that he or she executed the same.

Witness my hand and seal this _8th_ day of _August_ , 20 _19_ .

My Commission Expires: 9/18/2021

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
WAYNE G. McVAUGH, Notary Public
City of Philadelphia, Phila. County
My Commission Expires September 18, 2021

C- 36



**Travelers Casualty and Surety Company of America**
**Travelers Casualty and Surety Company**
**St. Paul Fire and Marine Insurance Company**

### POWER OF ATTORNEY

**KNOW ALL MEN BY THESE PRESENTS:** That Travelers Casualty and Surety Company of America, Travelers Casualty and Surety Company, and St. Paul Fire and Marine Insurance Company are corporations duly organized under the laws of the State of Connecticut (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint **KAITLYN MALKOWSKI** of **PHILADELPHIA Pennsylvania** , their true and lawful Attorney-In-Fact to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF,** the Companies have caused this instrument to be signed, and their corporate seals to be hereto affixed, this **17th** day of **January, 2019.**

  

State of Connecticut

City of Hartford ss.

By: _____
Robert L. Raney, Senior Vice President

On this the **17th** day of **January, 2019,** before me personally appeared **Robert L. Raney,** who acknowledged himself to be the Senior Vice President of Travelers Casualty and Surety Company of America, Travelers Casualty and Surety Company, and St. Paul Fire and Marine Insurance Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of said Companies by himself as a duly authorized officer.

**IN WITNESS WHEREOF,** I hereunto set my hand and official seal.

My Commission expires the 30th day of June, 2021

_____
Anna P. Nowik, Notary Public

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Boards of Directors of Travelers Casualty and Surety Company of America, Travelers Casualty and Surety Company, and St. Paul Fire and Marine Insurance Company, which resolutions are now in full force and effect, reading as follows:

**RESOLVED,** that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President, any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-In-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking, and any of said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

**FURTHER RESOLVED,** that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

**FURTHER RESOLVED,** that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary and duly attested and sealed with the Company's seal by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-In-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

**FURTHER RESOLVED,** that the signature of each of the following officers: President, any Executive Vice President, any Senior Vice President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-In-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or understanding to which it is attached.

I, **Kevin E. Hughes,** the undersigned, Assistant Secretary of Travelers Casualty and Surety Company of America, Travelers Casualty and Surety Company, and St. Paul Fire and Marine Insurance Company, do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which remains in full force and effect.

Dated this **8th** day of **August** , **2019** .



_____
Kevin E. Hughes, Assistant Secretary

*To verify the authenticity of this Power of Attorney, please call us at 1-800-421-3880.*
*Please refer to the above-named Attorney-In-Fact and the details of the bond to which this Power of Attorney is attached.*

Bond No. 107114240

## CONTRACTOR'S LABOR AND MATERIALS PAYMENT BOND

STATE OF Pennsylvania

COUNTY OF Philadelphia

KNOW ALL BY THESE PRESENTS, THAT:

WE, Asplundh Tree Expert, LLC, "Principal"), a Limited Liability Company (form of business organization), organized and existing under and by virtue of the laws of the State of Pennsylvania ; and Travelers Casualty and Surety Company of America ("Surety"), a Company (form of business organization), organized and existing under and by virtue of the laws of the State of Connecticut and licensed to engage in the surety business in the State of Tennessee; do hereby bind ourselves, successors, assigns, heirs and personal representatives for the use and benefit of Memphis Light, Gas and Water Division of the City of Memphis, Tennessee, existing under and by virtue of the laws of the State of Tennessee ("Obligee") in the sum of Twenty Four Million Three Hundred Fifty Four Thousand Seven Hundred Fifty Six and 06/100 Dollars ($24,354,756.06) for the payment of which will and truly to be made, in lawful money of the United States.

WHEREAS, the Obligee has engaged the said Principal, for the sum of Twenty Four Million Three Hundred Fifty Four Thousand Seven Hundred Fifty Six and 06/100 Dollars ($24,354,756.06), to provide the necessary machinery, apparatus, equipment, and all material and labor for Contract No. 12077 , more fully described in a written Contract bearing date of August 30, 2019 , a copy of which said Contract, including all writing therein referred to, between Principal and Obligee made a part hereof, and it is the desire of the Obligee, that the Principal shall assure all undertakings under the Contract, and shall assure and protect all laborers and furnishers of material on said work, both as provided by Sections 12-4-201 through 12-4-208 inclusive, of the Tennessee Code Annotated, and also independently of said statutes.

NOW, therefore, the condition of this obligation is such that if the Principal shall promptly pay all claimants, as hereinafter defined, for all labor, materials or equipment used by the Principal or any immediate or remote subcontractor under the Principal in the prosecution of the work provided for in the Contract, then this obligation shall be null and void; otherwise, it shall remain in full force and effect. For this obligation, the term "claimant" shall mean an individual or entity having a direct contract with the Principal or with a subcontractor of the Principal to furnish labor, materials or equipment for use in performance of the Contract.

The Surety shall have no obligation under this Contractor's Labor and Materials Payment Bond (Payment Bond) until:

A. Claimants who are employed by or have a direct contract with the Principal have given written notice to the Surety (at the address described on the signature page) and sent a copy of such notice to the Obligee stating a claim is being made under this Payment Bond, and, with substantial accuracy, the amount of the claim; or,

C- 37

B. Claimants who do not have a direct contract with the Principal have furnished written notice to the Principal and sent a copy of such notice to the Obligee, after such labor, materials or equipment is furnished, and within 90 days after the completion of the work under the Contract, stating, with substantial accuracy, the amount of the claim and the name of the party to whom the materials were furnished or supplied or for whom the labor was performed.

The Surety's total obligation shall not exceed this Payment Bond, and this Payment Bond shall be credited for any payments made in good faith by the Surety.

When this Payment Bond has been furnished to comply with a statutory or other legal requirement in the location where the work under the Contract was performed, any provision in this Payment Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is this Payment Bond shall be construed as a statutory bond and not as a common law bond.

Upon request by any person or entity appearing to be a potential beneficiary of this Payment Bond, the Principal shall promptly furnish a copy of this Payment Bond or shall permit a copy to be made.

**AND (FOR VALUE RECEIVED)**, it is stipulated and agreed that no change, extension of time, alteration or addition to the terms of the said Contract or to the work to be performed thereunder or the Specifications accompanying the same shall in anywise affect the obligations under this Payment Bond, and notice is hereby waived of any such change, extension of time, alteration or addition to the terms of the Contract or to the work or to the Specifications.

