# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

---

MEMPHIS LIGHT, GAS AND WATER
DIVISION
                    Plaintiff,

                                                    Case No. 2:24-cv-02383-SHL-tmp

    v.

ASPLUNDH TREE EXPERT, LLC,
           Defendant.

---

## ANSWER TO COMPLAINT FOR BREACH OF
## CONTRACT AND MISREPRESENTATIONS

---

COMES NOW the Defendant, Asplundh Tree Expert, LLC (hereinafter "Asplundh" or "Defendant"), by and through undersigned counsel, and files this Answer to the Complaint for Breach of Contract and Misrepresentations filed by the Plaintiff, Memphis Light, Gas & Water Division (hereinafter "MLGW" or "Plaintiff").

For its response to the numbered allegations of the Complaint, Defendant states as follows:

### PARTIES, JURISDICTION, AND VENUE

1.        Admitted, on information and belief.

2.        Admitted.

3.        As to the first sentence of this paragraph, Defendant admits that it was party to a Contract for Line Clearance, contract number 12077, effective August 30, 2019, that the services to be provided had an estimated value up to the stated amount, and that such contract was terminated by Plaintiff on July 13, 2023, purportedly for cause.  Defendant denies that Plaintiff had cause to terminate the contract or that its termination was proper.  As to the second and third

sentences of this paragraph, Defendant admits that Plaintiff has filed as Exhibit A to its Complaint documents that include Defendant's bid, the contract, and related general conditions and specifications, but denies any remaining allegations or characterizations set forth in this paragraph.

4.    Admitted.

5.    Admitted.

6.    Admitted.

## FACTS

7.    Admitted, on information and belief.

8.    Defendant lacks sufficient knowledge or information to admit or deny the allegations and characterizations set forth in this paragraph.

9.    Defendant admits that utilities around the country maintain vegetation management programs for the purposes described in this paragraph, and that regular trimming is an important aspect of such programs.  Defendant lacks sufficient knowledge or information to admit or deny any other allegations or characterizations in this paragraph.

10.    Defendant admits that MLGW largely outsources its vegetation management work, but lacks sufficient information to admit or deny any other allegations or characterizations in this paragraph.

### Asplundh's Misrepresentations

11.    Because this paragraph appears to state MLGW's general practices without regard to any particular time period or the circumstances of the particular contract at issue herein, Defendant lacks sufficient knowledge or information to admit or deny these allegations and characterizations.

2

12.     Defendant admits the allegations of the first sentence of this paragraph.  As to the second and third sentences of this paragraph, Defendant admits that the request for bids sought a contractor to perform preventative maintenance trimming for a period of five years, but lacks sufficient knowledge or information to admit or deny the remaining allegations and characterizations as to MLGW's intentions or goals.

13.     Denied.

14.     Admitted.

15.     Admitted.

16.     Admitted.

17.     Defendant admits that a section of the bid documents at page BB-1 required every applicant to declare, among other things, that it had "carefully examined" MLGW's bid request and proposed forms.  Defendant further states that the language of the contract speaks for itself and is the best evidence thereof, rather than Plaintiff's selective paraphrasing or characterizations of its provisions.

18.     Defendant admits that a section of the bid documents at page BB-1 required every applicant to declare, among other things, that it had "made such investigations as are necessary to inform the bidder in all matters affecting the performance of the contract bid upon."  Defendant further states that the language of the bid document speaks for itself and is the best evidence thereof, rather than Plaintiff's selective paraphrasing or characterizations of its provisions.

19.     Defendant admits that a provision of the contract at page C-4 contains the language quoted by MLGW in this paragraph of the Complaint, but would state that its understanding of "the facilities, difficulties and restrictions attending and execution of the work required" was limited to the information MLGW chose to disclose and MLGW's own representations as to how

it would administer the contract. Defendant further states that the language of the contract speaks for itself and is the best evidence thereof, rather than Plaintiff's selective paraphrasing or characterizations of its provisions.