<u>**SIGNATURE PAGE TO FOLLOW**</u>

C- 38

**IN WITNESS WHEREOF,** the Principal has hereunto affixed the Principal's signature and the Surety has hereunto affixed the Surety's signature and seal, by their duly authorized officers, on the  8th  day of August  , 20 19  .


Asplundh Tree Expert, LLC
PRINCIPAL

BY: PRINT NAME   Ann P. Ercolani

  Asst. Secretary(Ins./Bonds)
TITLE

708 Blair Mill Road, Willow Grove, PA 19090-1784
ADDRESS


Travelers Casualty and Surety Company of America
SURETY

BY: PRINT NAME   Kaitlyn Malkowski

Attorney-in-Fact
TITLE

One Tower Square, Hartford, CT 06183
ADDRESS


## ACKNOWLEDGEMENT PAGE TO FOLLOW


C- 39

**ACKNOWLEDGEMENT OE PRINCIPAL**

**STATE OF** Pennsylvania

**COUNTY OF** Montgomery

Personally appeared before me, a Notary Public in and for the above referenced State and County, the undersigned, Laura Ann Wilson ; Ann P. Ercolani with whom I am acquainted and made oath that he or she, is the Asst. Secretary(Ins./Bonds) of Asplundh Tree Expert, LLC , that he or she is duly authorized to execute the foregoing Contractor's Labor And Materials Payment Bond in that capacity, and that he or she executed the same.

Witness my hand and seal this 09th day of August , 2019 .

My Commission Expires:

COMMONWEALTH OF PENNSYLVANIA - NOTARY SEAL.
Laura Ann Wilson, Notary Public
Montgomery County
My Commission Expires 04/18/2023
Commission Number 1289618

**ACKNOWLEDGEMENT OF SURETY**

**STATE OF** Pennsylvania

**COUNTY OF** Philadelphia

Personally appeared before me, a Notary Public in and for the above referenced State and County, the undersigned, Kaitlyn Malkowski , with whom I am acquainted, and made oath that he or she is the Attorney-in-Fact of Travelers Casualty and Surety Company of America, a company licensed to engage in the surety business in the State of Tennessee, and that he or she is duly authorized to execute the foregoing Contractor's Labor And Materials Payment Bond in that capacity, and that he or she executed the same.

Witness my hand and seal this 8th day of August , 20 19 .

My Commission Expires: 9/18/2021

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
WAYNE G. McVAUGH, Notary Public
City of Philadelphia, Phila. County
My Commission Expires September 18, 2021

C- 40

# GENERAL CONDITIONS

## 1. PRINCIPLES AND CONDITIONS

These General Conditions shall apply to all parts of the Work and are included as part of the Contract or order unless otherwise noted.

Whenever the following words shall appear in the Contract, "Board," "Commissioners," "Division," "MLGW," "Light, Gas and Water Commissioners," and "Owner," they shall mean the Board of Light, Gas and Water Commissioners of the Memphis, Light, Gas and Water Division, City of Memphis, Memphis, Tennessee, duly appointed and holding office at the time the Contract was entered into or during the fulfillment thereof.

Wherever and whenever the term "Equipment" is used in these Specifications, it shall be understood to include trucks, trailers, winches, dollies, tools and other apparatus, owned and operated by the Contractor.

Wherever and whenever the term "MLGW Representative," "MLGW Engineer" or "MLGW Inspector" is used in these Specifications, it shall be understood to designate a duly authorized representative of the Memphis Light, Gas and Water Division.

MLGW and the Contractor are those named as such in the Contract.

The intention of the documents is to include all supervision, material, labor, transportation and equipment reasonably required for the proper execution of the Work.

Materials or work described in words which have a well-known or recognized technical or trade meaning shall be so interpreted when used in the Specifications.

Wherever and whenever the term "Contractor" is used in the Specifications, it shall be understood to designate the party or parties who will be awarded the Contract or order to furnish Work under these Specifications, and any suppliers or subcontractors engaged by the Contractor to furnish or perform portions of the Work under Contract or order or the Contractor's duly authorized agents.

Wherever and whenever the term "Work" or "Works" is used in the Specifications or Contract, it shall be understood to include all supervision, materials, labor, transportation and equipment. Reference to the Contractor, "Work" or "Works" refers to everything agreed to be done and furnished by the Contractor.

The words, "as directed," "as required," "as permitted," "as allowed," or phrases of like effect or import, as used herein shall mean that the direction, requirement, permission or allowance of MLGW is intended, and similarly the words "approved," "reasonable," "suitable," "properly," "satisfactorily," or words of like effect and import, unless otherwise particularly specified herein shall mean approved, reasonable, suitable, proper or satisfactory in the judgment of MLGW.

Written notice shall be deemed to be duly served if delivered in person to the individual or to a member of the firm or an office of the corporation for whom it is intended or if delivered at or sent

by registered mail to the last business address known to the party who gives notice or if delivered to a MLGW field representative of the addressee.

## 2.   CONTRACT

The successful bidder will execute a formal contract covering the Work.

## 3.   DETAILS AND INSTRUCTIONS

Should it appear that the Work intended, or any of the matters relative thereto are not sufficiently detailed or explained in the Specifications, the Contractor shall apply to MLGW for such further explanations as may be necessary. The Contractor shall conform to the same as a part of this Contract, so far as they may be consistent with the original Specifications.  In the event of any doubt or question arising respecting the true meaning of the Specifications, the matter shall be submitted to MLGW whose decision shall be final and conclusive.

No oral admission or neglect on the part of MLGW will be taken as an excuse for Work performed in accordance with the Contract.

## 4.   WORK TO BE DONE

The Contractor shall furnish all supervision, labor, transportation, equipment and such material to trim and or remove all trees and brush, to trim trees using the most recent arboricultural techniques, and to perform other utility forestry services including chemical spraying, transmission right of way clearing and mowing, clean up and disposal of materials and to provide clearance for electric wires of MLGW.  In addition, this contract may include emergency storm work.

## 5.   CHARACTER OF WORKERS AND EQUIPMENT

Any person or persons employed by the Contractor or by any subcontractor, in the opinion of MLGW's authorized representative, who does not conduct themselves in a manner that adequately protects the Work and the MLGW's facilities, then MLGW has the right to request that such persons be removed from the worksite and from performing any other activities in furtherance of the Work.