20.    Defendant admits that a section of the bid documents at page BB-1 required every applicant to declare, among other things, that it would enter into a contract and perform in a "good and skillful manner" and "according to the bid price on the Bidding Blank page." Defendant further states that the language of the bid document speaks for itself and is the best evidence thereof, rather than Plaintiff's selective paraphrasing or characterizations of its provisions.

21.    Defendant admits that it sent a letter to MLGW concerning staffing dated March 19, 2019, which acknowledged "goals" as to performance and the ramping up of necessary personnel. Defendant further states that the language of the letter speaks for itself and is the best evidence thereof, rather than Plaintiff's selective paraphrasing or characterizations thereof.

22.    Defendant admits that it was awarded the contract by MLGW, but lacks sufficient knowledge or information to admit or deny the remaining allegations of this paragraph.

23.    Defendant admits that the Line Clearance Contract was entered into by the parties on or about August 30, 2019. As to any remaining allegations of this paragraph, Defendant states that the language of the contract speaks for itself and is the best evidence thereof, rather than Plaintiff's selective paraphrasing or characterizations of its provisions.

24.    Defendant admits that MLGW has accurately quoted a portion of Article III of the contract in this paragraph.

25.    Denied as stated. The section of the Specifications referenced in this paragraph of the Complaint actually provides "MLGW's whole distribution systems will be trimmed on a 3-year cycle. A goal of 1400 miles/year must be trimmed." Defendant further states that the language

of the contract speaks for itself and is the best evidence thereof, rather than Plaintiff's selective paraphrasing or characterizations of its provisions.

26.    Defendant denies the first sentence of this paragraph, and admits the general statement contained in the second sentence.

27.    Denied as stated.  The section of the Specifications referenced in this paragraph of the Complaint actually provides "MLGW's whole distribution systems will be trimmed on a 3-year cycle. A goal of 1400 miles/year must be trimmed," and the bid documents referenced do not express any mileage estimates as an obligation or requirement.  Moreover, the language of the specifications and bid documents speak for themselves, rather than Plaintiff's selective paraphrasing or characterizations thereof.

28.    Defendant admits that the contract provided MLGW the right to control and assign the sequence and timing of work, but denies that MLGW exercised such right competently, efficiently, professionally, and/or consistent with the duty of good faith and fair dealing implied in all contracts.  Defendant further states that the language of the contract, general conditions and specifications speak for themselves, rather than Plaintiff's selective paraphrasing or characterizations thereof.

29.    Defendant lacks sufficient knowledge or information to admit or deny this paragraph in that the section of the contract that is referenced does not refer to any "design." Defendant further states that the language of the contract speaks for itself and is the best evidence thereof, rather than Plaintiff's selective paraphrasing or characterizations of its provisions.

30.    Defendant admits that MLGW has accurately quoted portions of Article III and Article XXIV of the contract in this paragraph.  Defendant further states that the language of the

contract speaks for itself and is the best evidence thereof, rather than Plaintiff's selective paraphrasing or characterizations of its provisions.

31.     Defendant admits that MLGW has accurately quoted portions of Article III and Article XXVI of the contract in this paragraph.  Defendant further states that the language of the contract speaks for itself and is the best evidence thereof, rather than Plaintiff's selective paraphrasing or characterizations of its provisions.

32.     Defendant admits that payment for the portion of the work that MLGW refers to as "cycle trimming" was based on the miles actually trimmed, and that such pricing varied based on the factors or variables set forth herein. Defendant further states that the language of the bid document speaks for itself and is the best evidence thereof, including as to the amount of Defendant's bid and the estimates Defendant provided.  Defendant denies any allegation set forth in this paragraph that is inconsistent with the actual language of the contract and/or any exhibits thereto.