Should the Contractor fail to remove such person or persons or fail to furnish suitable and sufficient machinery, equipment or workers necessary for the proper prosecution of the Work, the MLGW Representative may suspend the Work until there is compliance.  No item of equipment or machinery, after once being placed on the job site, shall be removed without the consent of the MLGW Representative. All workers must have sufficient skill and experience to perform properly the work assigned them.  All workers engaged on special work or skilled work in any trade, shall have had sufficient experience in such work to perform it properly and satisfactorily and proficiently operate the equipment involved.

## 6.  RESPONSIBILITIES OF CONTRACTOR

The Contractor shall furnish all equipment needed for the performance of this Contract and shall be solely answerable for the same and for the safe, proper and lawful construction and maintenance and use thereof.  The Contractor shall cover and protect the Work from damage. The Contractor shall make good all injury to the same, before the completion and acceptance of this Contract by MLGW.  The Contractor shall be solely answerable for all damages to MLGW, the City of Memphis, Tennessee or their property, to other contractors, or other employees of MLGW, to the neighboring premises or to any public, private or personal property, *to the proportionate extent* due to the improper, illegal or negligent conduct of the Contractor or their subcontractors, employees or agents while performing the Work covered by this Contract. Barriers shall be kept in place at all times to protect persons from accident, and the Contractor will be held responsible for all accidents to persons through any negligence of the Contractor or their employees, agents and subcontractors.  In the event of a chemical incident, meaning a toxic spill or release that occurs during the Contractor's performance of the Work, and which is determined by MLGW to be attributable to the Contractor or its subcontractors, employees or agents, the Contractor shall be responsible for all costs of environmental clean-up, correction, remediation, eradication, and other similar actions such as may be required by MLGW for safe operations generally, and such as may be specifically directed and/or required by federal, state and local authorities, laws and regulations.

In the event of an environmental incident, meaning a spill or release of hazardous substances that occurs during the Contractor's performance of the Work, and which is determined by MLGW to be attributable to the Contractor or its subcontractors, employees or agents, the Contractor shall be responsible for all costs of environmental clean-up, correction, remediation, eradication, and other similar actions such as may be required by MLGW for safe operations generally, and such as may be specifically directed and/or required by federal, state and local authorities, laws and regulations.

If at any time during the course and scope of the Project there shall be evidence of a claim for damage to Division properties or other properties owned by third parties for which the Division might be alleged liable and which is chargeable to the Contractor, then upon 30 days written notice by the Division Representative to the Contractor, the Division shall have the right to retain out of any payment then due or thereafter to become due, an amount sufficient for complete indemnification against the claim.  In the event the Division has already paid to the Contractor all sums due under this Contract or the balance remaining unpaid is insufficient to protect the

Intentionally Blank

GC 4

Division, the Contractor and the Contractor's surety shall be liable to the Division for any loss so sustained.

## 7.  RESPONSIBILITIES OF MLGW

MLGW, through its representative, will be responsible for the drawing and furnishing of sketches as described in the specifications.  MLGW will also be responsible for the inspection and verification of material installed and Work performed for payment of the Contractor's invoices.

## 8.  IDENTIFICATION OF WORKERS

MLGW shall provide the Contractor's supervisory personnel, foreman and above, with a personalized identification badge that displays that person's picture, title or position, and the company for which the person works.

The Contractor shall provide all other employees with a personalized identification badge that displays that person's title or position and the company for which that person works.  Each worker shall carry a badge at all times and display the same when requested by the public or a MLGW representative.

It shall be the responsibility of the Contractor to ensure its employees return all badges to MLGW upon the completion of the Work or the separation of employees.

## 9.  UNAUTHORIZED WORK STOPPAGE

If at any time, there is any unauthorized work stoppage due to the actions of the Contractor or the Contractor's subcontractors' employees, agents or subcontractors, then the Contract shall be subject to immediate cancellation by MLGW.

## 10.  CONTRACTOR'S OFFICE AND STORAGE SPACE

The Contractor shall furnish all office and shop space necessary for clerical and craft personnel to perform the required Work.  The Contractor shall furnish all necessary storage space required for the storage of various materials used in the performance of work under this contract and the storage space required for the Contractor's vehicles.
The office facility shall include communications equipment able to provide uninterrupted clear communications with each crew any place in Shelby County, Tennessee and with the offices of MLGW and with the MLGW Representative and Inspectors while in the field.

The office facility shall be a permanent building with walls, roof, flooring, insulation, lighting, HVAC and utilities approved by the appropriate city and/or county inspection departments.

The storage facility, located at or near the office facility, shall be enclosed by fence or building walls on all sides with a gate or door securely locked when the Contractor's employees are not present.  The storage area shall be lighted at night if not located inside a building.

## 11.  SAFETY REQUIREMENTS

The Contractor shall comply with all applicable safety regulations regulating the Work included in this Contract including but not limited to the Federal Occupational Health and Safety Act ("OSHA") and the Tennessee Occupational Health and Safety Act.  The Contractor shall also observe all applicable parts of MLGW's Safety Policies and make them known to its employees through regular training at the Contractor's expense.  Contractor shall insure all employees comply with Contractor's safety policies which shall meet or exceed MLGW Safety Policies.  All safety equipment required and used by the Contractor shall be provided and maintained by the Contractor at the Contractor's expense.  Prior to the start of Work, MLGW will require the Contractor's safety representative to attend a one day training session with the MLGW safety representative.

## 12.  EQUIPMENT

The Contractor's equipment shall be safe, efficient and adequate for Work and shall be kept in neat appearance and in good operating condition at all times.  All motor trucks provided by the Contractor shall bear a company number and shall be well marked and identified with the Company insignia, designating these vehicles as operated by the above Contractor.  Equipment age for start-up and future replacements shall be as stated or newer:

Bucket Truck  5 years
Split Dump    7 years
Chipper       7 years

## 13.  LICENSES AND PERMITS

The Contractor shall, at the Contractor's expense, obtain all licenses and permits for this installation that are required by laws, ordinances or codes of the City of Memphis, Shelby County, State of Tennessee and United States Government.  The Contractor shall furnish satisfactory proof to the MLGW Representative that such licenses and permits have been obtained.  The installation will not be considered complete until such license and permit documents are received by MLGW.