33.     Defendant admits that its bid was up to the amounts stated in this paragraph of the Complaint, and that a portion of that amount was for what MLGW refers to in the Complaint as "cycle trimming."  Defendant further states that the language of the bid document speaks for itself and is the best evidence thereof, including as to the amount of Defendant's bid and the estimates Defendant provided.

34.     Defendant denies the first sentence of this paragraph.  As to the second sentence, Defendant admits that such information was "material," but denies that this constituted all material information relating to performance or administration of the contract.

**Asplundh's Failure to Perform its Obligations and its Additional Misrepresentations**

35.     Admitted.

6

36.     Defendant denies the allegations of the first sentence of this paragraph and further states that MLGW did not inform Defendant that it considered its performance "deficient" and in breach of the contract until at least three years into its term.  As to the second sentence, Defendant admits, for the reasons explained in this Answer, that the total miles trimmed decreased each year after 2020.

37.     Defendant admits the allegations of the first and second sentences of this paragraph, and denies the allegations of the third sentence.

38.     Admitted.

39.     Defendant denies the allegations of the first sentence of this paragraph.  Defendant admits, generally speaking, that failure to regularly trim sections with older, mature trees may result in increased risk of "tree-related outages" but avers, for the reasons explained in this Answer, that MLGW's own failure to administer the contract competently, professionally, efficiently, and/or consistent with the duty of good faith and fair dealing implied in all contracts, together with external factors, were the cause of any delays in any tree trimming schedule.

40.     Defendant lacks sufficient knowledge or information to admit or deny the allegations of this paragraph.

41.     Defendant lacks sufficient knowledge or information to admit or deny the allegations of the first sentence of this paragraph.  Defendant denies the second sentence of this paragraph as stated, as the reliability of MLGW's electric distribution system and outages experienced by customers depends on a number of factors beyond simply whether trimming of an "entire block" is completed at one time.

42.     Denied.  Defendant specifically denies that any failure to perform in a "timely manner" or to "make sufficient progress on the assigned sections," was attributable to it, and avers

instead that MLGW's own failure to administer the contract competently, professionally, efficiently, and/or consistent with the duty of good faith and fair dealing implied in all contracts, along with external factors, were the cause of any delays.

43.     Denied.  Defendant specifically avers that it made every reasonable effort under the circumstances to hire, train and maintain a sufficient workforce.

44.     Defendant admits, for the reasons explained in this Answer, that the average number of personnel decreased each year after 2020, but denies the remaining allegations or characterizations of this paragraph.

45.     Denied.

46.     Denied.

47.     Denied.

48.     Defendant admits the allegations of the first sentence and denies the allegations of the second sentence of this paragraph.

49.     Denied.

50.     Denied.   Defendant assigned crews and performed work in compliance with MLGW's instructions and based on availability of personnel to perform manual or "rear lot" work, notwithstanding MLGW's failure to administer the contract competently, professionally, efficiently, and/or consistent with the duty of good faith and fair dealing implied in all contracts. At all times, Defendant sought to use its mechanical resources efficiently and effectively and "allowed" its crews to trim as many miles as possible, irrespective of whether such trimming was on front lines or rear lines.

51.     Denied.

52.     Denied.

53.    Defendant lacks sufficient knowledge or information to admit or deny the allegations of this paragraph, as it does not specify what "other representations" are being referred to.

54.    Asplundh admits that both parties, Asplundh and MLGW, discussed the use of additional equipment not included in Asplundh's original bid for the purpose of promoting efficiency and maximizing production.  Asplundh further admits that some of those discussions were memorialized in a letter from Asplundh to MLGW dated August 18, 2020, and that MLGW approved the use of this equipment.  Asplundh denies any remaining allegations or characterizations, if any, set forth in this paragraph.