## 14.  CONTRACTOR OBLIGATION TO CHECK PLANS AND SCHEDULES

The Contractor shall check all dimensions and quantities shown on the specifications provided by the MLGW Representative, and shall notify the MLGW Representative of any discrepancy between the plans and conditions at the job site or any error or omission in plans, which the Contractor may discover in the course of the Work.  The Contractor shall not be allowed to take advantage of any error or omission in the plans or Contract Documents.  The MLGW Representative will furnish full instructions should such error or omission be discovered, and the Contractor shall carry out such instructions as if originally specified.  The decision of the MLGW Representative shall be final.

## 15.  WORK IN PROGRESS

Work shall begin in a timely manner and be continued through completion during normal working hours unless otherwise specified by the MLGW Representative.  The Contractor shall maintain and operate a workforce sufficient to meet the needs of this provision.

The Contractor shall provide the MLGW Representative each workday morning with a schedule of crews and work locations for that day and a report of the status of Work scheduled the previous workday.  Work dispatched to crews during the day shall be added to the work schedule of that crew for the current day with proper notation of job status at the end of the workday.

The MLGW Representative shall have the right to enter any facility of the Contractor used for the execution of this contract and any worksite where Work is ordered under this Contact.

## 16.  FINAL CLEAN-UP

Final clean-up shall be performed in accordance with the provisions of this Contract.  The Contractor shall be responsible for disposing of all debris at the appropriate city or county dumpsites.  The Contractor shall be responsible for all dumping fees.

Before final inspection, the Contractor shall perform such touching up, cleaning of surfaces and other Work as directed by the MLGW Representative.

## 17.  TESTING OF COMPLETED WORK

The MLGW Representative may test any or all of the Work before acceptance for payment. Failure to test the Work prior to payment does not void the Contractor warranty. Any Work failing to meet Standards and Specifications, or in their absence commonly accepted norms of operation shall be corrected within the time specified by the MLGW Representative.  Corrections shall be made at the expense of the Contractor except when caused by material issued by MLGW to the Contractor in a faulty condition, but at the Contractor's expense when damaged through Contractor negligence.

## 18.  ACCEPTANCE

Work completed by the Contractor shall be inspected by the MLGW Representative or Inspector and all required adjustments made to the satisfaction of the MLGW Representative or Inspector before acceptance by MLGW.

## 19.  PROTECTION OF WORK

From the commencement of the Work until the Work is completed and accepted by MLGW, the Contractor shall be solely responsible for the protection of the properties, sidewalks, driveways and existing utilities.  Materials issued to or purchased by the Contractor and intended to be used in the Work and all injury, damage or loss of the same, from whatever cause, shall be made good

at the Contractor's expense before final payment is made. All reasonable precautions shall be taken at all times to protect the materials intended for use in the Work in progress, and the completed Work from injury and damage from any cause. The methods used for this protection shall be subject to the approval of the MLGW Representative.

## 20.   CLAIMS FOR LABOR AND MATERIALS

The Contractor shall defend, indemnify and save harmless, MLGW and the City of Memphis from any and all claims, liens, demands, or actions, arising out of the services, labor and materials furnished by the Contractor or any subcontractors. The Contractor shall keep MLGW property free and clear of all liens, claims and encumbrances arising from the performance of the Work by the Contractor or the Contractor's subcontractor. The Contractor agrees to reimburse MLGW for all monies paid and expense incurred by MLGW in discharging such liens or in connection with any action or proceeding for removal or enforcement.

Before receiving final payment under the Contract for the Work, the Contractor shall certify and furnish proof satisfactory to MLGW that all materials, equipment, labor, and cost incurred thereon have been fully paid and discharged, and that there are no liens outstanding affecting the Work.

## 21.   CLAIMS FILED AGAINST THE CONTRACTOR

The Contractor, at its own expense, will conduct a thorough investigation of all claims filed by MLGW or a third party affecting or arising from the Work. MLGW shall have the right to bill the Contractor for any damages, costs and expenses concerning the claims. Upon receipt of such bill, the Contractor shall have 30 days from receipt of the bill to pay in full unless the Contractor's investigation reveals evidence that clearly negates the Contractor's responsibility and the Contractor or its insurance carrier disputes such bill. In such event, the Contractor or insurance carrier must provide to the MLGW Claims Department within 14 days from receipt of said bill a written statement in support of such dispute. Upon receipt of the statement, the Supervisor of Claims shall determine whether the Contractor's dispute is valid. If the Contractor's dispute is denied, the Contractor and/or its insurance carrier will be notified in writing and given 14 days to pay the claim in full.

## 22.   WORK HOURS

Workdays and hours shall be established in writing by the MLGW Representatives to meet current MLGW needs. Standard workweeks will consist of 40 hours made up of five (5) days of eight (8) hours each or of four (4) days of 10 hours each, subject to reduction due to inclement weather, lack of work or other cause. A standard four (4) day work week requires the Contractor to supply such crew(s) as requested by the MLGW Representative on the off fifth (5th) day to meet MLGW needs. Adjustments to the work week, day or hours by the MLGW Representative for reasons other than an emergency, weather conditions, or violations under the terms of this Contract shall be made in writing 24 hours in advance of the change.

No Work shall be done on MLGW holidays, without the written approval or permission of the MLGW Representative in each case, except such work as may be necessary for the proper care, maintenance, or protection of Work already done or in the case of an emergency.

## 23.   OVERTIME WORK

Overtime work that results in a greater charge to MLGW than would have been made if the work were performed at straight time, shall not be performed hereunder.  Overtime Work that does not result in any such greater charge to MLGW may be performed hereunder provided the MLGW Representative shall have authorized the same.

## 24.   UNEXPECTED INTERFERENCE

The Contractor shall be responsible for locating any existing facilities prior to trenching to avoid any interruption in service.  The locations of present underground facilities in the immediate vicinity of the underground construction paths have been determined from existing records and may be shown on the sketch.  The existence and location of underground structures or facilities have not been verified by excavation and therefore cannot be guaranteed by the MLGW Representative.

The Contractor is advised that a free utility location service is available upon 72 hour's notice by calling 1-800-351-1111.  The Contractor shall comply with the Tennessee Underground Utility Damage Prevention Act found at T.C.A. §§ 65-31-101 to 65-31-113.

Idle crew time is the responsibility of the Contractor and shall not be billed to MLGW as an item or otherwise.  Any delay or extra cost to the Contractor due to encountering surface or subsurface structures or utilities not shown, or in locations different from those indicated on the plans shall not constitute a claim for damages.

Where a conflict is encountered between the proposed Work and any existing subsurface appliance, improvement or structure, the conflict shall be reported immediately upon its discovery to the MLGW Representative, who shall make the decision as to the proper engineering solution of the conflict.