55.    Asplundh admits that both parties, Asplundh and MLGW, discussed labor shortages in Memphis due to circumstances beyond either party's control, as a result of which MLGW approved the payment of a per diem rate to assist with bringing in trimming crews from outside Memphis.  Some of these discussions were memorialized in letters from Asplundh to MLGW dated February 21, 2021 and April 22, 2021.  Asplundh avers that those letters speak for themselves.  Asplundh denies any remaining allegations or characterizations, if any, set forth in this paragraph.

56.    Denied.

57.    Denied.

58.    Denied.

59.    Defendant admits that it was assigned section 86 sometime in the latter part of 2022, but denies that any failure to complete that section was attributable to any breach of contract or other failure by Defendant.

60.    Denied.

61.    Denied.

62.    Defendant admits, for the reasons explained in this Answer, that the average number of miles trimmed declined each year after 2020, but denies that it failed to satisfy any requirement of the contract or that it is liable to MLGW for breach of contract or on any other theory of recovery.  Defendant specifically avers that any such "decline" in progress was attributable, in whole or part, to MLGW's own failure to administer the contract competently, professionally, efficiently, and/or consistent with the duty of good faith and fair dealing implied in all contracts.

63.    Defendant admits the approximate number of miles specified in this paragraph, but denies any and remaining allegations and characterizations.  Defendant avers that MLGW's own failure to administer the contract competently, professionally, efficiently, and/or consistent with the duty of good faith and fair dealing implied in all contracts, along with external factors and conditions, greatly affected the number of miles that Defendant was able to trim.

64.    Denied.

### Termination of the Contract

65.    Defendant admits that the contract allows MLGW to terminate for reasons set forth in Article V.  Defendant further states that the language of the contract speaks for itself and is the best evidence thereof, rather than Plaintiff's selective paraphrasing or characterizations of its provisions.

66.    Defendant admits that MLGW has accurately quoted a portion of Article XVII of the contract in this paragraph.  Defendant further states that the language of the contract speaks for itself and is the best evidence thereof, rather than Plaintiff's selective paraphrasing or characterizations of its provisions.

67.     Defendant admits that MLGW communicated with it regarding alleged breaches of the contract; Defendant responded to each such communication from MLGW and outlined in detail how MLGW's own failure to administer the contract competently, professionally, efficiently and/or consistent with the duty of good faith and fair dealing implied in all contracts caused the delays or other failures MLGW was complaining about.

68.     Defendant denies it breached the contract and therefore denies the allegations of this paragraph.

69.     Admitted.

70.     Denied.

71.     Denied.

72.     Denied.  Defendant further states that any decrease in "electrical service reliability" is the result of MLGW's own actions, inactions, and failures.

73.     Denied as stated.  Defendant further states that the language of the contract speaks for itself and is the best evidence thereof, rather than Plaintiff's selective paraphrasing or characterizations of its provisions.

74.     Defendant admits that Article V allows MLGW, in certain defined circumstances, to hire other contractors, but denies that MLGW had grounds to do so here.  Defendant further states that the language of the contract speaks for itself and is the best evidence thereof, rather than Plaintiff's selective paraphrasing or characterizations of its provisions.

75.     Defendant admits that, in August of 2023, MLGW hired three other contractors to perform work that it had previously contracted with Asplundh to perform.  Defendant denies all other allegations or characterizations set forth in this paragraph.

76.     Defendant admits, on information and belief, that MLGW has divided the work it contracted with Asplundh to perform among three other contractors working simultaneously in three separate areas of MLGW's system.  Defendant lacks sufficient knowledge or information to admit or deny any remaining allegations or characterizations set forth in this paragraph.

77.     Defendant lacks sufficient knowledge or information to admit or deny any remaining allegations or characterizations set forth in the first two sentences of this paragraph. Defendant denies the third sentence of this paragraph.

**Damages Caused by Asplundh**

78.     Denied.

79.     Defendant admits its bid totaled up to just over $97 million, but lacks sufficient knowledge or information to admit or deny the allegations of this paragraph as to the three vendors working in different geographic areas of MLGW's system that MLGW hired when it terminated the contract with Defendant.