Insofar as practicable, shifting to one side or the other, and/or raising or lowering cable shall solve conflicts.  Where the solution of a conflict necessitates the removal, and/or relocation of a conflicting structure, the MLGW Representative will arrange to have the structure removed and/or relocated.

## 25.   WORK IN EASEMENTS AND RIGHTS-OF-WAY

MLGW will provide all permanent easements, rights-of-way, and other access necessary for the performance of this Contract.  MLGW shall also provide temporary construction easements and rights-of-way deemed necessary for Work performed under this Contract.

MLGW will use due diligence in acquiring the easements and rights-of-way access before construction work starts. However, should all or part of the easements or rights-of-way not be obtained before construction begins, the Contractor shall do no work in those easements or rights-of-way before permission is obtained. Copies of the easements shall be furnished to the Contractor, but the Contractor shall perform no excavations in the easements without the approval of the MLGW Representative. Should it be necessary or desirable for the Contractor to use, occupy or have access to property outside of the specified rights-of-way, the Contractor shall make arrangements with MLGW and the tenant of such property. The Contractor shall be solely responsible for any damages or claims resulting from the Contractor's operations. The Contractor shall repair or settle all such damage or claims to the full satisfaction of MLGW and the tenant of all property involved prior to final acceptance of the Work.

The Contractor shall restore all surfaces, structures, shrubs and fences within the easements and construction rights-of-way limits to a condition equal to or better than the original as soon as possible. The Contractor shall reseed all grass areas and resod all lawns that have been destroyed or damaged by the construction operations as soon as possible after the Work has been completed.

The Contractor shall be responsible for all damages to surfaces, structures, shrubs, trees, lawns, fences, crops and other property outside of the rights-of-way limits. The Contractors shall make satisfactory settlement for such damage directly with the property owner and tenant involved, as their interests in such damage may require.

## 26.   COORDINATION WITH OTHER CONTRACTORS AND DIVISION CREWS

The Contractor shall coordinate the Work in this Contract with the MLGW Representative to determine when to start and complete necessary portions. If there is a disagreement between the Contractor and any other Contractors or MLGW crews on the schedule of Work, the decision as to what should be done will be made by the MLGW Representative.

## 27.   UNFAVORABLE CONSTRUCTION CONDITIONS

During unfavorable weather, wet ground, or other unfavorable conditions for construction operations, the Contractor shall pursue only such portions of the Work, the satisfactory quality or efficiency of which will be unaffected by the conditions. The Contractor shall only perform the Work by special means or precautions approved by the MLGW Representative that guarantee the quality or efficiency of the Work.

## 28.   LEGAL ADDRESS OF CONTRACTOR

Both the business address of the Contractor given in the bid or proposal upon which this contract is founded and the Contractor's office at the site of the Work are hereby designated as the places to which all notices, letters and other communications to the Contractor may be mailed or delivered. The delivering at either of the above named addresses, or depositing in any mail box regularly maintained by the post office of any notice, letter or other communication to the Contractor shall be deemed sufficient service upon the Contractor. The date of the service shall be the date of such delivery or mailing. Such addresses may be changed at any time by an

instrument in writing executed by the Contractor and presented to MLGW. Nothing herein contained shall be deemed to preclude or render inoperative the service of any notice, letter or communication upon the Contractor personally.

## 29. SUPERINTENDENCE OF WORK

Each Contractor, either personally or by a duly authorized superintendent or other representative, shall provide and maintain continually on the site of the Work during its progress and until its completion, adequate and competent superintendence of all operations for and in connection with the Work being performed under this Contract. The superintendent or other representative of the Contractor on the Work, who has charge shall be fully authorized to act for the Contractor and to receive whatever orders as may be given for the proper prosecution of the Work. MLGW must approve the Contractor's General Superintendent on the project. The Contractor shall not remove or relocate an approved General Superintendent without the approval of MLGW.

## 30. MATERIALS AND SKILL

All materials furnished by the Contractor shall be subject to the approval of MLGW, whose decision thereon shall be final. It is the intent of these Specifications to describe definitely and fully the character of materials and skill required and to require first class materials and skill throughout. Should any unexpected features arise during the progress of the Work that are not fully covered herein, the Specifications shall be interpreted by MLGW to require first class materials and skill, and such interpretation shall be accepted by the Contractor.

When a material, equipment or system is specified or approved in an addendum, by name for one or more manufacturers, such material, equipment, or system shall become an essential element of the Contract. If the Contractor desires to use another material, equipment, or system in lieu thereof, the Contractor shall request approval in writing and shall submit samples and data as required for final judgment of the acceptability of the substitution. No substitution shall be made without authority in writing from MLGW.

By making requests for substitutions the Contractor:

1)    Represents that the Contractor has personally investigated the proposed substitute product and determined it is equal or superior in all respects to that specified;

2)    Represents that the Contractor will provide the same warranty for the substitute that the Contractor would have provided for that specified;

3)    Certifies that the cost data presented is complete and includes all related costs, and excludes MLGW's redesign cost, and waives all claims for additional costs related to the substitution which subsequently become apparent;

4)    Will coordinate the installation of the accepted substitute, making such changes as may be required for the Work to be complete in all respects.

The Contractor shall disclose the existence and extent of financial interests, whether direct or indirect, if the Contractor has any subcontractors and material suppliers, which the Contractor may propose for this project.

The Contractor shall employ only workers who are competent to perform the work assigned to them and, in the case of skilled labor, who are adequately trained and experienced in their respective trades and who do first class work.   Local labor shall be given preference when available.

## 31.   SCHEDULE OF OPERATIONS

Prior to beginning the Work, the Contractor shall submit for MLGW's approval a schedule of operations covering the Work to be done.

## 32.   BASIS OF PAYMENT

All costs in connection with the Work to be performed under the Contract and in accordance with the Drawings and Specifications shall be included in unit prices as outlined in the proposal. Payment for Work done will be made on the basis of unit prices.   In the event MLGW authorized changes in the Work shown on the Drawings or as specified, the cost for such authorized changes must be agreed upon in writing and signed by the Contractor and MLGW.

## 33.   PROJECT SIGNS

No advertising signs or other signs are to be placed on the job site without the approval of MLGW, except signs warning against trespassing.