80.     Defendant denies that MLGW has or will incur any "loss" as a result of any breach of contract, act, error, omission or misrepresentation by Defendant, but otherwise lacks sufficient knowledge or information to admit or deny the allegations of this paragraph as to the pricing accepted by MLGW from the three vendors working in different geographic areas of MLGW's system that MLGW hired when it terminated the contract with Defendant.

81.     Denied.

82.     Denied.

83.     Denied.

84.     Denied.

85.     Defendant admits, on information and belief, that MLGW is supposed to conduct line inspections and issue work orders for remedial trimming in the ordinary course of its

vegetation management program.  Defendant lacks knowledge or information sufficient to admit or deny MLGW's actual practices or compliance with its own program in this regard.

86.    Denied.

87.    Denied.

88.    Denied.

89.    Denied.

90.    Denied.

91.    Defendant admits that it has not made any payment to MLGW, but denies the remaining allegations of this paragraph.  Defendant expressly denies that it owes MLGW any payment under the contract or otherwise.

## CAUSES OF ACTION

### Count One – Breach of Contract

92.    Defendant incorporates by reference its responses to each of the numbered paragraphs above as if fully restated herein.

93.    Admitted.

94.    Denied.

95.    Denied.

96.    Denied as stated.  Defendant avers that the language of the contract speaks for itself and is the best evidence thereof, rather than Plaintiff's selective paraphrasing or characterizations of its provisions and/or its legal conclusions as to any duties or obligations arising therefrom.

97.    Denied.

98.    Denied.

99.    Denied.

100.    Denied.

101.    Denied.

102.    Defendant admits that the contract requires the payment of certain expenses and financial losses to MLGW on certain conditions, but denies that MLGW is entitled to any such payment here.  Defendant further states that the language of the contract speaks for itself and is the best evidence thereof, rather than Plaintiff's selective paraphrasing or characterizations of its provisions.

103.    Defendant admits that it has not made any payment to MLGW, but denies the remaining allegations of this paragraph, including any allegation that Defendant owes any amount to MLGW. Defendant further states that the language of the contract speaks for itself and is the best evidence thereof, rather than Plaintiff's selective paraphrasing or characterizations of its provisions.

104.    Denied.

105.    Denied.

106.    Denied.

107.    Denied.

108.    Denied.

109.    Denied.

**Count Two – Negligent Misrepresentation**

110.    Defendant incorporates by reference its responses to each of the numbered paragraphs above as if fully restated herein.

111.    Admitted.

112.    Denied.

113.    Denied.

114.    Defendant admits that it had a pecuniary interest in the contract, but denies that it failed to exercise reasonable care or made any negligent misrepresentations as alleged in Count II of the Complaint.

115.    Denied.    Defendant expressly denies that it provided any "faulty or false information."

116.    Denied.

### Count Three – Intentional Misrepresentation / Fraudulent Inducement

117.    Defendant incorporates by reference its responses to each of the numbered paragraphs above as if fully restated herein.

118.    Denied.

119.    Denied.

120.    Denied.

121.    Denied.

122.    Denied.

123.    Denied.

124.    Denied.

### Count Four – Promissory Fraud / Fraudulent Inducement

125.    Defendant incorporates by reference its responses to each of the numbered paragraphs above as if fully restated herein.

126.    Denied.

127.    Denied.

128.    Denied.

129.    Denied.

130.    Denied.

## Count Five – Constructive Fraud

131.    Defendant incorporates by reference its responses to each of the numbered paragraphs above as if fully restated herein.

132.    Defendant lacks sufficient knowledge or information to admit or deny the allegations of this paragraph.

133.    Defendant admits that it had duties or obligations under the contract to provide the specified services to MLGW, and that MLGW likewise owed a duty to Defendant to perform as promised.  Defendant denies that it breached any such duties or obligations owed to MLGW.