**END**

# SPECIFICATIONS

SPEC 0

**CONTRACT NAME:  LINE CLEARANCE**

**CONTRACT NO. 12044**

**SPECIFICATIONS**

## 1. SCOPE OF WORK:

These specifications require the furnishing of all supervision, labor, transportation, materials, equipment, tools, and supplies as required to trim and/or remove all trees and brush, to trim trees in drop crotch and lateral cut trimming methods, to perform other utility forestry services, including chemical spraying, transmission right-of-way clearing and mowing, cleaning up and disposing of materials, and to provide clearance for the wires of MLGW, the location of which will be defined by Division work orders, within Memphis and Shelby County, Tennessee.  All work shall be done in accordance with MLGW line clearance policy.

If trees have two (2) sets of cuts, the Contractor shall clear to the cut that gives the most clearance.

Existing right-of-way shall be cleared to the same width as the previous clearing unless otherwise specified by MLGW.

On new construction, the right-of-way shall be cleared to the width stated on work orders furnished by MLGW.

Unless otherwise specified by MLGW, all cutting for existing and new right-of-way clearing shall be as close to the ground as the topography and type of soil will allow, with a maximum remaining height of four (4) inches for brush stubs and six (6) inches for tree stumps.  All cut tree stumps shall be sprayed with an approved herbicide.

Trees adjacent to a right-of-way that constitute a hazard to the wire shall be removed as directed by MLGW.

Brush and debris shall be handled in such a manner as to avoid obstructing roads, paths, or waterways.

Contractor shall exercise extreme care when cutting brush or trees that are close to or touching wires to prevent breaking or wrapping the wires together or otherwise interrupting service.  If any such trouble should result, MLGW shall be notified of the location of such trouble as quickly as possible.  Individual requests by property owners for special handling of brush shall be granted where reasonable.  If any doubt exists as to the action taken, the requests shall be referred to MLGW for instruction.

Where clearing includes the removal of trees, the logs and limbs shall be disposed of as designed by the permit, or if not designated, such logs and limbs shall be piled at the edge of the right-of-way in such a manner that they will not interfere with pedestrian or vehicular traffic.

Where clearing includes poisonous vegetation, necessary precautions shall be taken to eliminate the possibility of livestock being poisoned by eating brush and leaves.

Contractor shall promptly remove all equipment upon completion of the work at each location and shall dispose of all brush and debris in accordance with the laws and ordinances of Municipal, State, and Federal authorities and can be met by the Contractor to the satisfaction of MLGW. Said cleaning shall be done at the expense of the Contractor. Each block in a section shall be worked in an organized way (west to east or map blocks 1-28).

## 2.  UNIT PRICE:

MLGW's whole distribution system will be trimmed on a 3 year cycle. A goal of 1400 miles/year must be trimmed.

1)  **Feeder Cycle** - All three (3) phase Backbone Feeders will be on a three (3) year Trimming Cycle. The unit pricing will be paid by pole miles. The entire distribution electrical system will be divided into five (5) regions; each will have its own cost/mile and will be paid accordingly. Invoicing will be paid upon completion of Feeder Miles. Partial payments may be paid on certain Feeders depending on mileage. Feeder pole miles will be invoiced and paid separately from tap lines.

2)  **Tap Cycle** – All Fused Tap lines will be on a three (3) year cycle. They will be trimmed on a grid system, using our Section and Blocks. Each section is divided into 28 Blocks. Invoicing will be paid upon completion of the Block.

The contractor will be required to report weekly, by work request number each crew that worked, number of man hours worked, and an accurate production.

Tree removals above 12 inches in diameter must be approved by the MLGW representative. Removals above 12 inches in diameter will be trimmed as part of base bid and if approved to be removed, the tree will be removed using labor and equipment rates. (Tree will not be skipped because of being a possible removal.)

## 3.  LABOR AND EQUIPMENT RATE:

All work, other than cycle trimming, will be done by using Labor and Equipment rates. The other types of work are, but not limited to, ticket work, emergency work, sketches, hot spotting etc.

The contractor will turn in a time sheet for all crews working on these types of jobs weekly.

All work being done using labor and equipment rates shall be done using four (4) man manual and two (2) man bucket crews unless authorized by MLGW Representative. If work is not authorized by a MLGW's Representative, the Contractor will be responsible for any excess.

## 4. LABOR TO BE FURNISHED BY THE CONTRACTOR:

The Contractor shall furnish for the successful and satisfactory completion of the work specified herein labor under personnel classification of trimmers, utility workers/trimmer helpers, working foremen or crew leaders and general foremen.

The tree trimmers shall be classified in three separate groups namely A, B, and C. Tree Trimmer C shall be a novice or a beginning tree trimmer, Tree Trimmer B shall be intermediately skilled tree trimmer and Tree Trimmer A shall be a highly experienced and skilled tree trimmer. Such experience shall be stated by the Contractor and given approval as such by an authorized representative of MLGW.

All general foreman and working foremen or crew leaders must be able to communicate in English. Also they must have the ability to communicate and deal with customers.

Tree Trimmer A- Must have the ability to perform all phases of tree work without supervision and be able to supervise a crew in the absence of the Foreman.

  a. Meet the requirements of the Trimmer B.
  b. They must know emergency rescue procedures and how to operate all equipment in an emergency situation.
  c. Know major trees, shrubs, and poisonous plants in the area.
  d. Be able to read and understand operating orders and work orders.
  e. Be able to fill out daily and weekly time sheets.
  f. Know reporting procedures.
  g. Take command of crew when necessary.

Tree Trimmer B- Mush have the ability to top, trim, and remove all types of trees and be able to remove overhanging limbs from all types of electrical conductors.

  a. Meet the requirements of the Trimmer C.
  b. They will be required to operate tools and equipment used in line clearance operations, including:
      1) Speed saw, pole pruner, pole saw
      2) Gasoline-powered chain saw
      3) Hand tools

Tree Trimmer C- Must have the ability to perform all phases of tree trimming with supervision (including pulling overhanging limbs) and be able to tie all necessary tree trimming knots.

  a. Must meet requirements of Trimmer H.
  b. Must know the following methods:
      1) Directional Trimming.
      2) Drop Crotching.
      3) Side Clearing.
      4) Removal of Overhang Limbs.
      5) Felling and/or Topping of Danger Trees.

The utility worker/trimmer helpers shall serve in the capacity generally associated with assisting the tree trimmers in ground duties.

SPEC 3

<u>Trimmer Helper</u>- Must have the ability to perform <u>any</u> and <u>all</u> ground work duties as assigned.

    a. Know proper operation of tools and equipment.
    b. Know climbing knots.
    c. Handle ropes to lower limbs to the ground.
    d. Clean debris and brush from the work area.