134.    Denied.

135.    Denied.

136.    Defendant denies that it has committed any act that is detrimental to the public interest, but admits the allegations of this paragraph as they relate to utilities constituting an essential service to individuals and businesses in MLGW's service area.

137.    Denied.

## PRAYER FOR RELIEF

Defendant denies that it is liable to MLGW on any Count or theory of recovery alleged in the Complaint, and/or that MLGW is entitled to any of the damages prayed for herein.

Any numbered allegation of the Complaint that has not been admitted, denied, or explained is hereby denied as if set forth with particularity.

## II.    AFFIRMATIVE AND OTHER SPECIALLY STATED DEFENSES

### FIRST DEFENSE

The Complaint fails to state a claim, in whole or in part, upon which relief may be granted and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

16

**SECOND DEFENSE**

MLGW's claims in tort fail to state a claim for which relief may be granted to the extent they seek recovery for misrepresentations or fraud alleged in connection with the actual performance of the contract.

**THIRD DEFENSE**

MLGW's claims in tort fail to state a claim upon which relief may be granted because MLGW's cause of action, if any, sounds solely in contract. Without admitting that MLGW is entitled to any recovery whatsoever, MLGW cannot obtain tort remedies for a breach of contract.

**FOURTH DEFENSE**

The contract does not set forth specific obligations as to miles that must be trimmed and/or is unenforceably ambiguous as to such obligations.

**FIFTH DEFENSE**

The use of ambiguous and/or precatory language in the contract does not create specifically-enforceable obligations upon Asplundh.

**SIXTH DEFENSE**

Without admitting that MLGW is entitled to any recovery whatsoever, Asplundh avers that MLGW may not obtain recovery on both claims for breach of contract and claims for misrepresentation or fraudulent inducement under the doctrine of election of remedies, the primary purpose of which is to prevent an impermissible double recovery for an alleged single wrong.

**SEVENTH DEFENSE**

MLGW materially breached the contract with Asplundh by failing to administer the contract competently, professionally, efficiently, and/or consistent with the duty of good faith and fair dealing implied in all contracts.  Such prior material breaches defeated the object of the

17

contract and, as a result, Asplundh received substantially less than it bargained for and rightly expected to receive. MLGW is therefore barred or estopped from asserting any subsequent breach of contract by Asplundh.

## EIGHTH DEFENSE

Without admitting that MLGW is entitled to any recovery whatsoever, Asplundh avers that MLGW failed to mitigate some or all of its alleged injuries and/or damages, and its recovery, if any, must be reduced and/or barred accordingly. Millions of dollars set aside for tree-trimming services under the contract by MLGW were not spent, whether on services provided by Asplundh or by other vendors. MLGW may not recover for losses it could have prevented or mitigated.

## NINTH DEFENSE

Without admitting that MLGW is entitled to any recovery whatsoever, Asplundh relies upon the defense of supervening impracticability and/or impossibility. Any alleged failure by Asplundh to perform under the Contract was due to unforeseen circumstances outside Asplundh's reasonable control, including, without limitation, drastic changes in labor conditions and availability, including national shortages in the labor market for the skilled workers necessary to provide comprehensive vegetation management services; the withdrawal of Defendant's initial minority-owned subcontractor due to labor and financial concerns; substantial safety and security problems experienced by crews engaged and/or employed by Defendant; local conditions in the service area and market that thwarted Defendant's ability to recruit crews from other areas of the country; MLGW's award of a contract to a competing vendor on a time and materials basis that undermined Defendant's ability to hire and maintain personnel; and MLGW's own failure to administer the contract competently, professionally, efficiently and/or consistent with the duty of good faith and fair dealing implied in all contracts. These unforeseen circumstances are not among the probable contingencies which a business of ordinary prudence should have foreseen and

provided for.  The non-occurrence of these unforeseen circumstances was a basic assumption on which the contract was made.