The working Foremen or Crew leaders shall be an experienced foreman in right-of-way clearance. Such experience shall be stated by the Contractor and given approval as such by an authorized representative of MLGW. Said Foreman shall be responsible for the supervision of the crew as well as performing any of the work functions called for within this Contract, as needed.

<u>Working Foreman A</u>- Must have the ability to perform all phases of tree work without supervision and be able to supervise a crew.

    a. Meet requirement of Trimmer A.
    b. This includes removals, all methods of pruning used in line clearance;   i.e., side trimming removal of overhanging limbs.
    c. Instruct others in safety, climbing practices, efficiency in pruning,   removals, equipment operation and maintenance.
    d. They must know all city, state, and federal regulations pertaining to line clearance and right-of-way clearance.

The General Foreman shall be responsible for the work performed by the crews of Foreman A in the performance of this Contract.

It shall be the responsibility of the labor classifications stated above to drive and operate the equipment as requested and specified within the contract documents so directed by the Contractor or working foreman/crew leader.

The Contractor shall furnish bucket crews consisting of one Foreman, one Trimmer or one Utility Worker/Trimmer Helper; or Manual Crews consisting of one Working Foreman, two Trimmers and one Utility Worker/Trimmer Helper. At no time shall a bucket crew have less than two (2) workers and a manual crew have less than three (3) workers. The number, composition, and combination of crew will be at MLGW's discretion. MLGW will have the right to take appropriate action, up to and including default, if the Contractor does not meet the required level of crews.

The Contractor shall be responsible to satisfying minimum personnel level requirements for all his crews at all times. When it is determined by MLGW that personnel absences within a crew provided by the Contractor will prohibit the effectiveness of that crew in performing the work as specified and that the Contractor is unable to supply a replacement for that personnel classification(s) then MLGW will have the right to discontinue the work performed by that crew, without and expense to MLGW, for a period of time until such time that the personnel requirements can be satisfied by the Contractor to MLGW.

**5. <u>EQUIPMENT TO BE FURNISHED BY THE CONTRACTOR AND CREW TOOL INVENTORY</u>:**

The Contractor shall furnish to his crews the following equipment:

A. Two and one half (2-1/2) Ton Trim Lift Sixty Feet (65'), or MLGW approved equal, 10-12 Yard Dump and Tools.

1.  Equipment to be furnished
    Contractor shall furnish to his crew the following equipment:
    a. Bucket Crew
       1-Complete set climbing gear (hand saw-scabbard, rope, and saddle)
       2-Extra hand lines
       2-Power saws
       1-Complete pruners
       1-Leaf Rake
       1-Street Broom
       1-Hydraulic Pruner
       1-Hydraulic Pole Saw
       1-Communication Device/ cell phone

         All safety equipment:
         Hard hats, glasses, cones, signs (2), safety vests

B. Two (2) Ton Special Line Clearance Truck, 14 Yard, Split Dump and Tools.
C.
   a.    Manual Crew

     4– Complete set of climbing gear (see above)
     2- Extra Hand lines
     3. Power saws
     4-Complete pruners
     1-Leaf Rake
     1-Street Broom
     1-Communication Device/ cell phone

     All Safety equipment

     Hard Hats, glasses, cones, signs (2), safety vests

D. Twelve inch (12") Chipper (Trailer Unit)
E. Power Saws

The equipment as requested by MLGW is to be subject to change at the discretion of MLGW.

## 6. TREE TRIMMING:

All trimming, both initial and re-trimming, shall be done in accordance with the best recognized and approved principles of modern arboriculture and tree surgery, with balance emphasis on current tree health and clearance.

All branches of limbs shall be cut at branch collar so that no stub is left. When a limb is to be partially removed it shall, if possible, be cut back to a limb at least 1/3 the diameter of the portion removed.

Contractor shall use linemen's climbers ONLY in trees being removed.

The amount of clearance to be obtained shall be determined on the job after position occupied by the wires in reference to trees, the varied rate of growth of different trees, and the desires of the property owners have been given proper consideration.

The Contractor shall secure maximum clearance with good economy and with due regard to the rights and interests of homeowners, and public owned properties. When adequate clearance cannot be obtained because of property owner objections or other factors, Notify a Division Representative.

Effort shall be made wherever possible to eliminate all tree parts and growth points beneath the wires, and all weak, diseased and dead limbs above the wires which may fall or blow into them.

All hanging and severed limbs shall be removed from the trees. The branches, brush and debris resulting from the trimming shall be collected and disposed of in suitable disposal areas. The premises of the property owner shall be left as neat as they were before the work started.

Vines growing on poles and wires shall be removed and cut off at ground level, and chemical used on the same as agreed with property owner.

## 7. TREE REMOVAL:

(Refer to Policy Manual): A cut stump herbicide application will be used on all appropriate stumps to prevent sprouting. Contractor can use any approved herbicide. Dye must be added to herbicide

## 8. GENERAL:

Spare sharp chains shall be provided by Contractor in order to provide quantity for work rather than slow down work to sharpen chains on job site.

No manual crew will be allowed to operate less than three (3) workers unless authorized by a Division representative or Engineer.

A breakdown in equipment and loss of time shall be reported to Division Engineer.

On excessively rainy days and during extreme inclement weather work must be stopped unless emergency conditions arise. Time lost can be made up after scheduled work days and on Saturdays. This will be made up at the discretion of Memphis Light, Gas, and Water. This make-up time shall not be at overtime rate.

Lunch time will be taken as near as possible to the middle of the day and lunch will be eaten at the job site.

The fueling and maintenance of equipment shall be done before the scheduled work day begins or after the scheduled work day ends.

No one can be promoted to higher classification without Division's permission and must meet job classification.

No crew personnel or equipment shall be removed from Division's property without Division's permission.

The minimum dump bed required on all trucks shall be 14 yard capacity.

Route sheets shall be called in as directed by MLGW.

MLGW will assign all areas and sections to be worked. Contractor's General Foreman shall call MLGW before designated work day begins for any emergency work in his area and during the work day period.

MLGW will expect full cooperation on emergency work during the day, night, or weekend.

## 9. USE OF CHEMICALS AND SPRAYS:

Unless otherwise specified by MLGW, the Contractor shall mix and apply the chemicals in accordance with the recommendations of the manufacturer, and the following general specifications in his area and during the work day period.