## TENTH DEFENSE

Without admitting that MLGW is entitled to any recovery whatsoever, Asplundh avers that MLGW was guilty of bad faith and/or breach of the duty of good faith and fair dealing implied in all contracts by, without limitation, failing to competently, professionally, and efficiently administer the contract, which either bars or reduces any claim for damages.

## ELEVENTH DEFENSE

Without admitting that MLGW is entitled to any recovery whatsoever, Asplundh avers that MLGW's claims are barred under the doctrines of laches, estoppel, unclean hands, acquiescence, and waiver.

## TWELFTH DEFENSE

Without admitting that MLGW is entitled to any recovery whatsoever, including punitive damages, Asplundh invokes and relies upon the procedural safeguards set forth in Tenn. Code Ann. § 29-39-104, including, without limitation, that (a) punitive damages may only be awarded if MLGW proves by clear and convincing evidence that Asplundh acted maliciously, intentionally, fraudulently, or recklessly; (b) the trial must be bifurcated; (c) the relevant statutory factors that may be considered by a jury; and (d) the requirement that the jury be instructed that the primary purpose of punitive damages is to punish the wrongdoer and deter similar misconduct in the future by the defendant and others while the purpose of compensatory damages is to make the plaintiff whole.

## THIRTEENTH DEFENSE

Without admitting that MLGW is entitled to any recovery whatsoever, including punitive damages, Asplundh specifically incorporates by reference any and all constitutional standards and/or limitations regarding the determination and enforceability of punitive damage awards under the decision of the United States Supreme Court in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), and its progeny.

## FOURTEENTH DEFENSE

Asplundh specifically reserves all defenses in law or equity including, without limitation, those defenses under Rules 8 and 12 of the Federal Rules of Civil Procedure, that may become available or known to Asplundh in the course of discovery.

## FIFTEENTH DEFENSE

Asplundh hereby gives notice to MLGW as stated in this answer that it lacks sufficient knowledge or information upon which to form a belief as to the truth of certain allegations contained in the Complaint. Until Asplundh has availed itself of the right of discovery, it cannot be determined whether or not all of the defenses set forth herein will be asserted at trial. Asplundh asserts these defenses in order to preserve its right to assert such defenses at trial, to give to MLGW notice of its intention to assert these defenses, and to avoid any waiver thereof. Asplundh may rely upon such other defenses as may become available or apparent during the course of discovery or further proceedings, and reserves the right to amend this answer to assert such defenses.

### III.    COUNTERCLAIM

Having fully responded to the allegations of the Complaint, Asplundh counterclaims and sues MLGW:

### Jurisdiction and Venue

1.     This Court has original and subject matter jurisdiction pursuant to Fed. R. Civ. P. 13, 28 U.S.C. § 1332 and 28 U.S.C. § 1367(a) because MLGW has pled a federal claim based on diversity of citizenship, and Asplundh's claims arise out of the same operative facts and constitute one case and controversy.

2.     Venue is proper because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and/or because MLGW is subject to personal jurisdiction in this district with respect to this action. 28 U.S.C. § 1391(b)(2), (b)(3).

### The Parties

3.     MLGW, a Division of the City of Memphis, is a municipally-owned public utility which maintains its principal place of business at 220 South Main Street, Memphis, Tennessee 38103

4.     Asplundh Tree Expert, LLC is a limited liability company organized under the laws of Pennsylvania and maintains its principal place of business at 708 Blair Mill Road, Willow Grove, Pennsylvania 19090.

### Facts

5.     On August 30, 2019, MLGW and Asplundh entered into a five-year Line Clearance Contract (the "Contract") pursuant to which Asplundh provided vegetation management services to MLGW, which services were defined in the contract as "Work." (Contract, Art. III at C-4)

21

6.      Pursuant to the terms of the Contract, MLGW assigned Work to be performed by Asplundh.

7.      MLGW terminated the Contract with Asplundh on July 13, 2023, while Asplundh was providing ongoing vegetation management services pursuant to the Contract.