(a)    For Foliage Application: This method shall be used only on brush over three (3) feet in average height during the active plant growth period, generally between May and September 30. Chemical mixture shall be applied to completely wet the entire leaf, stem, and trunk surface of each plant.

(b)    For Basal Application: This method shall be used on brush of any size at any season of the year. Chemical mixture shall be applied to completely wet the entire surface of the stem or trunk from the root-crown up the stem eighteen inches, with emphasis on completely wetting the root-crown.

(c)    For Stump Application: This method shall be used on all new stumps at any season of the year. Stumps shall be sprayed as soon as practical, but always on the same day that the cutting is performed. Chemical mixture shall be applied in sufficient volume to completely wet the sapwood, bark area, root-crown, and any exposed roots.

No spraying shall be done within thirty minutes after fog, dew, or rain sufficiently heavy to cause run-off unless authorized by a Division representative or Engineer. Area shall be re-sprayed at Division's expense where rain occurs within thirty minutes after spraying.

Contractors shall not be obligated to spray any portion of a line where in his opinion damages to crops, orchards, or ornamental plants may result from chemical drift.

MLGW will have the right to specify when and where chemical application and/or chemical spraying will be used in rural area or otherwise.

The Contractor shall use chemicals in a prudent manner and shall be responsible for the use of chemicals.

## 10. WOOD CHIP DISPOSAL:

All wood chips will be delivered during normal work hours to a MLGW designated disposal site.

## 11. D.O.T. REQUIREMENTS:

Contractors' drivers shall meet all State and Federal D.O.T. requirements.

## 12. TRAVEL TIME/TEMPORARY WORK STOPPAGE:

Time of travel to and from the job site shall not exceed 20 minutes each way per day, except that normal travel from one job site to another during the daily course of work shall be considered as working time and billed accordingly. Should MLGW request the crew to report at a MLGW location at the beginning or end of a work day, it is understood that the working time of the crew shall begin or end at said location.

In the event that work is stopped in excess of 30 minutes due to mechanical failure, the affected crew(s) shall be shifted to other crew(s) until the equipment is repaired to allow work continuation.

If an MLGW Representative calls for a shut down because of weather and crews are already on the job site, the Contractor will be allowed 30 minutes to contact crews and shut them down. Time will stop at that time and not at the arrival time at home base.

Contractor may be allowed to work additional hours during the week and on Saturday to make up for lost time due to weather. Saturday work must be a minimum of four (4) hours. Lost time can only be made up with the approval of an MLGW Representative.

## 13. PERMISSION TO PROCEED:

Contractor shall obtain and be responsible for securing the necessary consent or permission of the proper public authorities and/or property owners or their authorized agents before trimming, removing or spraying any trees or brush, where mowing is involved, or performing any other work, unless such consent has been obtained by MLGW and furnished to the Contractor in writing. Should permission be refused, the Contractor shall exert all reasonable effort to overcome and, at the same time, retain the good public relations of MLGW, which shall be given the highest preference at all times. If permission is still refused, the report shall be submitted to MLGW showing the name and address of

the property owner and the amount of work needed to provide adequate clearance. Contractor shall not obligate MLGW for any payment to another party for trimming, removing, or spraying any trees or brush where payment is requested, or required, or expected and no work shall be done on such trees or brush without the written approval of MLGW. Complaints received from property owners or others shall be promptly reported by the Contractor to MLGW, together with a report of the actions taken by the Contractor to settle such complaint. Contractor agrees to save harmless and identify MLGW from and against the payment of any and all sums of money by failure of the Contractor to secure permission before performing any work.

### 14. STANDBY TIME:

The MLGW Representative shall instruct the Contractor when to hold over work crews during any emergency situation. Time and one-half will be paid for labor if standby occurs after the normal work day.

Contractor shall observe all MLGW holidays. Contractor is not permitted to work on these days unless so directed by MLGW. Contractor shall not be paid for these days unless work is allowed by MLGW.

In addition, MLGW shall pay only for one (1) hour if Contractor decides not to go to work, but if Contractor does decide to go to work after one (1) hour, MLGW will not pay for the standby time.

### 15. PROTECTION OF THE PROPERTIES OF EXISTING UTILITIES

The Work covered in this Contract is, in general, in close proximity to the overhead and underground circuits, leads, cables, conduits and other structures of the existing properties, works and structures of the existing power and light distribution system, telephone, telegraph, and other signal systems, gas, water, sewer, and other overhead and underground lines of every kind and character. The Contractor shall be solely responsible for all damages to the properties incurred during the performance of Work or any work related event. The Contractor shall at his own expense make restitution for the damages to the satisfaction of the owner.

### 16. PROTECTION OF SIDEWALKS AND DRIVEWAYS:

The Contractor shall be solely responsible for all damages to sidewalks and driveways incurred during the performance of Work or any Work related event. The Contractor shall, at his own expense, make restitution for the damages to the satisfaction of the Owner and MLGW.

### 17. BARRICADES AND TRAFFIC SAFETY:

The Contractor shall at all times be aware of any traffic problems. The Contractor shall post such barricades as necessary to insure the safety of both motorist and pedestrians. During working hours when machinery may interfere with the flow of traffic, it shall be the responsibility of the Contractor to provide necessary flagmen and warning devices to warn motorists. At night clearly visible markers shall be placed around all Work. If in the opinion of the MLGW Representative, such precautions have not been taken, the Contractor shall be required to immediately enforce them. As a safety precaution for the traveling public, the Contractor shall be required to post suitable "slow", "construction", and "truck crossing" warning signs along the construction route wherever construction is in progress or the Contractor's trucks are crossing or entering the highway. If any police/sherrif flagging are required, this will be billed at cost + 10%.

SPEC 9

## 18.  WORK IN MAIN THOUROUGH ARES:

The Contractor shall take such precautions as necessary to unsure an even and uninterrupted flow of traffic along main traffic arteries.  Traffic control shall meet all applicable federal, state and local laws and regulations and the requirements of MLGW including, when required, lane control signs, barricades, traffic cones and flagmen plus any other traffic control and safety device deemed necessary to protect the public, workforce and Work.

## 19.  ADDITIONAL CREWS REQUESTED

All reasonable and appropriate expenses incurred by the contractor when requested by MLGW to import a work force for any limited purpose shall be negotiated in good faith by MLGW and the Contractor in advance. Submit emergency storm crew rates with contract bid.


END


SPEC 10