8.      Such termination was without proper cause or grounds.

9.      Asplundh had performed Work assigned by MLGW at the time of termination for which MLGW had not paid Asplundh.

10.     Specifically, MLGW owed for services rendered as specified on Invoice Nos. 71L25523, 71L25623, 71L25723, 71L25823, and 71L25923, as follows:

| Customer Name | Invoice No | Invoice Date | Amount Due | PO Ref |
|---|---|---|---|---|
| MEMPHIS LIGHT, GAS & WATER | 71L25523 | 06/24/23 | 74,419.94 | MAP 86-17 |
| MEMPHIS LIGHT, GAS & WATER | 71L25623 | 06/24/23 | 27,986.54 | MAP 86-18 |
| MEMPHIS LIGHT, GAS & WATER | 71L25723 | 06/24/23 | 26,406.93 | MAP 86-21 |
| MEMPHIS LIGHT, GAS & WATER | 71L25823 | 06/24/23 | 12,803.18 | MAP 86-22 |
| MEMPHIS LIGHT, GAS & WATER | 71L25923 | 06/24/23 | 17,060.06 | MAP 86-20 |
|  |  | Total Due | 158,676.65 |  |

11.     The services performed by Asplundh for which MLGW has refused to pay total $158,676.65.

**Count I -- Breach of Contract**

12.     Defendant realleges and incorporates by reference herein each of the preceding paragraphs as if set forth verbatim.

13.     Pursuant to the Contract, MLGW was obligated to pay Asplundh for services performed.

14.    Asplundh has performed certain services and provided proof to MLGW of such performance, together with invoices setting forth amounts owed.

15.    Asplundh has demanded payment from MLGW on these invoices and MLGW has refused to pay.

16.    MLGW has failed to comply with its obligation under the Contract to pay Asplundh for services rendered and is therefore in breach of the Contract.

17.    As a direct and proximate result of MLGW's breach, Asplundh is entitled to the sum of $158,676.65, plus costs of collection, reasonable attorneys' fees and interest.

### Count II -- Unjust Enrichment and/or Quantum Meruit

18.    Asplundh reinstates and incorporates the preceding paragraphs of this Counterclaim as if restated herein.

19.    Pleading in the alternative, MLGW has been unjustly enriched in that it has received a benefit from Asplundh, as described above, for Work done by Asplundh for which it has not been fairly compensated.

20.    MLGW appreciated and accepted such benefit under circumstances that make it inequitable for MLGW to retain such benefit without payment to Asplundh.

21.    MLGW has been unjustly enriched by its actions and is liable for damages to Asplundh in the amount of $158,676.65.

### Relief Sought

Accordingly, based on the foregoing, Asplundh prays as follows:

A.    That MLGW be required to answer these counterclaims within the time prescribed by law;

B.      That a judgment be entered awarding Asplundh damages for the value of the services received by MLGW for Work it received but has not paid and/or for unjust enrichment in the amount of $158,676.65.

C.      That Asplundh be awarded its attorneys' fees and costs of collection;

D.      That Asplundh be awarded pre-judgment and post-judgment interest at the maximum rate allowable by law; and

E.      That Asplundh be awarded any and all such further, general, or equitable relief to which it may be entitled.

Dated this 29th day of July, 2024.

Respectfully submitted,

/s/ Douglas F. Halijan
Douglas F. Halijan (BPR # 016718)
Nathan A. Bicks (BPR # 10903)
David E. Goodman (BPR # 21493)
Elena Mosby (BPR # 40562)
Burch Porter & Johnson, PLLC
130 North Court Avenue
Memphis, TN 38103
Telephone: 901-524-5000
Facsimile: 901-524-5024
dhalijan@bpjlaw.com
nbicks@bpjlaw.com
dgoodman@bpjlaw.com
emosby@bpjlaw.com

*Attorneys for Defendant*